UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION


IN RE:

SEVEN STARS ON THE HUDSON                    CASE NO:  19-17544-RBR
CORPORATION, d/b/a ROCKIN'JUMP


       Debtor,

_____/

SEVEN STARS ON THE HUDSON                    ADVERSARY NO.:  19-01230-RBR
CORPORATION, d/b/a ROCKIN'JUMP


       Plaintiff,

v.

MDG POWERLINE HOLDINGS, LLC,
and XBK MANAGEMENT LLC, d/b/a
XTREME ACTION PARK,


       Defendants.

_____/

**<u>MDG POWERLINE HOLDINGS, LLC'S MOTION TO DISMISS COMPLAINT</u>**

Defendant MDG POWERLINE HOLDINGS, LLC ("MDG Powerline"), by and through

undersigned counsel and pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal

Rule of Civil Procedure 12(b)(6), hereby files this Motion to Dismiss the Complaint of

Debtor/Plaintiff Seven Stars on the Hudson Corporation ("Plaintiff"), and in support thereof

states as follows:

In this Adversary Complaint, Plaintiff, a tenant in the Xtreme Action Park, an indoor

entertainment facility located at 5300 Powerline Road, Fort Lauderdale, Florida, ostensibly

asserts an action for breach of a Lease Agreement against the landlord of the facility, MDG Powerline, along with collateral claims alleging a vague "conspiracy" between MDG Powerline and co-Defendant XBK Management, LLC ("Xtreme"), another tenant in the facility. As will be shown below, Plaintiff's Adversary Complaint is profoundly flawed and should be dismissed in its entirety.

Plaintiff originally entered into the Lease Agreement with MDG Powerline in 2015 to operate a "trampoline park" at the facility. (*See* D.E. 1-1 at 3.) It was understood at the time that Plaintiff would share the facility with Xtreme; indeed, it was anticipated in the Lease that Plaintiff and Xtreme would share expenses in marketing and advertising their respective ventures at the Xtreme Action Park, and that the tenants would host joint events. (*Id.* at Secs. 14.05(c) & 20.15.) It was also understood at the time that the tenants would likely have to embark on renovations of the premises for their respective businesses. Mindful of the this, the Lease expressly states that the Landlord "shall not be liable for any interference or disturbance by any tenants or third persons." (*Id.* at Sec. 20.21.)

Despite this plain and unambiguous contract language, Plaintiff nevertheless attempts in its Adversary Complaint to hold MDG Powerline liable under the Lease Agreement for the alleged conduct of its co-tenant, Xtreme, for various delays and inconveniences allegedly arising from Xtreme's renovations of the premises. (*See* D.E. 1 at ¶¶ 35-36 (alleging that Xtreme removed Plaintiff's sign in the building lobby); ¶ 45 ("Xtreme willfully refused to provide any space on the marquee outside the building); ¶¶ 33-34 (alleging front desk was "dismantled and removed by Xtreme"). Plaintiff goes even further by inventing contractual duties that don't exist, seeking, for instance, a declaration that Plaintiff may have a display for its brochures – though the Lease says nothing of the sort. (*Id.* at ¶ 67(f)&(g)). And while the Complaint

includes the first, second and third amendments to the Lease Agreement, it conveniently omits the *fourth* amendment to the lease, which expressly **deletes** from the Lease any obligation by MDG Powerline to make its "best effort" to accommodate Plaintiff's registration desk in the front desk area of the facility.  (*See* Fourth Amendment to Lease Agreement, attached as Exhibit A.)[1]

At bottom, Plaintiff cannot identify any provisions of the Lease that MDG Powerline has breached.  Apparently recognizing this, Plaintiff seeks to attribute to MDG Powerline the alleged conduct of Plaintiff's co-tenant, Xtreme.   But Plaintiff has failed to establish any agency relationship between MDG Powerline and Xtreme – nor has it adequately alleged any of the claims asserted in the Adversary Complaint.  Accordingly, the Adversary Complaint should be dismissed.

## STANDARD OF REVIEW

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim where "it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *S. Florida Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996).  While factual allegations contained in the Complaint are taken as true for purposes of the motion, *id.*, the court is not required to accept as true general or conclusory allegations, or allegations contradicted by the exhibits to the Complaint.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

## ARGUMENT

---

[1] Plaintiff attempts to justify its omission of this amendment by claiming, with no argument or factual support, that "its validity is questionable." (D.E. 1 ¶ 23 n.2.) In any event, because this amendment is part of the Lease Agreement attached to the Complaint and is specifically referenced in the Complaint the Court may consider this exhibit on a motion to dismiss.  *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## I.    Xtreme Action Park Is Not an Agent of MDG Powerline

Plaintiff's claims against MDG Powerline are based entirely on the false premise that Xtreme Action Park was an "agent" of MDG Powerline, such that the alleged conduct of Xtreme is somehow attributable to MDG Powerline.  (*See* D.E. 1 ¶¶ 44, 71. 78(l), 81, 85).  Plaintiff advances this baseless theory because it cannot identify any breaches of the Lease Agreement by MDG Powerline itself.  Thus, Plaintiff must resort to alleging that MDG Powerline has liability for "condoning" Xtreme's alleged removal of its signage and advertising brochures and so-called "lock-out events" – allegations that, as pleaded, are attributable solely to Xtreme.  (*Id.* at ¶ 81.)  The Complaint fails to allege any basis to attribute Xtreme's conduct to MDG Powerline; indeed, Xtreme is specifically identified as a third-party beneficiary to the Lease Agreement, not an agent of the landlord. (D.E. 1-1 at 36, Sec. 20.28).  Moreover, the Lease Agreement specifically disclaims any liability to MDG Powerline for Xtreme's conduct.  (*Id.* at 35, Sec. 20.21 ("Landlord shall not be liable for any interference or disturbance by other tenants or third persons.")  For this reason alone, all the claims against MDG Powerline should be dismissed.

To plead the existence of actual agency relationship, a plaintiff must allege "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent."  *Belik v. Carlson Travel Grp., Inc.*, 864 F.Supp.2d 1302, 1310 (S.D. Fla. 2011) (internal citation omitted).  Similarly, "[t]o properly plead a claim of apparent agency, a plaintiff must allege three elements: (1) the alleged principal made a manifestation which caused a third party to believe that an alleged agent had authority to act for the benefit of the principal; (2) such a belief was reasonable; and (3) the claimant reasonably relied upon that belief to his or her detriment."  *Id.* at 1311.

Here, Plaintiff makes no effort to establish any of these elements in its Complaint. Rather, Plaintiff simply makes the conclusory assertion that Xtreme is an "agent" of MDG Powerline, without alleging any facts in support of the elements necessary to plead an agency relationship.  Plaintiff's conclusory agency allegations carry no weight, particularly where, as here, they contradict the terms of the Lease Agreement attached to the Complaint.  *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  The claims against MDG Powerline based on Xtreme's conduct therefore fail.

## II.    Plaintiff Fails to State Any Viable Claims in its Adversary Complaint

Plaintiff's failure to plead an agency relationship between MDG Powerline and Xtreme is just one of the many defects in Plaintiff's Complaint, as shown below.

### A.  Count I: Declaratory Judgment

Count I of the Complaint ostensibly seeks a declaration of the rights and duties of Plaintiff and MDG Powerline under the Lease Agreement.  (*See* D.E. 1 ¶ 67.)  In reality, Plaintiff is requesting that the Court re-write the Lease Agreement by adding new terms, while duplicating the relief sought in the remaining claims.  The Court should decline the invitation to enter a declaratory judgment in this case and dismiss Count I.

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, a federal court "may declare the rights and other legal relations of any interested party in the case of an actual controversy within its jurisdiction."  *Fernando Grinberg Tr. Success Int. Properties LLC v. Scottsdale Ins. Co.*, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010).   The Declaratory Judgment Act "is an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant…It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d

1328, 1330 (11th Cir. 2005).    It is well-established that "the purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law or a breach of some contractual duty." *QBE Ins. Corp. v. Prof'l Ins. Underwriters, Inc.*, 2007 WL 9701183, at *3 (S.D. Fla. Mar. 13, 2007) (quoting *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949)) (emphasis added).    Moreover, "[a] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief." *Fernando Grinberg Trust*, 2010 WL 2510662 at *1.

Courts are particularly wary of claims for declaratory judgment that concern the same factual dispute as a pending claim for breach of contract.    *See, e.g., id.* at *1-2; *Eisenberg v. Standard Ins. Co.*, 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009) ("[q]uestions regarding whether a contract was adequately performed is [sic] unrelated to the purpose behind the Declaratory Judgment Act"); *Young v. Lexington Ins. Co.*, 2018 WL 7572240, at *4 (S.D. Fla. Dec. 6, 2018) ("a party should not be permitted to litigate what is in essence a breach of contract claim under the guise of a declaratory judgment action"); *ABC Univ. Shops, LLC v. Scottsdale Ins. Co.*, 2018 WL 6271839, at *6-7 (S.D. Fla. Oct. 18, 2018) (same); *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017) ("[a] petition seeking a declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract").    Thus, a claim for declaratory judgment should be dismissed where it does not concern an ambiguity in a contract, but rather concerns a factual dispute over whether a contract has been breached.    *ABC Univ. Shops*, 2018 WL 6271839 at *7; *Young*, 2018 WL 7572240 at *4.

Here, Plaintiff has not identified any ambiguities within the Lease Agreement that require interpretation by the Court. Instead, Plaintiff simply seeks a declaration that MDG Powerline breached the alleged contractual "duties" that form the basis of its claims for breach of the covenant of quiet enjoyment and breach of the duty of good faith and fair dealing. (*Compare* D.E. 1 ¶ 67(a)-(h) *with* ¶¶ 30-59,68-71 & 78(a)-(m).) Thus, whether MDG Powerline breached these alleged duties – and whether the contract gives rise to any of the duties alleged in the Complaint – are issues that the Court will necessarily address in Plaintiff's other claims. Plaintiff's declaratory judgment claim is therefore duplicative of Plaintiff's other claims, and should be dismissed. *See, e.g., Eisenberg*, 2009 WL 3667086 at *2-3.

Plaintiff's disingenuous attempt to seek a declaratory judgment to "enforce" non-existent lease terms is further grounds for dismissal. In Count I, seeks a declaration allowing it to have a separate waiting line for patrons, dedicated display space on a back wall, marketing displays equal to that of the other tenant, and "adequate representation" in Xtreme's video advertising. (D.E. 1 ¶ 67(e)-(h).) Plaintiff has cited no contractual terms supporting these demands – because none exists. Nowhere does the lease reference, let alone require, space for waiting lines or brochure displays. And contrary to the implications of the Complaint, the Lease Agreement does not *require* Xtreme (a non-party to the Lease) to provide cross-advertising with Plaintiff; rather, the Agreement requires *Plaintiff* to reimburse Xtreme up to $25,000 in the event that there is cross-marketing among the tenants. (*See* D.E. 1-1, Sec. 14.05(c)(i).) In essence, Plaintiff is using the guise of a declaratory judgment claim to ask this Court to rewrite the express terms of the Lease Agreement and invent new duties for the landlord. This is plainly improper. "[Under universal contract principles judicial equitable notions cannot override unambiguous contract rights…[A] court cannot rewrite the terms of a contract in an attempt to make otherwise valid

contract terms more reasonable for a party or to fix an apparent improvident bargain." *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1534 (11th Cir. 1994).

Plaintiff clearly attempts in Count I to use a declaratory judgment action to bring a breach of contract claim in disguise – and attempts to rewrite the Lease Agreement in the process. This improper claim should be dismissed.

### B.  Count II: Breach of Covenant of Quiet Enjoyment

In Count II, Plaintiff asserts a claim against MDG Powerline for breach of the covenant of quiet enjoyment based ***solely*** on the alleged conduct of the other tenant, Xtreme. (D.E. 1 ¶ 71 ("Landlord permitted Xtreme to act as its agent when dealing with the Debtor. Xtreme's actions as described herein are therefore attributable to the Landlord").) This claim is expressly ***disallowed*** by the covenant of quiet enjoyment contained in the Lease Agreement, which expressly states: "**Landlord shall not be liable for any interference or disturbance by other tenants or third persons**." (D.E. 1-1 at 35, Sec. 20.21.) Contrary to the express terms of the covenant of quiet enjoyment in the Lease, Plaintiff improperly attempts to allege a breach of this covenant based solely on Xtreme's alleged conduct.

"Under Florida law, when the terms of a contract are unambiguous, the Court is bound to give the language therein its plain and ordinary meaning." *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1109 (11th Cir. 1990). By its plain terms, the Lease Agreement disallows any claim for breach of the covenant of quiet enjoyment based on the conduct of other tenants or third persons. Count II therefore fails on its face.

Even if this claim were not barred by the express provisions of the Lease Agreement, it still would fail. Plaintiff has not alleged any facts to support its vague and conclusory suggestion that MDG Powerline "authorized" any acts to be done by Xtreme on its behalf. (D.E. 1 ¶ 70.)

And, as discussed above, Plaintiff has not adequately alleged an agency relationship between MDG Powerline and Xtreme. *Belik*, 864 F.Supp.2d at 1310-11. Thus, Count II fails under any analysis.

### C. Count III: Breach of Implied Duty of Good Faith and Fair Dealing

Plaintiff has also failed to state a claim for breach of the implied covenant of good faith and fair dealing (Count III). Under Florida law, a breach of the implied covenant of good faith and fair dealing does not by itself create an independent cause of action. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329 (11th Cir. 2012). Rather, the "duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements… A claimant asserting a cause of action for breach of the implied covenant must allege a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party." *Id.* (internal citations omitted).

In this case, Plaintiff attempts to base this claim against MDG Powerline on either (1) the conduct of Xtreme or (2) nonexistent contractual duties. To the extent that Plaintiff attempts to base this claim on allegations that its signage was removed or "tampered with," (D.E. 1 ¶¶ 78(a) & (b)), or that its front desk was "interfered with" (*id.* at ¶ 78(c)&(d)), this claim fails because the complaint only alleges interference by Xtreme, not by MDG Powerline. (*Id.* at ¶¶ 35-36 (alleging that Xtreme removed Plaintiff's sign in the building lobby; ¶ 45 ("Xtreme willfully refused to provide any space on the marquee outside the building); ¶¶ 33-34 (alleging front desk was "dismantled and removed by Xtreme"). As discussed above, Plaintiff has failed to

adequately allege an agency relationship by which Xtreme's conduct could be attributed to MDG Powerline. In the absence of any allegations that MDG Powerline breached the lease agreement – or any allegations that MDG Powerline *consciously* and *deliberately* breached the Lease Agreement, as required, *see Resnick*, 693 F.3d at 1329 – this claim must fail.

Plaintiff also alleges that it "should have had space on a backwall where Xtreme displays its attractions" and "should have been allowed to display its own brochures" with Xtreme's brochures. (*Id*. at ¶¶ 78(e)&(f)). However, MDG Powerline owes **no duty** to provide display space under the Lease; indeed, the Lease does not even address or discuss brochure displays. These invented contractual duties cannot support a claim for breach of the implied covenant of good faith and fair dealing. *Resnick*, 693 F.3d at 1329. And Plaintiff clearly cannot base this claim on its claim for breach of the covenant of quiet enjoyment (D.E. 1 at ¶ 78(g)) because Plaintiff has failed to allege that MDG Powerline directly breached that covenant, as discussed above. (*See supra* at II(B)). Thus, Count III also fails.

### D. Count IV: Constructive Eviction

Plaintiff has not pleaded the elements of a constructive eviction claim – nor can it. To sustain a claim for constructive eviction under Florida law, a tenant must have abandoned the premises as a result of the landlord's actions allegedly giving rise to the claim. *See, e.g., Richards v. Dodge*, 150 So.2d 477, 481 (Fla. 2d DCA 1963) ("abandonment of the premises within a reasonable time after the landlord's wrongful act is a necessary element of constructive eviction"); *Kaplan v. McCabe*, 532 So.2d 1354, 1356 (Fla. 5th DCA 1988) (same); *Bass v. Wollitz*, 384 So.2d 704, 706 (1st DCA 1980) ("a tenant who remains in possession cannot logically be regarded as constructively evicted"). Here, there are no allegations that Plaintiff

abandoned the premises – nor can there be, as Plaintiff remains in the leased space today. Plaintiff therefore cannot sustain this constructive eviction claim.

This claim is defective in other respects as well.  Plaintiff has not alleged that MDG Powerline intended to interfere with Plaintiff's use of the premises without actually evicting it, as required to state a constructive eviction claim.  *See Perkins v. Nat'l Credit Sys., Inc.*, 2018 WL 3931860, at *2 (M.D. Fla. Aug. 16, 2018).

Nor has Plaintiff alleged that it provided timely notice to MDG Powerline or a demand for rectification – also a required element to plead a constructive eviction claim.  *Id.*; *see also Kaplan*, 532 So.2d at 1356 (same); *Richards*, 150 So.2d at 484 (same).  For all of these reasons, the Count IV of the Complaint should be dismissed.

### E.  Count V: FDUPTA

Count V is a misguided claim against MDG Powerline under the Florida Deceptive and Unfair Trade Practices Act (FDUPTA), again attempting to hold MDG Powerline liable for the conduct of Xtreme.  Putting aside its failed agency theory, Plaintiff cannot sustain a FDUPTA claim on the facts alleged in the Adversary Complaint.

In this claim, Plaintiff alleges that MDG Powerline "permitted" Xtreme as its so-called "agent" to "economically squeeze" Plaintiff by removing signs, prohibiting Plaintiff from advertising on the marquee, "authorizing lock-out events for Xtreme's benefit," removing brochures and marketing materials, and "depriv[ing] Debtor of the use and quiet enjoyment of its premises" through construction projects (though MDG Powerline has no liability for any breach of the covenant of quiet enjoyment arising from Xtreme's conduct, as discussed above).  (D.E. 1 ¶ 85.)  As a result of this conduct, the Complaint alleges, Plaintiff has been damaged "through

the loss of business and damage to its competitive advantages it has earned in the marketplace." (*Id.* at ¶ 86.)  These allegations do not state a claim under FDUPTA.

The elements of a FDUPTA claim are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  *Cox v. Porsche Fin. Servs., Inc.*, 342 F.Supp.3d 1271, 1286 (S.D. Fla. 2018).  "Under the FDUTPA, an unfair practice is one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious *to consumers.*'"[2] *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F.Supp.2d 1218, 1223-24 (S.D. Fla. 2013) (internal citation omitted) (emphasis added).  For purposes of FDUPTA, "[a] consumer is one who has engaged in the purchase of goods or services." *Leon v. Tapas & Tintos, Inc.*, 51 F.Supp.3d 1290, 1297 (S.D. Fla. 2014).

In the Complaint, however, Plaintiff does not allege that any of the conduct that forms the basis of this claim caused any injury to consumers; rather, Plaintiff vaguely asserts that this conduct was "driving" consumers away from Plaintiff.  Thus, the injury alleged is not to consumers, but only to Plaintiff.  The purported injury alleged in the Complaint is not the type of injury FDUPTA is intended to remedy.  *See id.* (internal citation omitted) ("FDUTPA…has no application to entities complaining of tortious conduct which is not the result of a consumer transaction").

Plaintiff also has failed to allege that it suffered "actual damages" within the meaning of the statute.  As the Eleventh Circuit has repeatedly held, actual damages under FDUPTA "must be direct damages, not indirect and consequential damages."  *Hetrick v. Ideal Image Dev. Corp.*, 372 Fed. Appx. 985, 991 (11th Cir. 2010).  *See also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 Fed. Appx. 814, 815 (11th Cir. 2017) (affirming limitation of FDUPTA damages to

---

[2] The Complaint does not allege any "deceptive acts" by MDG Powerline.

"direct damages, not consequential damages in the form of lost profits"). Thus, "FDUTPA damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016).

In the Complaint, the only damages alleged in Plaintiff's FDUPTA claim are "loss of business and damage to its competitive advantages it has earned in the marketplace." (D.E. 1 ¶ 86.) "Lost business" and goodwill are clearly consequential damages. *See BPI Sports, LLC v. Labdoor, Inc.*, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016) (finding that "competitive harm, diverted or lost sales, and harm to the goodwill and reputation" were consequential damages and dismissing FDUPTA claim); *Emondson v. 2001 Live, Inc.*, 2017 WL 10085029, at *2 (M.D. Fla. July 25, 2017) ("competitive harm, lost sales, harm to the goodwill and reputation" are consequential damages not recoverable under FDUPTA). Because this commercial lease is not a "consumer" transaction and Plaintiff has not alleged any actual damages its claim under FDUPTA fails.

### F. Count VI: Assumption of Lease

Count VI of the Adversary Complaint purports to be a "claim" to allow the Debtor's Trustee to assume the lease with MDG Powerline pursuant to 11 U.S.C. § 365. (D.E. 1 ¶¶ 86-88). However, 11 U.S.C. § 365 does not create a cause of action to be asserted in an adversary complaint; rather, 11 U.S.C. § 365 creates a procedure within a bankruptcy proceeding under which a debtor may *by formal motion* assume or reject an unexpired nonresidential lease. This claim is procedurally improper and substantively without merit.

It is well established that "in order to assume an unexpired nonresidential lease, a debtor must bring a formal motion requesting the court's permission to assume the lease within 120 days as set forth in [11 U.S.C.] § 365(d)(4). Without a formal motion, a debtor's conduct will not constitute an assumption." *In re Sportsman's Link, Inc.*, 2007 WL 7023835, at *3 (Bankr. S.D. Ga. Oct. 31, 2007); *see also Matter of J. Woodson Hays, Inc.*, 69 B.R. 303, 306-08 (M.D. Fla. 1987) (analyzing statutory scheme and finding that a written motion is a condition precedent to assumption of an unexpired lease); *In re Southern Motel Assocs., Ltd.*, 81 B.R. 112, 116-117 (Bankr. M.D. Fla. 1987) (same); *In re Fillard Apartments, Ltd.*, 96 B.R. 397, 399 (Bankr. S.D. Fla. 1989) (same). Thus, if Plaintiff seeks an assumption of the mortgage, it must file a motion in the bankruptcy proceeding as with any other contested matter under Fed. R. Bankr. P. 9014 – not a claim in an adversary complaint. *Sportsman's Link*, 2007 WL 7023835 at *2. In short, Count VI is not a claim at all, and it should be dismissed.

In the Wherefore clause of this claim, Plaintiff also requests that the Court enter an order "determining that the Debtor is not in default under the Lease either currently or as of the Petition Date." (D.E. 1 at 26.) Because there is no legal basis for this cause of action under 11 U.S.C. § 365, as discussed above, the Court need not reach the issue of the relief requested. However, to the extent that the Court considers this a *de facto* claim for declaratory relief, this request should rejected and the claim dismissed. Once again, Plaintiff is not seeking a declaration to address ambiguities regarding the parties' rights and obligations under the Lease; Plaintiff is simply attempting to use a request for declaratory relief to resolve a factual dispute over whether it has breached the terms of the Lease Agreement.[3] As discussed above, this is not

---

[3] In fact, Plaintiff is in default under the Lease: Pursuant to the Lease and its Addendum (D.E. 1-1 at 55-59), Plaintiff is required to maintain the leased premises as a franchisee of the Rockin' Jump Franchise, and it has failed to do so.

the purpose of a declaratory action.  *See, e.g., Eisenberg*, 2009 WL 3667086 at *2 ("[q]uestions regarding whether a contract was adequately performed is [sic] unrelated to the purpose behind the Declaratory Judgment Act"); *Young*, 2018 WL 7572240 at *4 (same); *ABC Univ. Shops*, 2018 WL 6271839, at *6-7 (same); *Ministerio Evangelistico Int'l*, 2017 WL 1363344 at *2 (same).

Simply put, if Plaintiff seeks an assumption of the Lease, it must file a formal motion seeking this relief.  *Matter of J. Woodson Hays, Inc.*, 69 B.R. at 308.  Because there is no legal basis for the cause of action purportedly asserted in Count VI, it should be dismissed.

### G.  Count VIII: Conspiracy

Finally, in Count VIII, Plaintiff alleges that MDG Powerline and Xtreme entered into a so-called "conspiracy to permit the Landlord to evade its obligations under the Lease and permit Xtreme to economically deprive the Debtor of its business opportunities."  (D.E. 1 ¶ 99.)  The conclusory and contradictory allegations in the Complaint fail to state a conspiracy claim against MDG Powerline.

It is well established that "under Florida law, a civil conspiracy must have as its object the commission of an ***underlying tort***."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009) (emphasis added).  Thus, to the extent that Plaintiff attempts to allege that MDG Powerline and Xtreme conspired to breach the Lease Agreement, this claim clearly fails, as breach of a contract is not a tort.

Moreover, even if an underlying breach of contract could support this conspiracy claim, the claim is nevertheless barred under the independent tort doctrine, because Plaintiff has not alleged that MDG Powerline has breached any duty beyond the duties owed under the Lease Agreement.  *Alhassid v. Bank of Am., N.A.*, 60 F.Supp.3d 1302, 1318 (S.D. Fla. 2014) (where

"Plaintiffs have not pleaded any breach or injury separate and apart from their breach of contract claims…their claim for civil conspiracy cannot survive").

Nor can Plaintiff sustain a conspiracy claim against MDG Powerline based on the vague allegation that it conspired with Xtreme to "economically deprive the Debtor of its business opportunities."  (D.E. 1 ¶ 99.)  Because a civil conspiracy claim is not an independent cause of action, it is "dependent on the merits of an underlying, predicate claim."  *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 Fed. Appx. 899, 907 (11th Cir. 2013).  Thus, a civil conspiracy claim must allege the elements of a conspiracy as well as the elements of the underlying tort on which the conspiracy claim is predicated.  *See, e.g., In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 842 (Bankr. M.D. Fla. 2011) (conspiracy claim "requires the pleading of both the underlying tort itself and the conspiracy"); *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 343 (Bankr. S.D. Fla. 2013) (same).  Where the alleged object of the conspiracy is not an actionable tort, then the conspiracy claim itself must fail.  *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217-18 (11th Cir. 1999).

To state a claim for civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  *Alhassid*, 60 F.Supp.3d at 1316.  Plaintiff's conspiracy claim is based on four alleged overt acts: (1) the removal of signs; (2) "blocking access and sight-line view to Debtor's business"; (3) "mis-direction/re-direction of Debtor's customers to Xtreme attractions"; and (4) "late delivery of food services."  (D.E. 1 ¶ 99.)  Plaintiff appears to assert that these allegations constitute "interference with its business opportunities and customer base."  (*Id.* at ¶ 100.)  Significantly, however, Plaintiff **has not asserted a claim for tortious**

*interference with its customer base.*  Rather, Plaintiff's only tort claim (Count VII) alleges that Xtreme has interfered with Plaintiff's business relationship ***with MDG Powerline***.[4]  (*Id.* at ¶¶ 89-97.)  In other words, Plaintiff has failed to assert an underlying predicate tort claim to sustain its conspiracy claim, and the only tort claim it has asserted is not the basis for its conspiracy claim.

Even if there were an underlying tort to support the conspiracy claim, it *still* would fail.  As alleged in the Complaint, all the overt acts discussed above were alleged to have been the acts of Xtreme, not MDG Powerline.  (*Id.* at ¶¶ 35, 38, 40-42, 45, 54.)  While a conspirator need not have committed the overt acts to have liability, the conspirator must at least "know of the scheme and assist in it in some way."  *Burger v. Hartley*, 896 F.Supp.2d 1157, 1169 (S.D. Fla. 2012).  Here, there are no allegations that MDG Powerline "assisted" Xtreme in any way; indeed, the entire premise of the Complaint is that Xtreme acted alone but as an "agent" of MDG Powerline.

This highlights another fatal defect in Plaintiff's conspiracy claim.  Plaintiff alleges a conspiracy between Xtreme and MDG Powerline while simultaneously claiming that Xtreme was acting as MDG Powerline's agent.  However, "an actionable conspiracy generally cannot exist between an entity and its officers, ***agents***, or employees."  *Five for Entm't S.A. v. Rodriguez*, 2013 WL 4433420, at *13 n.10 (S.D. Fla. Aug. 15, 2013) (emphasis added); *Zike, LLC v. Catalfumo*, 2013 WL 12080225, at *8 (S.D. Fla. Feb. 22, 2013) (citing *Hoon v. Pate Constr. Co.*, 607 So.2d 423, 430 (Fla. 4th DCA 1992)) (same).  The entire basis of Plaintiff's Complaint against MDG Powerline hinges on the theory that Xtreme was acting as MDG Powerline's "agent."  (*See* D.E. 1 ¶¶ 44, 71. 78(l), 81, 85).  In essence, Plaintiff alleges in Count VIII that MDG Powerline conspired with itself – which is no conspiracy at all.

## CONCLUSION

---

[4] Obviously, Plaintiff could not have alleged that MDG Powerline conspired to interfere with its *own* relationship with Plaintiff.

Plaintiff ties itself in knots in the Adversary Complaint attempting to drag MDG Powerline into this litigation despite the fact that it cannot specify any wrongdoing by MDG Powerline under the Lease Agreement.  For this reason, Plaintiff attempts to hold MDG Powerline responsible for the alleged conduct of Xtreme by making the conclusory (and legally defective) claim that Xtreme was an "agent" of the Landlord.  However, Plaintiff has failed to allege the elements necessary to establish that Xtreme was an agent of MDG Powerline, nor has it articulated any cognizable claims against MDG Powerline.

WHEREFORE, for the reasons stated above, MDG Powerline respectfully requests that the Court enter an Order dismissing Counts I, II, III, IV, V, VI and VIII of the Complaint, and for such other relief as the Court deems just and proper.

Respectfully submitted,

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
1450 Brickell Avenue, 23rd Floor
Miami, Florida 33131
(305) 374-7580

By:____/s/ *Jay M. Sakalo*_____
        Jay M. Sakalo
        Fla. Bar No. 156310

                        and

**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, Penthouse One
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261

By: ____*s/Susan E. Raffanello*_____
Susan E. Raffanello, Florida Bar No. 676446
sraffanello@coffeyburlington.com
Scott A. Hiaasen, Florida Bar No.: 103318
shiaasen@coffeyburlington.com
lmaltz@coffeyburlington.com

lperez@coffeyburlington.com
service@coffeyburlington.com

*Counsel for Defendant MDG Powerline Holdings,*
*LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on August 30, 2019, on all counsel or parties of record on the below/attached Service List.

_____*s/Jay M. Sakalo*_____

### <u>Service List</u>

Kathleen A. Daly, Esq.
*Counsel for Debtor/Plaintiff*
Law Office of Kathleen A. Daly, P.A.
515 North Flagler Drive
Suite P300
West Palm Beach, Florida 33401
Tel: 561-293-8514
kdaly@kadalylaw.com