UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

In re:

SEVEN STARS ON THE HUDSON
CORPORATION, d/b/a ROCKIN' JUMP          Case No 19-17544 - RBR
                                          Chapter 11
        Debtor,
_____/

SEVEN STARS ON THE HUDSON                 Adversary Proceeding
CORPORATION, d/b/a ROCKIN' JUMP,          No. 19-01230-RBR

        Plaintiff
v.

MDG POWERLINE HOLDINGS, LLC
AND XBK MANAGEMENT LLC,
d/b/a XTREME ACTION PARK,


        Defendants.

_____


**DEBTOR'S OPPOSITION TO MDG POWERLINE
HOLDINGS, LLC'S MOTION TO DISMISS COMPLAINT**

The Plaintiff-Debtor, Seven Stars On The Hudson Corporation, d/b/a Rockin' Jump ("Debtor" or "Plaintiff") hereby submits this memorandum of law in opposition to the motion of MDG Powerline Holdings, LLC's seeking dismissal of the complaint as against it.

Because it is a Rule 12(b)(6) motion, the Court's analysis is limited to the following: (1) the factual allegations in the complaint which it "must accept as true"; (2) documents attached, incorporated by reference in or "integral" to the Complaint, and (3) matters of which judicial notice may be taken. *See Arbitron Inc. v. Renda Broad. Corp*. 2014 WL 1268587 (M.D. Fla., Mar. 27, 2014)(*citing Ashcroft v. Iqbal*, 556 U.S. 662, 668(2009)). A Motion to Dismiss under Rule 12(b)(6)  the legal sufficiency of the complaint and any attempt to evaluate or weigh evidence is incorrect.  All that is required is that the complaint "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  It is submitted that the complaint in this case does just that.[1]

**Point I**

**XTREME WITH THE KNOWLEDGE AND CONSENT OF
THE LANDLORD  HELD ITSELF OUT AS AGENT OF THE
LANDLORD IN ITS DEALINGS WITH THE DEBTOR**

It is Defendant-Landlord's contention that there is no liability as to it because the Lease Agreement states that the Landlord is not liable for any interference or disturbance by other tenants—including Xtreme, and that any claim of agency between the Landlord and Xtreme must be dismissed because all the bad acts alleged were those of Xtreme and no agency relationship has

---

[1]    Defendant Landlord claims that a purported Fourth Amendment is part of the Lease and for that reason may be considered by this Court.  *See* Motion to Dismiss, footnote 1.  Plaintiff-Debtor disputes the validity of the Fourth Amendment because it does not represent the terms as agreed by the parties.  Stated simply, the purported fully executed agreement is a fraud and therefore should be deemed, at a minimum, to be outside of the pleading.

been alleged between the Landlord and Xtreme. However, the allegations in the Complaint belie this wholly conclusory assertion. The Landlord not only sanctioned Xtreme's conduct, it never disavowed representations made by Xtreme to the Debtor in the name of the Landlord when it could have and notwithstanding that it was on notice of these representations. Moreover, the Lease Agreement refers to Xtreme as a "Landlord Entit[y]". At a minimum, these are allegations that would expose the Landlord to liability for the wrongful acts of Xtreme under an apparent agency theory.[2]

It is well-settled that "existence of an agency relationship is ordinarily a question to be determined by a jury in accordance with the evidence adduced at trial and can be proved by facts and circumstances on a case-by-case basis." *Mobil Oil Corp. v. Bransford*, 648 So.2d 119 (Fla., 1995). As set forth in *Mobil Oil*, "the three elements needed to establish apparent agency: (1) a representation by the principal; (2) reliance on that representation by a third person; and (3) a change of position by the third person in reliance upon such representation to his detriment." (citation omitted). The existence of an agency relationship is ordinarily a question to be determined by a jury in accordance with the evidence adduced at trial and can be proved by facts and circumstances on a case-by-case basis. Id., 648 So.2d at 124.

In its complaint, the Debtor alleged the following with regard to both the Landlord and Xtreme's conduct:

- Beginning in Fall 2017, Xtreme acting in concert with the Landlord, deliberately sabotaged the Debtor's business activities (Complaint ¶ 29);

- Complaints to the Landlord and Xtreme because of Xtreme's removal of the Debtor's signage and satellite desk went unanswered (Complaint ¶ 35);

---

[2]     The Landlord's statement on page 2 that "[i]t was also understood at the time that the tenants would likely have to embark on renovations of the premises for their respective businesses" is outside the pleaded allegations and should be disregarded in its entirety at this stage of the litigation. *See Arbitron Inc.*, 2014 WL 1268587.

- The Landlord communicated through Xtreme that it did not approve signage that the Debtor had hanging since inception of the Debtor's business (Complaint ¶ 36);

- The Lease contained cross-marketing obligations between Xtreme and Debtor. Xtreme stopped such activity in or around February 2018 (Complaint ¶ 43);

- The Landlord, through Xtreme, demanded additional monies from Debtor to obtain space on the outside marquee (Complaint ¶ 44); and

- Xtreme, acting with the consent of the Landlord, installed cameras in the interior of Debtor's business, and the Landlord refused to remove them despite the lack of any requirement for such cameras in the Lease (Id. ¶ 58).

The Debtor wrote to the Landlord specifying the multiple ways the Landlord "and/or its agent" were interfering with the business. For example, in the letter dated August 20, 2018, counsel for the Debtor made the following complaint:

> Landlord, in clear violation of the terms of the Lease, has either directed or allowed the removal of our client's existing and previously approved internal signage (specially the one near the sole access point in the park which was removed in April 2018 and which had been in place since 2016), thus negatively impacting our client's ability to do business and its right to quietly enjoy the leased premises for their intended purpose. Remarkably, not only was the signage improperly removed in violation of the Lease, but that it was actually misappropriated by Landlord and/or its agents and never returned to our Client. Our client has made numerous requests for the return of tis signage which remain unanswered as of this date. These deliberate and illegal actions not only constitute a breach of the Lease but are also negatively impacting our client's ability o run its business in an adequate manner. Internal signage is critical for guests finding and accessing our client's facilities, and their removal has resulted in decreased visits and revenue.

Complaint Exh. 11. *See also* Exh. 12.

The above-described conduct, as pleaded in the complaint, clearly establishes at this stage that Xtreme took on the role as the Landlord's agent, dictating the actions throughout the property complex that housed the entertainment facility. The Landlord was well aware of this wrongful conduct and did nothing to disavow it or the nature of its relationship to Xtreme. The Landlord

either outright consented or impliedly ratified the actions by Xtreme as against the Debtor.  Id. "Acquiescence by the principal in conduct of an agent whose previously conferred authorization reasonably might include it, indicates that the conduct was authorized; if clearly not included in the authorization, acquiescence in it indicates affirmance." Restatement (Second) of Agency § 43(1); *see also* Restatement (Third) of Agency § 2.02 cmt. f.

The question of whether an act or representation is made within the scope of an agency relationship is a question of fact to be determined by the totality of the circumstances.  *Stuyvesant Corp. v. Stahl*, 62 So.2d 19, 20 (Fla. 1952); *see also South Florida Coastal Elect. v. Treasures on the Bay II Condo Assoc'n*, 89 So.3d 264, 267 (Fla. 3rd DCA 2012)(whether agency exists is determined by the trier of fact unless there is indisputably no connection between the principal and agent")(internal quotation marks and citation omitted).

For the purposes of this motion to dismiss, the fact allegations should be deemed sufficient to put Landlord on fair notice that it was responsible for the wrongful acts engaged by its agent—Xtreme—and that by its conduct, the Landlord ratified these actions.

**Point II**

**A DECLARATORY JUDGMENT ACTION CAN STILL BE MAINTAINED NOTWITHSTANDING THERE IS A BREACH OF CONTRACT CLAIM**

The Defendant-Landlord asserts that, because there is a separate cause of action for breach of contract, the Declaratory Judgment cause of action must be dismissed.  Motion pgs. 6-7.  It further argues that because there is no ambiguity in the lease terms, the declaratory judgment claim is "duplicative" and that this cause of action is nothing more than an attempt to "rewrite the express terms of the Lease".  Motion, pg. 7.  Defendant-Landlord is wrong for several reasons.

First, the cause of action asserted is not just against the Landlord, but also against Xtreme. Moreover, and unlike the breach of contract claim which is seeking monetary damages, the Debtor

5

is seeking a declaration that it has the right to take certain action going forward, particularly with regards to advertising and signage. As held by the Court in *Kenneth F. Hackett & Associates, Inc. v. GD Capital Information Tech. Solutions, Inc*., 744 F. Supp. 2d 1305 (S.D. Fla. 2010) if the declaratory judgment claim seeks "forward-looking" relief as opposed to a claim for breach of contract which is "retrospective in nature", then the two claims can "travel" together. Id. at 1310, 1311. That is the situation here. Count 1 of the complaint seeks a declaration which would, i*nter alia*, permit the Debtor to take the following action should it be successful:

- Declaring and Adjudging that Debtor's exterior signage shall be restored to its original space near the front entrance;

- Declaring and Adjudging that Debtor shall design and cause to be installed, sufficient interior signage, that at a minimum fairly and clearly alerts the consuming Public as to its business/entertainment offerings;

- Declaring and Adjudging that its designated space (satellite front desk) near the Access Point will not be subject to interference so that Debtor can greet its customers and direct them to its entertainment area;

- Declaring and Adjudging that Debtor shall be permitted to install its signage at the entrance to the property and at a front desk (above the point of sale);

- Declaring and Adjudging that Debtor shall have a separate customer waiting line in front of its satellite front desk, so Debtor guests do not need to unnecessarily wait in the Xtreme front desk line;

- Declaring and Adjudging that Debtor shall have space on a backwall behind front desk where Xtreme displays its attractions & pricing;

- Declaring and Adjudging that Debtor shall be allowed to display its own brochures advertising birthday parties and jump time as well as other special events at all locations where Xtreme displays its own brochures;

- Declaring and Adjudging that Debtor shall have adequate representation in the Xtreme videos displayed on the kiosks and TVs around the entire Xtreme park as this cross advertising was envisioned under the lease.

Complaint, ¶ 67.

The relief sought in the declaratory judgment action is fact specific and seeks "forward-looking" non-monetary relief—quite the opposite of the monetary relief sought in the breach of contract cause of action.  *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig*., 313 F.Supp.3d 1113 (N.D. Cal., 2018)(same).

Finally, even assuming for the sake of the argument that some redundancy exists, that in and of itself would not mandate dismissal.  *See Blitz Telecom Consulting, LLC v. Peerless Network, Inc*., 151 F. Supp. 3d 1294, 1302 (M.D. Fla. 2015) ("[i]t is well-established that '[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.") (*quoting* Fed. R. Civ. P. 57)).

**Point III**

**THE LANDLORD'S CONDUCT, THROUGH ITS AGENT
XTREME CONSTITUTED A BREACH OF THE  PROVISION
OF QUIET ENJOYMENT IN THE USE OF THE PREMISES**

The Landlord claims that it is not liable for the actions of Xtreme under section 20.21 of the Lease providing for Quiet Enjoyment because the Lease specifically exempts the Landlord from any liability for interference or disturbance by third parties.  Landlord's Motion at section B.

It has been factually alleged in this Complaint that Xtreme functioned as the Landlord's agent and that when the Landlord was put on notice of Xtreme's acts, it did nothing to disavow them. Indeed by its conduct, the Landlord represented to the Debtor, that the actions of Xtreme were sanctioned by the Landlord.  *See* Complaint Exhs. 11-12.

Thus the actions taken by Xtreme as alleged in the Complaint can be tied to the Landlord, Xtreme's principal, and the provision cited by the Landlord does not exempt the Landlord from liability by mere disclaimer.  *See Fredrick v. Squillante*, 144 So.2d 848, 849 (Fla. 2d DCA 1962)("'[w]hen an agent acts for his principal, and the principal accepts the fruits of the agent's

7

efforts, the principal must be deemed to have adopted the methods employed, and he may not, even though innocent, receive the benefits and at the same time disclaim responsibility for the means by which they were acquired")(citation omitted).  Moreover, while the Landlord seeks to distance itself from the conduct of Xtreme, there is no question, that Xtreme was treated as part of and considered an extension of the Landlord's business.  As set forth in the Lease, the tenant was obligated to reimburse Xtreme and its affiliates for joint marketing.  *See* Complaint, Exh. 1, ¶ 14.05(c)(i).

Finally, throughout the Lease, Xtreme is referred to as a "Landlord Entity" and is distinguished from other tenants.  *See* Complaint, Exh. A, ¶ 19; *see also* ¶ 8.08 (including Xtreme as a "Landlord Entity" with respect to claims of third persons). *See also McDonald v. Hamilton Elec., Inc. of Fla.*, 666 F.2d 509, 514 (11th Cir. 1982)(a principal "can ratify the unauthorized acts of an agent purportedly done on behalf of the principal either expressly or impliedly through conduct that is inconsistent with an intention to repudiate the unauthorized act").

**Point IV**

**LANDLORD'S EXPRESS BREACH OF THE LEASE
ALSO CONSITUTED A BREACH OF THE
<u>COVENANT OF GOOD FAITH AND FAIR DEALING</u>**

The Debtor has alleged that the Landlord breached the covenant of Quiet Enjoyment in its direct interference with the operation of the Debtor's business.  This wrongful interference was not only a breach of the express provision of the Lease Agreement, it also amounted to a violation of its implied duty of good faith and fair dealing towards the Debtor.

Florida law recognizes that every contract contains an implied covenant of good faith and fair dealing which attaches to the performance of contractual obligations.  *See Underwater Engineering Services, Inc. v. Utility Board of the City of Key West*, 194 So. 3d 437 (Fla 3d DCA

2016). The overarching purpose of this implied duty is to protect the parties' reasonable contractual expectations. This is particularly the case where there is an element of discretion involved and no defined standards for the exercise of that discretion. *See Overseas Investment Group v. Wall Street Electonica, Inc.*, 181 So. 3d 1288 (Fla. 4th DCA 2016). While this right may be a limited one, the facts in this case make it a viable one.

In this case, the Landlord was obligated to allow exterior signage. It was obligated to advertise the Debtor's business on an outside pylon/monument. *See* Complaint, Exhs . 1 and 2 (Lease Agreement ¶ 15, Second Amendment, ¶ 3(g)). It was obligated to provide space for a satellite front desk. *See* Complaint, Exh. 2 (Lease Agreement, Second Amendment). In each instance, it either never provided the signage or advertising or was complicit in removal of said signage and advertising.

Because these acts interfered with the Debtor's business operations and the quiet enjoyment and use of its premises, it also breached the duty of good faith and fair dealing owed to the Debtor.

**Point V**

**THE WRONGFUL CONDUCT OF LANDLORD
IN CONCERT WITH XTREME WAS TANTAMOUNT
TO A CONSTRUCTIVE EVICTION OF THE DEBTOR**

While the defendant cites cases describing a physical ejectment from the premises as a prerequisite for asserting a claim for constructive eviction, the law of constructive eviction has evolved and recognizes that any act which wrongfully interferes with the tenant's ability to use the premises and its business for its intended purpose can give rise to a claim for constructive eviction.. Within Florida, a constructive eviction is defined as "an act which, although not amounting to an actual eviction, is done with the expressed or implied intention and has the effect of essentially

interfering with the tenant's beneficial enjoyment of the leased premises." *Hudson Pest Control v. Westford Asset Management*, 565 So.2d 805, 806 (Fla. 5th DCA 1993)(*citing Hankins v. Smith*, 103 Fla. 892, 138 So. 494 (Fla. 1931)).

The allegations in the complaint set forth the acts of the Landlord and/or its agent, Xtreme in:

- Removal of above referenced eight foot long RJ arrow from entrance area of Xtreme without making the claim of any ongoing or future construction.

- Removal of power to Debtor's satellite front desk in May 2018 which again was done without any claim of any ongoing or future construction.

- Removal of a satellite desk at entrance to facility and failure to replace;

- No replacement for satellite desk which was instead converted to use by Xtreme kiosks;

- Removal of outside signage and posters;

- Absence of directional signs in the interior;

- Construction by Xtreme of attractions in a manner that was intended to mask line of sight to trampoline park; and

- Siphoning customers who might otherwise go to park by removing name of trampoline park was part of Xtreme's offering.

*See* Complaint, Exh. 11

This was intentional, deliberate and wrongful conduct that has forced the Debtor to file for bankruptcy protection. *See Coral Wood Page, Inc. v. GRE Coral Wood, LP*, 71 So.3d 251, 253 (Fla. 2d DCA 2011)(absent any inconsistent express covenants to the contrary, every lease carries with it an implied covenant of peaceable and quiet enjoyment). And contrary to the Landlord's claim that it was not put on notice as to the wrongful behavior and its harmful effect on the Debtor's business, the Debtor sent a cease and desist letter on June 4, 2019 demanding that its actions as well as those of its agent, Xtreme, immediately stop. *See* Complaint, Exh. 12. Not surprisingly,

the Landlord ignored the letter and has made no attempt to rectify the wrongful conduct described in the letter.

**Point VI**

**PLAINTIFF HAS STATED A CAUSE OF ACTION UNDER FDUPTA**

The Landlord seeks the dismissal of Plaintiff's cause of action under Florida Deceptive and Unfair Trade Practices Act (FDUPTA) on the following grounds: (1) Xtreme is not its agent and therefore cannot be liable for its conduct, (2) there is no allegation of injury to "consumers", and (3) no actual damages alleged. All three contentions are wrong.

First, for the reasons set forth above in Point I, Xtreme can and should be considered an agent of the Landlord.

Second, to the extent that the Landlord claims that Plaintiff is not a "consumer" for purpose of the statute, its interpretation has been soundly rejected by the Florida courts. *See PNR, Inc. v. Beacon Property Management, Inc.*, 890 So. 2d 274, 278 (Fla. 4th DCA 2004)(noting that the definition of consumer transaction was expanded by the legislature to include "any commercial entity" that was engaged "in the conduct of *any trade or commerce*")(emphasis in original). Indeed the definition of "consumer" has been expanded. The 2001 amendment to the statute has defined a consumer as an "individual; child, by and through its parent or legal guardian; *business;* firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; *any commercial entity, however denominated;* or any other group or combination."). See Fla. Stat. § 501.203(7); *see also Tempay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 945 F.Supp.2d 1331 (M.D. Fla., 2013)(applying FDUPTA to a business enterprise). The Debtor is the consumer of leasing services. Therefore, FDUPTA applies.

The Landlord's reliance on *Leon v. Tapas & Tinos, Inc.*, 51 F. Supp. 3d 1290 (S.D. Fla. 2014) for the proposition that the Debtor, as a business enterprise, cannot be the purchaser of goods or services because it is not a "consumer" is misplaced because the plaintiff in *Leon* was the defendant's employee and therefore could not have been a consumer of goods and services of defendant employer.  In fact, in *Leon*, the court stated that "[t]he express purpose of FDUTPA is 'to protect the consuming public ***and legitimate business enterprises*** from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" 51 F. Supp. 3d at 1296 (*quoting* Fla. Stat. § 501.202(2))(emphasis added).

The complaint alleges that the Landlord acting in concert with Xtreme, sabotaged the Debtor's business activities by, *inter alia*:

- Removing the Debtor's signage (Complaint ¶¶ 30-39);

- Permitting the removal of Debtor's satellite front desk (id. ¶¶ 32-33);

- Withholding its approval for replacement signage (id. ¶¶ 35-36, 39);

- Refusing and/or withholding consent to place Debtor's signage on exterior marquee (id. ¶¶ 44-45 );

- Permitting construction by Xtreme that blocked access to Debtor's business (id. ¶¶ 40-42, and

- Permitting Xtreme to hold lock-out events that, at times, cut-off access to the Debtor's business (id. ¶¶ 47-50).

While the Landlord refers to the allegations as "vague[]", the statute is to be broadly construed in favor of the consumer, or in this case, the Debtor. *Tempay*, 945 F. Supp. 2d  at 1334 ("[t]he concept of 'unfair and deceptive' conduct is extremely broad").  The actions and events

described in the complaint at a minimum gave fair notice to the defendant-landlord that its conduct was, among other things, unfair, deceptive and oppressive toward its tenant.

Finally, as for the damages, the allegations in the complaint make it clear that the Debtor is seeking to recover for damages it already suffered. In fact, the complaint specifically states that as a result of the Defendants' conduct—which it dates from the start of the 2018 season--it has suffered damages as a result of the unfair, deceptive and oppressive conduct of the Landlord and Xtreme from beginning of 2018 through the date of the complaint. *See* Complaint ¶ 85. It is the damages that it has already suffered that has forced them to seek protection in this bankruptcy. There is no requirement at this stage of the proceedings for an actual dollar amount to be specified. *See Coffey v. WCW & Air, Inc*., 2018 WL 4154246 (N.D. Fla. Aug. 30, 2018)("to provide proper notice of their claims, Plaintiffs are only required to allege a theory that would *entitle them* to actual damages, not the facts needed to determine the precise amount they would recover if they were to prevail.") In *Hetrick v. Ideal Image Dev. Corp*., 372 Fed. Appx. 985 (11th Cir. 2010), cited by defendant, the Court reversed an order dismissing Plaintiff's FDUPTA claim because the stipulated facts did not preclude the possibility that Plaintiff's actual loss was caused by Defendants actions.

The Debtor went from operating a profitable business to bankruptcy and it has alleged that this was caused by the actions of the Defendants.

## Point VII

### **ASSUMPTION OF LEASE**

It is the intent of the Debtor to assume the lease in a timely manner. Accordingly, the arguments raised by the defendant Landlord are moot.

### Point VIII

### **THE CONSPIRACY CLAIM IS VIABLE**

Defendant Landlord argues that a conspiracy claim against it cannot be maintained because: (1) the commission of an underlying tort has not been alleged, (2) the Debtor has not alleged any acts by the Landlord beyond a breach of duties under the contract, and (3) because the acts were those of Xtreme and Xtreme is alleged to be the Landlord's agent, the conspiracy claim is flawed. For the following reasons, these arguments should be rejected.

First, the Debtor has alleged an underlying tort—the FDUPTA cause of action. This cause of action alleges acts that are separate and apart from the breach of contractual duties. *See Coffey,* 2018 WL 4154246*; see also Ron's Quality Towing, Inc. v. Southeastern Bank of Florida*, 765 So.2d 134, 136 (2000)(plaintiff towing company alleged that the defendant bank conspired with competitor of the plaintiff to delay repairs to the defendant's tow truck in order to force the plaintiff into insolvency).

However, even assuming for purposes of this motion that the FDUPTA cause of action cannot serve as the underlying tort, the rule cited by defendant has an exception applicable here; that is, "if the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort." *Churruca v. Miami Jai-Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977); *see also Walters v. Blankenship*, 931 So.2d 137 (Fla. 5th DCA 2006)(same).

The Florida Supreme Court in *Churruca* held that "the essential elements of this tort are a malicious motive and coercion through numbers or economic influence." Id. at 550. Here, the Debtor has alleged that, in concert with Xtreme, the defendant Landlord, permitted the expansion of Xtreme which interfered with the operation of the Debtor's business, discarded the Debtor's

signage, blocked access to the Debtor's business and permitted Xtreme to remove the Debtor's satellite desk at the entrance. These are deliberate acts intended to force the Debtor out of business. As such, the Debtor has sufficiently alleged a cause of action for conspiracy.

Finally, the fact that Xtreme has represented that it is the agent of the Landlord is not dispositive on a conspiracy claim in this case. There is an important exception to the doctrine cited by defendant that an agent cannot conspire with its principal; that is the "personal stake" exception. In *Mancinelli v. Davis*, 217 So.3d 1034 (Fla. 4th DCA 2017), the Court stated that where "an agent has a 'personal stake in the activities separate from the principal's interest,' the agent can be liable for civil conspiracy." Id. at 1037. In the pleading before the Court, the Debtor has alleged that both Xtreme and the Landlord are separate business entities, and both are working together. Complaint ¶¶ 6-7, 99-100. On this record, nothing more is required.

## CONCLUSION

For all the foregoing reasons, the Motion of MDG Powerlines, the Landlord, should be denied in its entirety.

LAW OFFICE OF KATHLEEN A. DALY, P.A.

    */s/ Kathleen A. Daly*
By:    Kathleen A. Daly

515 N. Flagler Dr., Ste. P300
West Palm Beach, FL 33401
(561) 293-8514
kdaly@kadalylaw.com

Attorney for the Debtor

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF and/or via email, on September 17, 2019, on all counsel or parties of record on the below/attached Service List.

*/s/ Kathleen A. Daly*
Kathleen A. Daly

## Service List

Jay M. Sakalo, Esq.
BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, 23rd Floor
Miami, FL 33131
Tel: (305) 374-7580
Email: jsakalo@bilzin.com

Susan E. Raffanello, Esq.
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse One
Miami, FL 33133
Tel: (305) 858-2900
Email: sraffanello@coffeyburlington.com

Attorneys for MDG Powerline Holdings, LLC