UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

IN RE:

SEVEN STARS ON THE HUDSON　　　　　　　　CASE NO: 19-17544-RBR
CORPORATION, d/b/a ROCKIN'JUMP

　　　　　Debtor,
_____/

SEVEN STARS ON THE HUDSON　　　　　　　　ADVERSARY NO.: 19-01230-RBR
CORPORATION, d/b/a ROCKIN'JUMP

　　　　　Plaintiff,

v.

MDG POWERLINE HOLDINGS, LLC,
and XBK MANAGEMENT LLC, d/b/a
XTREME ACTION PARK,

　　　　　Defendants.
_____/

## MDG POWERLINE HOLDINGS, LLC'S REPLY IN SUPPORT OF
## <u>MOTION TO DISMISS COMPLAINT</u>

　　　　Defendant MDG POWERLINE HOLDINGS, LLC ("MDG Powerline"), by and through undersigned counsel, hereby files its Reply in Support of its Motion to Dismiss the Complaint of Debtor/Plaintiff Seven Stars on the Hudson Corporation ("Plaintiff").

　　　　Plaintiff's Response confirms the fact that its claims are based entirely on the alleged conduct of MDG Powerline's co-defendant, XBK Management LLC ("Xtreme"). Yet Plaintiff's Complaint fails to allege the most basic elements of an agency relationship. Beyond that,

Plaintiff's claims are expressly barred by the parties' Lease Agreement, or otherwise fail on their face. Plaintiff's Complaint should be dismissed in its entirety.

### A. Plaintiff Has Not Pleaded the Elements of an Agency Claim.

In its Response, Plaintiff repeatedly conflates the standard for determining an agency relationship at summary judgment with the pleading standard for a claim based on an agency theory. Plaintiff's Response simply confirms that it has failed to plead the necessary elements of an agency relationship between MDG Powerline and Xtreme in its Complaint.

As Plaintiff recognizes, to adequately allege an agency relationship it must allege (1) a representation by the principal; (2) reliance on that representation by a third person; and (3) a change of position by that third person in reliance upon such representation to his detriment. (D.E. 9 at 3.) Under Florida law, the representation by the principal must have "cause[d] the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014).

According to its Response, Plaintiff bases its agency claim upon a series of exchanges between itself and Xtreme, or complaints Plaintiff made *to* MDG Powerline. (D.E. 9 at 3-4.) However, Plaintiff has not alleged that MDG Powerline – the principal – made any statements or representations to Plaintiff that would cause it to reasonably believe that Xtreme was MDG Powerline's agent. Allegations that the "Landlord communicated through Xtreme" (*id.* at 4) cannot, by themselves, support an agency claim, because a plaintiff must establish that the principal first made a representation causing it to reasonably believe that the agent was acting on the principal's behalf. *See Franza*, 772 F.3d at 1252. Plaintiff's assertion that MDG Powerline was "well aware" of Xtreme's alleged conduct (D.E. 9 at 4-5) misses the point: Absent allegations that MDG Powerline made some affirmative representation to Plaintiff leading

Plaintiff to believe that Xtreme was acting as MDG Powerline's agent, Plaintiff cannot assert a claim based on an agency theory. The Complaint contains no such allegations, as Plaintiff effectively concedes in its Response. Accordingly, all of Plaintiff's claims against MDG Powerline based on an agency theory should be dismissed.

B. **Plaintiff's Declaratory Judgment Claim Is Redundant**

Plaintiff's declaratory judgment claim (Count II) is a carbon copy of its claims for breach of the covenant of quiet enjoyment and breach of the implied duty of good faith and fair dealing. (*Compare* D.E. 1 ¶ 67(a)-(h) *with* ¶¶ 30-59, 68-71 & 78(a)-(m).) Because the issues raised in this claim are identical to those raised in Plaintiff's contract-related claims, this declaratory judgment claim should be dismissed as duplicative. *See Fernando Grinberg Tr. Success Int. Properties LLC v. Scottsdale Ins. Co.*, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010); *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017).

Relying on *Kenneth F. Hackett & Assocs., Inc. v. GD Cap. Info. Tech. Solutions, Inc.*, 744 F.Supp.2d 1305 (S.D. Fla. 2010), Plaintiff argues that its declaratory claim should survive because it is seeking "forward-looking relief," But Plaintiff misapprehends *Kenneth F. Hackett*, which found that the declaratory claim was not duplicative of the breach of contract claims because the plaintiff could lose on its breach of contract claim and nevertheless be entitled to declaratory relief. *Id.* at 1311. That is not the case here: If MDG Powerline is not liable for Xtreme's alleged mishandling of Plaintiff's signage and front desk, then Plaintiff cannot be compelled to "restore" these items. And under no circumstances is Plaintiff entitled to a declaratory judgment against MDG Powerline for its own waiting line or display space for its

brochures, as these are not even contemplated in their Lease Agreement. This unnecessarily duplicative claim should be dismissed.

C. **Plaintiff's Quiet Enjoyment Claim Is Expressly Barred by the Lease.**

In Count II of the Complaint, Plaintiff asserts a claim against MDG Powerline for breach of the covenant of quiet enjoyment based *solely* on the alleged conduct of the other tenant, Xtreme. (D.E. 1 ¶ 71 ("Landlord permitted Xtreme to act as its agent when dealing with the Debtor. Xtreme's actions as described herein are therefore attributable to the Landlord").) This claim is expressly *disallowed* by the covenant of quiet enjoyment contained in the Lease Agreement, which expressly states: "**Landlord shall not be liable for any interference or disturbance by other tenants or third persons**." (D.E. 1-1 at 35, Sec. 20.21.) Contrary to the express terms of the Lease, Plaintiff improperly attempts to allege a breach of this covenant based solely on Xtreme's alleged conduct.

Plaintiff cannot identify any cognizable legal basis to ignore this unambiguous contract term and attempt to attach liability for precisely the claims that the parties agreed to disclaim in the Lease Agreement. The only case cited in Plaintiff's Response, *Fredrick v. Squillante*, 144 So.2d 848 (Fla. 2d DCA 1962), is wholly distinguishable. *Fredrick* does *not* concern a contractual provision prohibiting liability for the conduct of a tenant or third party. Rather, *Fredrick* concerns a *negligence* claim against a real estate broker arising from statements made by the broker's agent; the court held that the broker could not disclaim responsibility for an agent's conduct after accepting the benefit of the agent's actions by collecting a commission. *Id.* at 849. This legal principle has nothing all to do with Plaintiff's attempt to assert a breach of contract claim that is *expressly disclaimed by the contract itself*. And of course, there are no allegations that MDG Powerline received any benefit from Xtreme.

"Under Florida law, when the terms of a contract are unambiguous, the Court is bound to give the language therein its plain and ordinary meaning." *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1109 (11th Cir. 1990). By its plain terms, the Lease Agreement disallows any claim for breach of the covenant of quiet enjoyment based on the conduct of other tenants or third persons. Count II therefore fails on its face.

        D.        **Plaintiff's Good Faith/Fair Dealing Claim Fails.**

In its Complaint, Plaintiff attempted to assert a claim for breach of the implied covenant of good faith and fair dealing against MDG Powerline based on the conduct of Xtreme or nonexistent contractual duties. (*See, e.g.,* D.E. 1 ¶ 78(e)&(f).) In its Response, Plaintiff appears to retreat from these allegations in the Complaint, and it now bases its implied covenant claim exclusively on its allegations that it was not provided with outside signage or a "satellite front desk" at the facility. (Response at 9.)  Nevertheless, this claim fails.

Once again, Plaintiff attempts to attribute Xtreme's alleged conduct to MDG Powerline. The Complaint alleges that Xtreme, not MDG Powerline, "willfully refused" to provide advertising space on the marquee (D.E. 1 ¶ 45), and that Xtreme, not MDG Powerline, "dismantled and removed" Plaintiff's front desk during renovations. (*Id.* at ¶ 33.) As discussed above, the Complaint fails to adequately allege an agency relationship between Xtreme and MDG Powerline, and therefore Plaintiff cannot allege that MDG Powerline breached any provisions of the Lease Agreement based on Xtreme's conduct. And to the extent that Plaintiff attempts to base this claim on its claim for breach of the covenant of quiet enjoyment (D.E. 9 at 9), this clearly fails, as any such claim is expressly barred under the terms of the Lease, as previously discussed.

E. **Plaintiff's Constructive Eviction Fails.**

As discussed in MDG Powerline's Motion to Dismiss (D.E. 7 at 10-11), to sustain a claim for constructive eviction under Florida law, a tenant must have abandoned the premises as a result of the landlord's actions allegedly giving rise to the claim. *See, e.g., Richards v. Dodge*, 150 So.2d 477, 481 (Fla. 2d DCA 1963) ("abandonment of the premises within a reasonable time after the landlord's wrongful act is a necessary element of constructive eviction"); *Kaplan v. McCabe*, 532 So.2d 1354, 1356 (Fla. 5th DCA 1988) (same); *Bass v. Wollitz*, 384 So.2d 704, 706 (1st DCA 1980) (same). While Plaintiff baldly suggests that the law on constructive eviction has "evolved" (D.E. 9 at 9), it cites **no authority** overturning or contradicting the holdings of *Richards*, *Kaplan*, or *Bass*. In fact, the rule requiring abandonment of the premises to sustain a constructive eviction claim remains the controlling law in Florida today, as more recent cases confirm. *See Wolfe v. Glasgow*, 2009 WL 10670910, at *5 (M.D. Fla. Mar. 31, 2009).

Plaintiff cites a single case in its Response, *Bermuda Ave. Shopping Ctr. Assocs., L.P. v. Rappaport*, 565 So.2d 805 (Fla. 5th DCA 1990),[1] which creates no conflict, as the plaintiff in that case seeking constructive eviction had closed its business as a result of the landlord's conduct. *Id.* at 807. Indeed, the court in *Bermuda Ave.* cites *Kaplan* with approval. *Id.* at 806.

It remains the law in Florida that a tenant must have abandoned the premises in order to sustain a claim for constructive eviction under Florida law. *Richards*, 150 So.2d at 481; *Kaplan*, 532 So.2d at 1356; *Bass*, 384 So.2d at 706; *Wolfe*, 2009 WL 10670910 at *5. Because Plaintiff has not alleged that it abandoned the premises, its constructive eviction claim fails.

F. **Plaintiff Cannot Recover for "Lost Business" Under FDUPTA.**

---

[1] In its Response, Plaintiff incorrectly identifies this case as *Hudson Pest Control v. Westford Asset Mgmt.* (D.E. 9 at 10.)

As the Eleventh Circuit has repeatedly held, actual damages under FDUPTA "must be direct damages, not indirect and consequential damages." *Hetrick v. Ideal Image Dev. Corp.*, 372 Fed. Appx. 985, 991 (11th Cir. 2010). *See also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 Fed. Appx. 814, 815 (11th Cir. 2017) (same). Thus, "FDUTPA damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016).

In the Complaint, the only damages alleged in Plaintiff's FDUPTA claim are "loss of business and damage to its competitive advantages it has earned in the marketplace." (D.E. 1 at 26.) Significantly, Plaintiff does not dispute that "lost business" and goodwill are consequential damages, not direct damages. *See BPI Sports, LLC v. Labdoor, Inc.*, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016) (finding that "competitive harm, diverted or lost sales, and harm to the goodwill and reputation" were consequential damages and dismissing FDUPTA claim); *Emondson v. 2001 Live, Inc.*, 2017 WL 10085029, at *2 (M.D. Fla. July 25, 2017) ("competitive harm, lost sales, harm to the goodwill and reputation" are consequential damages not recoverable under FDUPTA).

Plaintiff instead attempts to evade the reach of this black-letter law with several straw-man arguments. First, Plaintiff asserts that it is seeking to recover "damages it has already suffered." (Response at 13.) This, again, misses the point: "Lost business" constitutes nonrecoverable consequential damages, whether it be *past* lost business or *future* lost business. Plaintiff then complains that it is not required to allege an "actual dollar amount" of damages. (*Id.*) MDG Powerline has not argued otherwise; rather, MDG Powerline argues that Plaintiff

may only recover *direct* damages under FDUPTA. *Hetrick*, 372 Fed. Appx. at 991; *HRCC, Ltd.*, 703 Fed. Appx. at 815. Finally, Plaintiff asserts that its FDUPTA claim should survive to preserve the "possibility" that it could demonstrate an "actual loss." (Response at 13.) However, the Court cannot ignore what Plaintiff actually pleaded in its FDUPTA claim, which ***only*** claims as damages "the loss of business and damage to its competitive advantages it has earned in the marketplace." (D.E. 1 at 26.) Simply put, Plaintiff has not even alleged that it suffered direct damages – a fatal defect in its FDUPTA claim.

Plaintiff's FDUPTA claim also fails because it again is based on Xtreme's conduct, not the conduct of MDG Powerline, and Plaintiff's alleged injury did not arise from a consumer transaction. *Leon v. Tapas & Tintos, Inc.*, 51 F.Supp.3d 1290, 1297 (S.D. Fla. 2014). For all of these reasons, Plaintiff's FDUPTA claim should be dismissed.

G. **Plaintiff Cannot Salvage Its Conspiracy Claim**

As discussed in MDG Powerline's Motion to Dismiss, Plaintiff's civil conspiracy claim is defective for multiple reasons. (D.E. 7 at 15-17.) In its Response, Plaintiff asserts three separate arguments to salvage this claim – but all of them fail.

First, Plaintiff argues that its FDUPTA claim suffices as an underlying tort claim to support its conspiracy claim. (D.E. 9 at 14.) However, as discussed above, Plaintiff's FDUPTA claim is fatally flawed and subject to dismissal. Accordingly, Plaintiff's conspiracy claim must also be dismissed. *See Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F.Supp.2d 1272, 1280 (M.D. Fla. 2008) (dismissing civil conspiracy claim when underlying FDUPTA claim fails).

Next, Plaintiff argues that it is actually asserting the independent tort of civil conspiracy, or "force of numbers" or "economic boycott" conspiracy. (D.E. 9 at 14-15.) This narrow doctrine is clearly inapplicable here.

Under Florida law, the independent tort of conspiracy is actionable "where a plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual could not possess." *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So.2d 1025, 1029 (Fla. 3d DCA 1981) (citing *Churruca v. Miami Jai-Alai, Inc.*, 353 So.2d 547 (Fla. 1977)); *see also Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co., Inc.*, 2007 WL 1099124, at *5 (S.D. Fla. Apr. 10, 2007) (same). For this doctrine to apply, the alleged conspiracy must be among "separate economic groups or forces," rather than members of the same company or entity, and those entities must be "identically situated to a plaintiff." *Watershed Treatment*, 2007 WL 1099124 at *6; *Buckner*, 403 So.2d at 1029. Generally, such an "economic boycott" conspiracy must include more than two conspirators. *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *8 n.4 (S.D. Fla. June 4, 2015).

Here, the Complaint merely alleges that Xtreme and MDG Powerline engaged in a "conspiracy to deprive the Debtor of its rights under the Lease as well as interference with its business opportunities and customer base." (D.E. 1 ¶ 100.) Because the Complaint alleges that Xtreme was acting as an agent of MDG Powerline, Plaintiff cannot now claim that they are acting as "separate economic forces," as required to sustain the independent tort of conspiracy. *Buckner*, 403 So.2d at 1029. Moreover, none of the alleged misconduct – taking down Plaintiff's signs and inhibiting access to its business (D.E. 1 ¶ 99) – arose from some "peculiar power of coercion" resulting from the combined power of Xtreme and MDG Powerline. MDG Powerline would not need to rely on Xtreme to "deprive the Debtor of its rights under the Lease"; MDG Powerline surely possesses this power on its own. Nor are Xtreme and MDG Powerline "identically situated" with respect to Plaintiff: One is a co-tenant and alleged competitor, the other is a

landlord in privity. In such circumstances, a conspiracy claim cannot be sustained under the "force of numbers" exception. *Watershed Treatment*, 2007 WL 1099124 at *5-6.

Plaintiff reaches for the independent tort of conspiracy because it cannot bring a traditional conspiracy claim based on these alleged facts. "[A]n actionable conspiracy generally cannot exist between an entity and its officers, ***agents***, or employees." *Five for Entm't S.A. v. Rodriguez*, 2013 WL 4433420, at *13 n.10 (S.D. Fla. Aug. 15, 2013) (emphasis added); *Zike, LLC v. Catalfumo*, 2013 WL 12080225, at *8 (S.D. Fla. Feb. 22, 2013) (citing *Hoon v. Pate Constr. Co.*, 607 So.2d 423, 430 (Fla. 4th DCA 1992)) (same). Plaintiff attempts to avoid the intra-corporate conspiracy doctrine by seeking refuge in the "personal stake" exception, under which an agent and a principal may be deemed separate co-conspirators where the agent is acting to advance its "personal interests, wholly and separately from the corporation." *Mancinelli v. Davis*, 217 So.3d 1034, 1037 (Fla. 4th DCA 2017) (citing *Microsoft Corp. v. Big Boy Distr. LLC*, 589 F.Supp.2d 1308, 1323 (S.D. Fla. 2008)). Moreover, for this exception to apply, the agent's conduct must be motivated ***solely*** by its personal bias. *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F.Supp.3d 1319, 1325 (M.D. Fla. 2016), *aff'd,* 703 Fed. Appx. 814 (11th Cir. 2017). The Complaint contains no allegations that Xtreme was acting solely to advance any personal stake it may have had. The personal stake exception is clearly inapplicable.

## CONCLUSION

For the reasons stated above and in its Motion to Dismiss (D.E. 7), MDG Powerline respectfully requests that the Court enter an Order dismissing Counts I, II, III, IV, V, VI and VIII

of the Complaint, and for such other relief as the Court deems just and proper.

                Respectfully submitted,

                BILZIN SUMBERG BAENA
                PRICE & AXELROD LLP
                1450 Brickell Avenue, 23rd Floor
                Miami, Florida 33131
                (305) 374-7580
                By: ___/s/ *Jay M. Sakalo*___
                      Jay M. Sakalo
                      Fla. Bar No. 156310

                         and

                **COFFEY BURLINGTON, P.L.**
                2601 South Bayshore Drive, Penthouse One
                Miami, Florida 33133
                Tel: 305-858-2900
                Fax: 305-858-5261

                By: ___*s/Susan E. Raffanello*___
                Susan E. Raffanello, Florida Bar No. 676446
                sraffanello@coffeyburlington.com
                Scott A. Hiaasen, Florida Bar No.: 103318
                shiaasen@coffeyburlington.com
                lmaltz@coffeyburlington.com
                lperez@coffeyburlington.com
                service@coffeyburlington.com

                *Counsel for Defendant MDG Powerline*
                *Holdings, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on September 27, 2019, on all counsel or parties of record on the below/attached Service List.

                                              *s/Jay M Sakalo*

## **Service List**

Kathleen A. Daly, Esq.
*Counsel for Debtor/Plaintiff*
Law Office of Kathleen A. Daly, P.A.
515 North Flagler Drive
Suite P300
West Palm Beach, Florida 33401
Tel: 561-293-8514
kdaly@kadalylaw.com