**EXHIBIT 15**

# simply legal

June 1, 2018

*via FedEx and e-mail*

Carl G. Santangelo
3300 N. Federal Highway, Suite 200
Fort Lauderdale, FL 33306
csantangelolaw@aol.com

**Re:** Notice of Non-Compliance of Lease Agreement entered into between MDG Powerline Holdings, LLC and Stars on the Hudson Corp. regarding the leased property located at 5300 Powerline Road, Fort Lauderdale, Florida 33309.

Dear Mr. Santangelo,

The undersigned has been retained by MDG Powerline Holdings, LLC ("Landlord") in regard to that certain Lease Agreement entered into between Landlord and Seven, ("Tenant"), dated November 23, 2015, and its subsequent amendments (collectively, the "Lease Agreement"). It has come to Landlord's attention that Tenant is in violation of the Lease Agreement and that these violations are disturbing the business operations of Landlord's other tenants at 5300 Powerline Road, Fort Lauderdale, FL 33309 ("Premises"). Such disruptive behavior shall not be tolerated and must cease immediately. Landlord demands that the issues below be resolved by the deadline stated herein.

**No Outside Food or Beverage**

To date, your client's most egregious violation has been that it has allowed patrons to bring outside food and alcoholic beverage onto the Premises as recently as May 12, 2018. By allowing its patrons to do so, Tenant created additional and unwarranted liabilities for the Landlord, as well as put the liquor license in jeopardy of Landlord's other tenants. Such reckless behavior that negatively impacts Landlord and the other tenants of the Premises is completely unacceptable. This letter shall serve to put Tenant on notice that, as stated outside the Premises and your client's lease space, **no outside food or beverage is permitted**. There shall be absolutely **no exceptions** to this rule. Tenant must comply with all of Landlord's rules and regulations. Further, it is stated in Section 6.02(b) of the Lease Agreement that,

> "Tenant shall comply at all times with the Rules and Regulations[...]as Landlord may from time to time reasonably adopt (and which Tenant has notice) for the safety, care and cleanliness of the Property or the preservation of good order therein."

**Registration Desk**

This letter also serves as official notice that your client must remove its current registration desk which is located in the lease space of another tenant. Per the Second Amendment to the Lease Agreement, because Xtreme Action Park will be reconstructing its front desk area, Tenant will be provided with a front desk space where your client may keep a POS and cash box and can carry out all of its registration and waiver needs.

Therefore, the provisional registration desk that your client currently has must be removed by the deadline below. Specifically, Section 3(h)(c) of the Second Amendment states,

> "In the event that Landlord reconstructs and/or expands the front desk area outside the lease Premises within the building and said reconstruction provides sufficient room for Tenant to place the registration area within same, the parties agree that Tenant shall be permitted to perform its registration activities, subject to the terms and conditions set forth by Landlord, in the above mentioned reconstructed and expanded front desk area."

**Hours of Operation**

It has also come to Landlord's attention that Tenant is advertising that it will open earlier than normal business hours. Section 6.01 of the Lease Agreement specifically states that, "Tenant shall continuously and uninterruptedly operate its business....during all hours established by the Landlord as the hours of operation for the Property, provided Landlord shall not require that Tenant open for business before 12:00 p.m. or remain open after 9:00 p.m., except:[...](ii) when a majority of other tenants at the Property will be open."

Due to the layout of the Premises and safety and liability concerns, it's important that your client maintain the same hours of operation as its co-tenant, Xtreme Action Park, since your client must use the entrance and exit located in Xtreme Action Park's lease space. These hours of operation are from 11 a.m. – 10 p.m. from Sunday to Thursday and 11 a.m. – 12 a.m. on Friday and Saturday. Therefore, your client must immediately cease advertising that it will open earlier than the set hours of operation. In any event, before your client even may consider operating during a different set of hours, it must consult with Landlord beforehand, which must provide Tenant with its written consent before it can advertise any operating hours that differ from the ones currently in place.

**HVAC Maintenance**

Additionally, your client is not maintaining its HVAC system properly and has not hired the appropriate professionals to do so. Per Section 7 of the Lease Agreement, this is Tenant's responsibility. Furthermore, it's important that Tenant maintain all HVAC systems properly, so it does not endanger the health of any person that visits or works on Tenant's lease space. Therefore, your client must contract for such services by the and provide Landlord with a copy of such contract fully executed by all parties by the deadline stated below. If Tenant fails to contract with any service company, then Landlord shall do so on Tenant's behalf and bill Tenant for all charges related to that service.

Section 7.02 of the Fourth Amendment to the Lease Agreement specifically states that,

> "Tenant shall contract with a service company (which Landlord, at its option, may reasonably designate or approve) for the quarterly (every three month period) maintenance of the heating, ventilating and air conditioning equipment serving the Premises. Tenant shall furnish a copy of the service contract to Landlord within ten (10) days after opening for business, and a copy of any subsequent contracts from time to time during the term."

**No Television, Merchandise, Vending Machines, or Amusement Devices**

Tenant must also remove immediately the television and merchandise that it has set-up outside of Tenant's leased space and has installed in the lease space of another tenant. Additionally, Tenant must remove the hurricane machine and the candy machine installed in its leased space. Having such items violates the Rules and Regulations included in the Lease Agreement. In relevant part, Exhibit C states,

*"No loudspeakers, televisions, photographs, radios, tape players or other used in a manner as to be heard or seen outside of the Premises without the prior written consent of Landlord;*

*Tenant shall not solicit business or distribute advertising or promotional material in the common areas of the property; and*

*Tenant shall not operate any coin or token operated vending machine or similar device (including, without limitation, pay telephone, pay toilets, scales, amusement devices, and machines for the sale of beverages, foods, candy, cigarettes or other merchandise and/or commodities)[...]"*

Lastly, we have been informed by Xtreme Action Park that because Tenant is in breach of its Lease Agreement, effective immediately, Rockin' Jump will no longer receive any discount on food and beverage from Xtreme Action Park until its business operations are brought into compliance. Section 20.15 of the Lease Agreement specifically states,

*"So long as Tenant is not in breach of this Lease, when Tenant purchases food or beverage from Xtreme Action Park for events taking place at the Premises, Tenant will receive a discount of fifteen percent (15%) off Xtreme's published prices."*

In light of all the issues addressed above, Tenant must remedy all matters no later than **June 6, 2018**. If Tenant fails to do so, Landlord will not hesitate to exercise any and all legal or equitable remedies available to it in situations where Tenant has defaulted on the Lease Agreement. Nothing herein shall be deemed a waiver of any rights or remedies to Landlord, all of which are hereby expressly reserved.

Govern yourself accordingly .

Sincerely,

*[signature]*

Maria Jose Granados-Godoy, Esq.

MJG/LS

CC: Rockin' Jump
7901 Stoneridge Dr., Ste. 503
Pleasanton, CA 94588
Attn: Joseph Freschi

Seven Stars on the Hudson Corp.
d/b/a Rockin' Jump
2108 NE 63rd Street
Fort Lauderdale, FL 33308
Attn: Jens Berding

# simply legal

July 31, 2018

via FedEx and e-mail

Carl G. Santangelo
3300 N. Federal Highway, Suite 200
Fort Lauderdale, FL 33306
csantangelolaw@aol.com

Re: Second Notice of Non-Compliance of Lease Agreement entered into between MDG Powerline Holdings, LLC and Stars on the Hudson Corp. regarding the leased property located at 5300 Powerline Road, Fort Lauderdale, Florida 33309.

Dear Mr. Santangelo,

As you are aware, the undersigned represents MDG Powerline Holdings, LLC ("Landlord") in regard to that certain Lease Agreement entered into between Landlord and Seven, ("Tenant"), dated November 23, 2015, and its subsequent amendments (collectively, the "Lease Agreement"). As we first addressed in the letter we sent on June 1, 2018, Tenant continues to violate the Lease Agreement and these violations continue to disturb the business operations of Landlord's other tenants at 5300 Powerline Road, Fort Lauderdale, FL 33309 ("Premises").

While Tenant has addressed and resolved some of the issues mentioned in the first notice, the most egregious breaches of the Lease Agreement persist to date. Tenant continues to provoke Landlord's authority by blatantly breaching the Lease Agreement despite Landlord's demand that Tenant cease all offending behavior. With this second notice, Tenant is put on notice that if **ALL** of the issues in this second notice are not cured to Landlord's satisfaction within **thirty (30) days** of receipt of letter, Landlord will terminate the Lease Agreement and initiate an action for possession of the Premises.

**No Outside Food or Beverage**
To date, your client's most egregious violation has been that it continues to allow patrons to bring outside food and alcoholic beverage onto the Premises. Despite the first notice of non-compliance, Tenant refuses to address this ongoing violation. Additionally, since the first notice, officials from the Division of Alcoholic Beverages and Tobacco have come to inspect the Premises and Xtreme Action Park has been warned that any alcoholic beverages brought onto the Premises from outside sources will result in Xtreme having its liquor license revoked. Tenant cannot continue to create such additional and unwarranted liabilities for the Landlord. This letter shall serve to reiterate that absolutely **no outside food or beverage is permitted**. There are **no exceptions** to this rule. Tenant must comply with all of Landlord's rules and regulations. Further, it is stated in Section 6.02(b) of the Lease Agreement that,

> "Tenant shall comply at all times with the Rules and Regulations[…]as Landlord may from time to time reasonably adopt (and which Tenant has notice) for the safety, care and cleanliness of the Property or the preservation of good order therein."

Section 22 of Exhibit C of the Lease Agreement also states,

t: 305.858.6208   f: 305.851.0026   www.simplylegal.co
1395 Brickell Avenue, Suite 900, Miami, FL 33131

# simply legal

"Tenant shall not store, display, sell or distribute any alcoholic beverage...unless specifically permitted in the Lease."

**Hours of Operation**

Despite the first notice of non-compliance, Tenant continues to open earlier than normal business hours. Section 6.01 of the Lease Agreement specifically states that, "Tenant shall continuously and uninterruptedly operate its business....during all hours established by the Landlord as the hours of operation for the Property, provided Landlord shall not require that Tenant open for business before 12:00 p.m. or remain open after 9:00 p.m., except:[...](ii) when a majority of other tenants of the Property will be open."

As we have already explained, due to the layout of the Premises and safety and liability concerns, it's important that your client maintain the same hours of operation as its co-tenant, Xtreme Action Park, since your client must use the entrance and exit located in Xtreme Action Park's lease space. These hours of operation are from 11 a.m. – 10 p.m. from Sunday to Thursday and 11 a.m. – 12 a.m. on Friday and Saturday. Therefore, your client must immediately cease operating earlier than the set hours of operation. Tenant's failure to keep the Premises open for business during the stipulated hours is conclusively deemed to be a violation and breach of the Lease which cannot afterward be cured. At its option, Landlord may enforce this provision of the Lease Agreement in an action for injunctive relief, in addition to any other remedies including termination and an action for possession of the Premises.

To make matters worse, Tenant is also allowing individuals to enter on to Xtreme Action Park's premises when it is not open for business. As we have already explained, this behavior presents a very serious and unwarranted liability for Xtreme should any individual be injured when Xtreme's operations are closed. Due to Tenant's ongoing disregard of this breach, Landlord will not tolerate the foregoing and will take all preventative safety measures necessary, including but not limited to initiating and action for possession of the Premises.

In light of the issues addressed above, Tenant must remedy **ALL MATTERS** addressed in this notice no later than **thirty (30) days** from receipt of this notification. If Tenant fails to do so, Landlord will terminate the Lease Agreement and initiate an action for possession of the Premises in addition to all other legal and equitable remedies available. Nothing herein shall be deemed a waiver of any rights or remedies to Landlord, all of which are hereby expressly reserved.

Govern yourself accordingly.

Sincerely,

Kristina E. Wilson, Esq.

MJG/LGS

CC:   Rockin' Jump                              Seven Stars on the Hudson Corp.
      7901 Stoneridge Dr., Ste. 503             d/b/a Rockin' Jump
      Pleasanton, CA 94388                      2108 NE 63rd Street
      Attn: Joseph Preschi                      Fort Lauderdale, FL 33308
                                                Attn: Jens Berding