UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

In re:

SEVEN STARS ON THE HUDSON
CORPORATION, d/b/a ROCKIN' JUMP          Case No 19-17544 - SMG
                                          Chapter 11
  Debtor,
_____/

SEVEN STARS ON THE HUDSON                 Adversary Proceeding
CORPORATION, d/b/a ROCKIN' JUMP,          No. 19-01230

  Plaintiff
v.

MDG POWERLINE HOLDINGS, LLC
AND XBK MANAGEMENT LLC,
d/b/a XTREME ACTION PARK,

  Defendants.
_____

**DECLARATION OF JENS BERDING IN SUPPORT OF
EMERGENCY MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

  JENS BERDING, Pursuant to 28 U.S.C. § 1764, I hereby declare as follows:

  1) I am the President of the Debtor, Seven Stars on the Hudson, LLC (the "Debtor").

  2) I submit this sworn Declaration in further support of the Debtor's

1

Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction ("Emergency Motion") arising out the actions of XBK Management, LLC a/k/a Xtreme Action Park ("Xtreme").

3) The Debtor is the franchisee-owner and operator of a trampoline park known as Rockin' Jump and located at 5300 Powerline Road, Ft. Lauderdale, Florida. The Debtor's business is approximately 22,000 sq. feet and is situated in a mixed use facility of sports and entertainment attractions approximating 200,000 sq. feet. This larger facility is primarily comprised of attractions offered by Xtreme, a gym and a basketball/volleyball facility.

4) The Debtor's Park is located at the back of the Xtreme Action Park facility.

5) The Debtor leases its space from a Landlord, MDG Powerline Holdings LLC ("Landlord") which is affiliated with Xtreme. They share one or more principals.

6) The facts giving rise to this Emergency Motion occurred on December 6, 2019. I drove into the parking lot of the Xtreme Action Park facility and saw that Xtreme had shut down its facility for lock-out event. This lock-down event cut-off the Debtor and more importantly, the Debtor's customers, to the Debtor's trampoline park.

7) Having participated in one of these events previously, I understand a

lock-out event to be an event whereby a business purchases the right to use the amenities of the facility (in this case Xtreme Action Park) exclusively for its own employees or guests. Xtreme contracts with an outside party to close the facility to the public for the exclusive use by the outside party for which only Xtreme benefits and is paid accordingly

8) As I approached the entrance to the facility where Debtor's business is located, I saw a greeter (an Xtreme employee) stationed outside the facility. This greeter was telling anyone who approached the front entrance (including me) that the entire facility was closed. This was wrong. Debtor's Park was open for business.

9) When I inquired about this, I was told by this Xtreme employee that the Park was closed—even the trampoline park.

10) I also saw a sign on a metal stand (behind where the Xtreme greeter was standing) which stated the following:

**THIS PARK CLOSED UNTIL 3:00 P.M. TODAY FOR A PRIVATE EVENT**

11) In small lettering beneath this sign, I saw the following: "Trampoline Park Open All Day". A copy of the sign is annexed as Exhibit 3.

12) Even though the sign advised that the Debtor's business was open, it was of little or no value because Xtreme stationed a greeter in front of the facility and in front of this sign, advising of a park-wide shut down.

13) After I was finally permitted to enter, one of the Debtor's staff

3

members tried to gain access. She was told that the facility was closed and she was initially denied access.

14) Xtreme's social media account (Instagram) also announced the closing of the facility for a "Private Event". A photograph copy of Xtreme's Instagram page for December 6, 2019 is annexed as Exhibit 4.

15) It was only when I continued to insist on my right of access for both our customers and employees and only after I sent one of Debtor's employees to stand alongside the Xtreme greeter, did Xtreme relent and agree to have its greeter announce that the trampoline park was open during this "Private Event" and to permit trampoline customers to enter through a side entrance not normally open to the public.

16) Even with this limited "accommodation", the Debtor was left short-handed for a portion of the day because for a period of time, I had to station an employee-greeter in the parking lot of the facility to ensure that misleading information was not communicated to customers.

17) I have since learned that several customers that tried to enter the Debtor's business that day were turned away by an Xtreme employee who advised falsely that the trampoline park was closed.

18) The Holiday season is about to begin. It is anticipated that Xtreme will be conducting more lock-out events. Without notice in advance so that Debtor

can properly prepare, the Debtor's business will be negatively impacted by the loss of customers.

19) Xtreme is already aware of the impact of the lock-out events on Debtor's business as it has agreed to pay the Debtor for one such event in mid-January. A copy of the invoice sent by Debtor and paid by Xtreme for this event is annexed as Exhibit 5.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 16, 2019

_____
Jens Berding