**EXHIBIT "A"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

In re:

SEVEN STARS ON THE HUDSON CORPORATION d/b/a ROCKIN' JUMP,

Debtor,

_______________________________________/

CASE NO. 19-17544-RBR
Chapter 11

SEVERN STARS ON THE HUDSON CORPORATION d/b/a ROCKIN' JUMP

Plaintiff,

vs.

MDG POWERLINE HOLDINGS, LLC AND XBK MANAGEMENT LLC d/b/a XTREME ACTION PARK,

Defendants.

_______________________________________/

Adversary Proceeding
No. 19-AP-1230-SMG

**AFFIDAVIT OF DILIGENCE OF KAI E. JACOBS IN OPPOSITION TO PLAINTIFF'S MOTION TO COMEPL AND FOR SANCTIONS**

**BEFORE ME**, the undersigned authority, personally appeared, Kai E. Jacobs, who, upon being duly sworn, deposes and states, as follows:

1. My name is Kai E. Jacobs. I am over the age of eighteen and otherwise *sui juris*.

2. I make this affidavit based upon personal knowledge of the facts set forth below and the records of the South Florida Business Law Group as they are maintained in the ordinary course of their business.

3. I submit this affidavit in opposition to the motion of Plaintiff Seven Stars On The Hudson Corporation, d/b/a Rockin' Jump To Compel And For Sanctions Against Defendant XBK Management LLC, d/b/a Xtreme Action Park ("**XBK**") (the "**Motion**").

4. I am an attorney admitted to practice law in the State of Florida and have been so licensed continuously since 1993.

5. South Florida Business Law Group has served as XBK's counsel in this cause since service was first effected on it.

6. Since its initial appearance, I have been the attorney with primary responsibility for the coordination of XBK's defense of this matter.

7. I have also been the principal point of contact and coordination between the law firm and XBK in formulating its response to Plaintiff's First Request For Production (the "**Request**").

8. I personally prepared the response after meeting and corresponding with XBK's personnel on various dates between July 9, 2020 and August 13, 2020 to coordinate the diligent search and inquiry into information responsive to the Request.

9. The first meeting to discuss what documents could be identified in response to the Request took place on July 9, 2020. This meeting was conducted almost a week prior to the scheduling conference of counsel, which took place on July 15, 2020.

10. On July 17, 2020, counsel for the parties communicated concerning the establishment of electronic data search terms for information responsive to the Request.

11. That notwithstanding, on July 21, 2020, I communicated with Seth Behar, an XBK employee knowledgeable about the party's stored data, concerning the status and coordination of documentation responsive to the Request and the establishment of a Google Chrome extension to allow for the law firm to access the electronic data XBK was gathering.

12. On July 27, 2020, I again communicated with Seth Behar concerning the status of data collection and the use of an online application known as cloudHQ (www.cloudHQ.net) to manage and retain all of the electronic data in its native format.

13. In the course of these communications, I learned that there are no paper documents maintained by XBK that would be responsive to the Request. All information is preserved in e-mail format (EML) or portable document format (PDF). Thus, all efforts were focused on making production of the electronic data.

14. Significant problems were encountered in transferring the data from XBK to the law firm.

15. From July 27, 2020 to August 5, 2020, I further worked with Mr. Behar to review the Request, establish protocols for the sequestering of electronic data, identifying information responsive to the Request, setting up the electronic application link that would allow for sharing of information between XBK and the law firm and, ultimately, attempting to understand why XBK's electronic data would not transfer to an online file folder set up by my office in the Microsoft Office Outlook application or the cloud-based storage application, Box.

16. Ultimately, I discovered (along with Mr. Behar) that the data would only transfer to a labeled file created through cloudHQ and maintained within the suite of Google applications. In this case, the files needed to be delivered to a folder in a G-mail account.

17. For that purpose, then, I created a G-mail account specifically for the holding and production of the documents responsive to the Request. On August 3, 2020, we first created the e-mail account sflblgproductions@gmail.com, which account Google officially deemed as claimed on August 5, 2020.

18. Upon creation of the account, I attempted to secure transfer of XBK's data but was unable to. I was not aware as to why the transfer did not work, as the firm has no software specifically designated for the production of electronic data or the storage of EML files in their native format. Similarly, I have no prior experience with the cloudHQ application.

19. On August 13, 2020, based on discussions had with Mr. Behar, I was able to create and serve the written response to the Request. As of this date, Mr. Behar and I had still not been able to successfully transfer the data, despite several attempts to do so.

20. To be clear, the results of changes to the software settings were not immediately evident. Because the production contained 570 separate email threads, I had to wait several hours to see if the files transferred before initiating or requesting another change.

21. Subsequent to the issues stemming from the attendant bankruptcy's dismissal and questions concerning the Court's retention of jurisdiction over this cause in August and September 2020, I sought to resolve the technical issues preventing my office's ability to access the electronic data and review it for responsiveness and privilege.

22. Not until October 2, 2020 was I able to access the electronic data files that XBK had first compiled back in August 2020.

23. At that time, I learned that I could only allow for production of the information as it was stored by granting access to the e-mail account or granting an outsider access to said account. To be clear, allowing outside access has also proven problematic because of Google safety protocols intended to detect account sign-ins from new locations or different computers.

24. As a result, on October 2, 2020, I directed that my office convert the electronic files to PDF format so that the information could be produced while we seek to resolve the problem of producing the data in its native format.

25. From October 2, 2020 to October 22, 2020, an attorney and paralegal of the firm expended nearly forty (40) hours converting, reviewing and producing the PDF files to Plaintiff. Specifically, the paralegal was charged with copying the email files, converting them, and organizing them in a cloud-based filed maintained in the Box application. The attorney was charged with reviewing them for responsiveness and privilege, as well as preparing a log of privileged materials.

26. To date, all data has been converted to PDF format and produced to Plaintiff via a link to the cloud-based file. Plaintiff has been granted access to review and download the data.

27. Presently, there is no further information to produce save that which appears within the log of privileged materials.

**FURTHER AFFIANT SAYETH NAUGHT.**

KAI E. JACOBS

STATE OF FLORIDA )

COUNTY OF MIAMI-DADE )

**BEFORE ME**, on this 26 day of October, 2020, the undersigned authority, personally appeared Kai E. Jacobs, [**X**] who is personally known to me or [ ] who produced ________________________ as identification, and says under penalty of perjury that his affidavit is true, complete and accurate.

NOTARY PUBLIC, State of Florida at Large

Print Name: Kathleen E. Olivera

My Commission Expires: