TAGGED OPINION



**ORDERED in the Southern District of Florida on January 28, 2022.**

Scott M. Grossman, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:                                              Chapter 11

Seven Stars on the Hudson Corp.,                    Case No. 19-17544-SMG

      Debtor.
_____/

Seven Stars on the Hudson Corp.,

      Plaintiff,

v.                                                  Adv. No. 19-1230-SMG

MDG Powerline Holdings, LLC and
XBK Management, LLC,

      Defendants.
_____/

## <u>MEMORANDUM OPINION</u>

      When a plaintiff's case will rely upon an expert witness to prove damages, but the plaintiff fails to timely disclose any expert witness or expert report, the

consequences can be devastating. Such is the case here. The plaintiff failed to timely make its expert disclosures required by Federal Rule of Civil Procedure 26(a)(2). Without these disclosures, the plaintiff may not present any expert testimony. And with no expert testimony – and no other competent evidence of damages in the record – the defendants moved for summary judgment, arguing there is no genuine issue of material fact and they are entitled to judgment as a matter of law. For this and other reasons discussed in detail below, the Court agrees and will grant the defendants' motions for summary judgment.

## I.    BACKGROUND.

Plaintiff Seven Stars on the Hudson Corp. ("Seven Stars") operates a trampoline park and "family fun center" inside a larger indoor entertainment complex called Xtreme Action Park. Xtreme Action Park – which is operated by XBK Management, LLC d/b/a Xtreme Action Park ("Xtreme") – also has a go-cart track, bowling alley, roller rink, escape rooms, and arcade games, among other attractions. MDG Powerline Holdings, LLC ("MDG") – which is allegedly owned and controlled by the same principals who own and control Xtreme – owns the facility and leases the space to Seven Stars, Xtreme, and a few other tenants (some of which may also be affiliated with MDG and Xtreme).[1] Although MDG is its landlord, Seven Stars alleges that its co-tenant Xtreme effectively serves as the property manager.[2]

---

[1] Mary Bertoni Dep., 11:2-15:23; 27:5-10 (ECF No. 203, Daly Decl. Ex. 1). Seven Stars occupies only about ten percent of the space in Xtreme Action Park. *See* ECF No. 138, ¶¶ 11, 21. Xtreme and other affiliates of Xtreme and MDG occupy most of the rest of the space. Bertoni Dep., 11:2-15:23; 27:5-10.

[2] Xtreme was not a party to the lease, but the lease acknowledges that Xtreme is a third-party beneficiary thereof. *See* Nov. 23, 2015 Commercial Lease (the "Lease"), § 20.28 (ECF No. 138, Ex. 1). Nothing in the record, however, evidences any separate contract between Seven Stars and Xtreme delineating the parties' respective rights against and obligations to each other.

Jens Berding ("Mr. Berding") and Eddy Manzo-Berding ("Ms. Manzo-Berding") are the principals and owners of Seven Stars. They claim to have initially capitalized Seven Stars with $1,963,110, consisting of a $553,532 equity investment from their retirement savings, and $1,409,578 in financing from Wells Fargo Bank, N.A. ("Wells Fargo").[3] Seven Stars began operating its trampoline park in November 2016,[4] as a franchisee of Rockin' Jump, LLC ("Rockin' Jump"). About a year later, the relationship between Seven Stars and its co-tenant Xtreme began to deteriorate.[5] Seven Stars alleges that Xtreme and MDG essentially colluded to squeeze out Seven Stars, by taking actions designed to deprive it of revenue and customers, while interfering with Seven Stars' rights under its Lease. And there is certainly some evidence to support these claims, including an email from a representative of Xtreme who stated that Mr. Berding "doesn't want to work with us. He won't listen to reason so it appears we will just need to beat him into default."[6]

Specifically, Seven Stars alleges that Xtreme, acting as MDG's agent, removed signs for Seven Stars' business, shut off power to and then dismantled Seven Stars' registration desk, blocked views of Seven Stars' logo, and limited access to its premises. Seven Stars also alleges that Xtreme refused to engage in cross-marketing

---

[3] Decl. of Eddy Manzo-Berding, ¶ 5 (ECF No. 203).
[4] ECF No. 138, ¶ 47.
[5] *Id.*, ¶ 52.
[6] ECF No. 203, Daly Decl. Ex. 3.

with Seven Stars,[7] delayed delivery of food orders to Seven Stars' customers,[8] held "lock-out" events that served to block access to Seven Stars' trampoline park,[9] intentionally confused Seven Stars' customers about liability waivers, misled its customers in advertisements,[10] and impermissibly installed video cameras in Seven Stars' premises.[11] Seven Stars also alleges that MDG painted over Seven Stars' signature green color in its entrance hallway and blocked access to its loading dock.[12] As a result, Seven Stars alleges that it saw an approximately 40% decrease in revenue compared to its performance in 2017.[13]

### A. *Seven Stars I* and *Seven Stars II*.

On June 5, 2019, Seven Stars filed a chapter 11 bankruptcy case ("*Seven Stars I*")[14] to address these disputes with MDG and Xtreme, as well as disputes it had with its now-former franchisor, Rockin' Jump, and its secured creditor, Wells Fargo. Seven Stars then commenced this adversary proceeding against MDG and Xtreme on July 19, 2019.[15] In the *Seven Stars I* main bankruptcy case, Seven Stars quickly sought[16] – and then obtained – authority to use Wells Fargo's cash collateral.[17] As for

---

[7] The Lease required Seven Stars to reimburse Xtreme for half of any costs Xtreme advanced for joint marketing with Seven Stars. Lease § 14.05(c)(i). But nothing in the Lease actually required Xtreme to engage in any joint marketing with Seven Stars.

[8] The Lease prohibited Seven Stars from selling food, so its customers would have to order food from Xtreme. ECF No. 138, ¶84. But the Lease did provide for Seven Stars to receive a 15% discount on any food or beverages purchased from Xtreme. Lease § 20.15(a).

[9] ECF No. 138, ¶¶ 88-93.

[10] *Id.*, ¶¶ 94-100.

[11] *Id.*, ¶ 105.

[12] *Id.*, ¶¶ 101-104.

[13] *Id.*, ¶ 107.

[14] Case No. 19-17544-SMG.

[15] ECF No. 1.

[16] *Seven Stars I*, ECF No. 5.

[17] *Seven Stars I*, ECF  No. 65.

Rockin' Jump, it sought relief from the automatic stay to terminate Seven Stars' franchise agreement.[18] Meanwhile, Seven Stars filed a motion to assume its Lease with MDG.[19] But based on Seven Stars' ongoing dispute with Rockin' Jump, MDG and Seven Stars agreed to defer resolution of the assumption motion until after the franchise issues were resolved.[20]

Ultimately Seven Stars and Rockin' Jump entered into a settlement agreement on March 18, 2020,[21] which resulted in termination of the franchise agreement.[22] This was just as the COVID-19 pandemic was hitting the United States. Only a few days later, all nonessential retail and commercial businesses in Broward County, Florida – including Xtreme Action Park and Seven Stars' trampoline park – were shut down by government order,[23] and remained closed well into June 2020.[24] Against this backdrop, Seven Stars and MDG continued to litigate whether Seven Stars could assume its Lease with MDG.[25]

MDG argued that Seven Stars could not assume the Lease because termination of the Rockin' Jump franchise agreement violated the Lease's use clause, and because Seven Stars owed post-petition rent that it had not paid for April and May 2020, when it was prohibited by law from operating. After extensive briefing and argument, on June 1, 2020, the Court granted Seven Stars' motion to assume the Lease, ruling that

---

[18] *Seven Stars I*, ECF No. 39.
[19] *Seven Stars I*, ECF No. 80.
[20] *Seven Stars I*, ECF Nos. 89, 105, 127, 140.
[21] *Seven Stars I*, ECF No. 152.
[22] *Seven Stars I*, ECF No. 161. Seven Stars now operates under the name "Spacebound Trampoline Park."
[23] *See In re Seven Stars on the Hudson*, 618 B.R. 333, 337-38 (Bankr. S.D. Fla. 2020).
[24] *Id.* at 338.
[25] *Seven Stars I*, ECF No. 164.

termination of the Rockin' Jump franchise did not prohibit assumption, and that, under the terms of the Lease and in light of the COVID-19 pandemic, failure to timely pay April and May rent likewise did not prohibit assumption.[26] The Court did, however, require Seven Stars to pay $130,000 in unpaid rent to MDG by the effective date of any chapter 11 plan it confirmed.[27] Apparently unable to make that payment, Seven Stars then elected to proceed with its case under the newly enacted subchapter V of chapter 11 of the Bankruptcy Code, which became effective a few months earlier.[28] But because it first elected to proceed under subchapter V after expiration of subchapter V's strict 90-day deadline to file a plan,[29] this Court dismissed the case under 11 U.S.C. § 1112(b)(4)(J).[30]

After the Court dismissed *Seven Stars I*, it set a status conference to determine whether the Court should retain jurisdiction over this adversary proceeding.[31] The day before the status conference, however, Seven Stars filed another chapter 11 petition under subchapter V ("*Seven Stars II*").[32] After the status conference, the Court entered an order[33] giving the defendants a deadline to file motions to dismiss the adversary proceeding based upon the dismissal of *Seven Stars I*. But, perhaps due

---

[26] *Seven Stars I*, ECF No. 172.

[27] *Id*.

[28] Small Business Reorganization Act of 2019, Pub. L. No. 116-54, Aug. 23, 2019, 133 Stat. 1079, 1087 ("This Act and the amendments made by this Act shall take effect 180 days after the date of enactment of this Act.").

[29] 11 U.S.C. § 1189(b).

[30] *Seven Stars*, 618 B.R. 333.

[31] *See In re Morris*, 950 F.2d 1531, 1534 (11th Cir. 1992) ("dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction over the adversary proceeding should be left to the sound discretion of the bankruptcy court or the district court, depending upon where the adversary proceeding is pending.").

[32] Case No. 20-19106-SMG.

[33] ECF No. 78.

to the filing of *Seven Stars II*, neither of the defendants elected to file a motion to dismiss, so this adversary proceeding remained pending before this Court.

In *Seven Stars II*, Seven Stars and MDG again litigated over assumption of the Lease, as well as confirmation of Seven Stars' chapter 11 plan. After a contested confirmation hearing, the Court overruled MDG's objection to confirmation,[34] granted Seven Stars' motion to assume its Lease with MDG,[35] and confirmed Seven Stars' third amended plan.[36] Upon confirmation of the plan, Seven Stars secured the right to remain in the leased premises at Xtreme Action Park and continued operating its trampoline park under its Lease with MDG.

### B.    This Adversary Proceeding.

After an August 25, 2020, hearing in this adversary proceeding, the Court entered an Agreed Scheduling Order[37] setting certain pretrial deadlines,[38] including the following:

- November 6, 2020 – deadline to file motions to amend the complaint;
- January 15, 2021 – deadline to complete fact discovery;
- February 5, 2021 – deadline to exchange expert witness summaries and reports;
- February 26, 2021 – deadline to exchange rebuttal expert witness summaries and reports;
- March 15, 2021– deadline to complete expert discovery; and
- April 15, 2021– deadline to file dispositive motions.

---

[34] *Seven Stars II*, ECF No. 217.
[35] *Seven Stars II*, ECF No. 92.
[36] *Seven Stars II*, ECF No. 194.
[37] ECF No. 86.
[38] *See* Fed. R. Bankr. P. 7016(a); Fed. R. Civ. P. 16(b).

Seven Stars then timely moved for leave to file a second amended complaint.[39] Over MDG's objection,[40] the Court granted that motion[41] and permitted Seven Stars to file a second amended complaint.[42] MDG and Xtreme then filed answers and affirmative defenses.[43]

In the second amended complaint, Seven Stars asserts claims for: (1) breach of the covenant of quiet enjoyment under its Lease against MDG; (2) breach of the implied duty of good faith and fair dealing against MDG; (3) violation of Florida's Deceptive and Unfair Trade Practices Act[44] ("FDUTPA") against MDG; (4) violation of FDUTPA against Xtreme; (5) tortious interference with advantageous business relationships against Xtreme; and (6) tortious interference with contract against MDG and Xtreme. In short, Seven Stars alleges that MDG and Xtreme, through various actions and inactions, have caused damage to Seven Stars' business, resulting in its bankruptcy filing and the loss of its franchise agreement. Its alleged damages consist of lost revenue and profits, lost business opportunities, and lost goodwill.[45]

---

[39] ECF No. 88. The Court had previously granted in part and denied in part the defendants' motions to dismiss the original complaint, but with leave to replead all but one count (ECF No. 25). The Court then later denied the defendants' motions to dismiss the first amended complaint (ECF No. 53).

[40] ECF No. 92.

[41] ECF No. 129.

[42] ECF No. 138.

[43] ECF Nos. 139, 140.

[44] Fla. Stat. §§ 501.201, *et seq.*

[45] *See* Second Am. Compl. (ECF No. 138) ¶ 116 (lost revenue and loss of goodwill of its customers); ¶ 128 (lost revenue and attorney's fees and costs); ¶ 132 (lost ticket sales, increased advertising costs, and out-of-pocket costs incurred in renting back-up battery systems); ¶ 135 (lost revenue and damage to its "competitive advantages"); ¶ 144 (lost profits, income, and business opportunities); ¶ 158 (lost business opportunity, the loss of the "time value of money," lost goodwill, and "other consequential damages").

After an unsuccessful attempt at mediation,[46] the parties submitted – and on March 17, 2021, the Court entered – a Second Agreed Scheduling Order,[47] which included the following relevant deadlines:

- March 16, 2021 – deadline to complete fact discovery;
- April 6, 2021 – deadline to exchange expert witness summaries and reports;
- April 27, 2021 – deadline to exchange rebuttal expert witness summaries and reports;
- May 14, 2021 – deadline to complete expert discovery;
- June 14, 2021 – deadline to file dispositive motions.

## C.    Discovery.

The Court later extended the fact discovery deadline to May 14, 2021,[48] as discussed in more detail below. Thus, the parties ended up conducting discovery over a period of about a year,[49] which included exchanging initial disclosures, serving interrogatories and requests for production of documents, and taking depositions.

### 1.    Initial Disclosures.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii), applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7026, requires a party "without awaiting a discovery request" to "provide to the other parties . . . a computation of

---

[46] ECF No. 136.
[47] ECF No. 142. *See* Fed. R. Bankr. P. 7016(a); Fed. R. Civ. P. 16(b)(1), (4).
[48] ECF No. 157.
[49] *See, e.g.*, ECF No. 64 (Xtreme's motion to extend time to respond to Seven Stars' request for production of documents served on June 3, 2020); ECF No. 157 (extending fact discovery deadline to May 14, 2021).

each category of damages claimed."[50] In its first set of Rule 26(a)(1) initial disclosures served on July 4, 2020,[51] Seven Stars disclosed the following as to damages:

> *See* First Amended Complaint.
>
> Additionally, the Plaintiff has incurred attorney's fees and costs in prosecuting this action. The Plaintiff reserves any and all rights to recovery of fees, costs or other remedies which may be available.
>
> The Plaintiff reserves the right to amend and supplement this disclosure pending completion of the discovery process.[52]

On March 5, 2021, Seven Stars then served amended initial disclosures.[53] But other than changing the reference from "*See* First Amended Complaint" to "*See* Second Amended Complaint," these amended initial disclosures were nearly identical to the original initial disclosures as to damages. Seven Stars then served another set of amended initial disclosures on March 15, 2021.[54] These further amended initial disclosures contained the same damages disclosures as in the set served ten days earlier. Then on April 9, 2021 – three days *after* the April 6, 2021, deadline for the parties to exchange expert witness summaries and reports – Seven Stars served yet another set of initial disclosures.[55] But again, its damages disclosures did not change from the previous two disclosures in which it failed to disclose any damages computations.

---

[50] Fed. R. Civ. P. 26(a)(1)(A)(iii).
[51] ECF No. 162, Ex. A, at 2-6.
[52] *Id*. at 5-6.
[53] *Id*. at 7-11.
[54] *Id*. at 12-17.
[55] *Id*. at 18-22.

2.    <u>Interrogatories</u>.

But it was not just in its (thrice-amended) initial disclosures that Seven Stars failed to disclose damages computations. It also failed to provide damages calculations in answers to written interrogatories from both MDG and Xtreme. Xtreme attached to its motion for summary judgment copies of damages interrogatories and interrogatories regarding expert witnesses, both served on Seven Stars on November 25, 2020.[56] Xtreme asserted that Seven Stars did not respond to either set of interrogatories.[57] Although Seven Stars denied those allegations,[58] notably it did not provide copies of any answers with its response to the motion for summary judgment. So, all the Court has before it are copies of interrogatories which Xtreme asserts Seven Stars did not answer, and no answers from Seven Stars. The only reasonably conclusion to draw is that Seven Stars did not respond.

Xtreme also attached to its motion for summary judgment another set of similar (if not identical) interrogatories served on Seven Stars on March 17, 2021.[59] The only answers to either of these sets of re-served interrogatories in the record are answers and objections by Seven Stars to Xtreme's damages interrogatories dated

---

[56] ECF No. 162, Exs. B, C.
[57] ECF No. 162, ¶ 25.
[58] ECF No. 204, ¶ 22.
[59] ECF No. 162, Exs. D, E.

May 23, 2021.[60] This of course was after the May 14, 2021, close of fact discovery.[61] Although Federal Rule of Civil Procedure 29(b) generally allows parties to stipulate to extensions of time to respond to interrogatories without court approval, court approval is required if the new deadline "would interfere with the time set for completing discovery."[62] But the parties never sought – and the Court never granted – approval to answer interrogatories after the close of fact discovery.

These tardy interrogatory answers stated only in conclusory fashion that Seven Stars is seeking against Xtreme $1.2 million in "estimated" past lost profits from June 2018 through December 2019 as FDUTPA damages, plus $2.5 million for its tortious interference claim.[63] Seven Stars also referred in its tardy interrogatory answer to a "breakdown provided on January 29, 2021,"[64] but neither party has pointed the Court to any such "breakdown" anywhere in the record. When asked in the next interrogatory to "identify with specificity by itemizing factually and quantifying numerically the alleged damages requested by you in the complaint in this cause," Seven Stars responded only with a narrative about the alleged causes of

---

[60] ECF No. 162, Ex. F. As untimely answers, however, any objections that Seven Stars purported to raise were waived. *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *see also Bank of Mongolia v. M & P Glob. Fin. Servs., Inc.*, 258 F.R.D. 514, 518 (S.D. Fla. 2009) (objections to discovery requests waived in light of untimely responses); *Brown v. Shendell & Assocs., P.A.*, 2013 WL 12089970, at *1 (S.D. Fla. 2013) ("as a general rule, when a party fails to timely object [or answer] to interrogatories, production requests, or other discovery efforts, the objections are deemed waived.") (quoting *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989); citing *Jaffe v. Grant*, 793 F.2d 1182, 1190 n.6 (11th Cir. 1986)).
[61] ECF No. 157.
[62] Fed. R. Bankr. P. 29; Fed. R. Civ. P. 29(b).
[63] ECF No. 162, Ex. F, at 6.
[64] *Id.*

12

the damage.[65] It did not, however, provide any breakdown, calculation, itemization, or other support for its alleged damages of $1.2 million and $2.5 million, respectively.

Then, when asked in the following interrogatory "to identify with specificity each document that demonstrates or verifies the damage amount and calculations provided in response to" the previous interrogatory, Seven Stars again pointed only to the exhibits to its second amended complaint, the second amendment to its Lease, various emails, depositions of three witnesses (David Goldfarb, Mary Bertoni, and Michael Dezer),[66] and Seven Stars' "profit and loss statements beginning in 2017 showing the decrease in revenue following the actions of the Landlord [MDG] and Xtreme and those that controlled these entities."[67] Other than its profit and loss statements, Seven Stars pointed to no documents even arguably supporting – let alone demonstrating or verifying – its total damages sought.

With respect to MDG's interrogatories, it asked Seven Stars to "state each and every item of damage you claim or allege you sustained as a result of the actions or omissions set forth in your complaint in this cause" and to "[d]escribe with particularity all elements of damages, the amount that you are seeking for each element of damages, and the manner of calculating your damages."[68] MDG also asked Seven Stars to "identify with particularity the mathematical formula and/or method

---

[65] *Id.* at 7.
[66] Although the ownership structure is not entirely clear from the record, it appears that Mr. Goldfarb and Mr. Dezer indirectly own and control both MDG and Xtreme, with Mr. Goldfarb managing Xtreme (an operations company) and Mr. Dezer managing MDG (a real estate holding company). (ECF No. 203, Daly Decl. Ex. 2, 7:20-8:24). Ms. Bertoni works for an entity called Dezer Development (ECF No. 203, Daly Decl. Ex. 1, 8:1-9:2), and appeared as the designated representative for MDG (ECF No. 203 at 10).
[67] ECF No. 162, Ex. F, at 7-8.
[68] ECF No. 161, Ex. B, at 6.

used in computing the subject damages, as well as identify with specificity the nature and factual basis of the damages."[69] In its March 25, 2021, answers, Seven Stars objected to these interrogatories "as premature as it has not yet obtained an expert who will opine on the full spectrum of damages suffered by Plaintiff including the manner of calculating the damages."[70] Subject to that objection, Seven Stars again proceeded to respond largely with narratives about the alleged causes of damages, without providing any amount of "lost revenue" or identifying any method of calculating or measuring how this conduct translated into "lost revenue."[71] And when asked to identify any documents that support its damages claims, Seven Stars pointed to the exhibits to its complaint, the second amendment to its Lease, various emails, and its profit and loss statement for the years 2017 to 2019.[72] As with its answers to Xtreme's interrogatories, Seven Stars' answers to MDG's interrogatories point to no other documents demonstrating or verifying its damages calculations.

Seven Stars then served further amended interrogatory answers on MDG on May 27, 2021,[73] and June 9, 2021[74] – both after the close of fact discovery. But again, the parties never sought – nor did the Court ever grant – leave to answer these interrogatories after the close of fact discovery. These untimely answers now asserted – nearly two years into the litigation, after the close of discovery, and five days before the summary judgment deadline – that Seven Stars was seeking $1.2 million in lost

---

[69] *Id.* at 7.
[70] *Id.* at 6-7.
[71] *Id.*
[72] *Id.* at 7.
[73] ECF No. 161, Ex. E.
[74] ECF No. 161, Ex. F.

profits for its FDUTPA claims, $2.5 million for its tortious interference claims, and $800,000 for its breach of contract claims. But again, Seven Stars failed to include any supporting detail with respect to these claimed damages. No calculations, no mathematical formulas, no methods of computation, nor even any underlying factual basis for the damages (other than pointing generally to its profit and loss statements).

       3.   <u>Depositions</u>.

MDG served a notice of taking the deposition of a corporate representative of Seven Stars under Federal Rule of Civil Procedure 30(b)(6), describing the matters for examination to include, among other topics, "the amount, category and computation of the damages alleged or sought by Seven Stars," and "the specific amount of damages that Seven Stars contends is attributable to each specific harm or injury alleged in the Adversary Complaint."[75] Seven Stars designated Ms. Manzo-Berding as its representative under Rule 30(b)(6) for all topics listed in the deposition notice. And Ms. Manzo-Berding confirmed that she was prepared to testify on all topics identified in the deposition notice.[76]

But when questioned about damages, Ms. Manzo-Berding repeatedly testified that she could not identify any types of damages that Seven Stars was seeking other than lost profits or "lost ticket sales." She never disclosed that Seven Stars was seeking to recover any damages for the diminution in value of its business. For example, counsel asked whether Seven Stars was "seeking any other damages other

---

[75] ECF No. 206, Ex. F, ¶¶ 25-26.
[76] Eddy-Manzo Berding Dep. Vol. I, 16:2-18 (ECF No. 161, Ex. C).

than lost profits?"[77] In response, Ms. Manzo-Berding said: "I don't know if I can answer that question to be honest with you."[78] When counsel specifically asked if Seven Stars was seeking "out of pocket" costs or any other types of damages, Ms. Manzo-Berding again stated that she did not know of any other types of damages: "I don't know what else or other type of damages are out there, you know. I don't know the classification of damages . . . I don't know all the other types of damages that are out there."[79] At least seven times, counsel asked Ms. Manzo-Berding to identify any out-of-pocket costs that Seven Stars was seeking as damages, and each time Ms. Manzo-Berding said she could not identify any such damages other than "lost revenues" or "lost ticket sales." [80] Rather, Ms. Manzo-Berding repeatedly testified – on behalf of Seven Stars as its Rule 30(b)(6) representative – that Seven Stars would be relying on an expert witness to prove damages.[81]

The defendants also deposed Mr. Berding, who at the time of his deposition had recently resigned as president of Seven Stars.[82] Like Ms. Manzo-Berding, Mr. Berding offered no substantive testimony on damages.[83]

---

[77] *Id.* at 146:16-17.

[78] *Id.* at 146:18-19.

[79] *Id.* at 147:8-24; *see also id.* at 149:4-6 ("I cannot answer the question if I am pursuing other damages when I am not clear what other damages are out there.").

[80] *See id.* at 144:3-14; 145:8-16; 158:15-159:7; 171:9-20; 195:18-196:2; 206:8-207:10; 231:8-19.

[81] *Id.* at 143:4-19; 148:6-149:6; 150:4-24; 158:20-159:13; 159:19-160:5; 196:9-14; 232:12-17.

[82] Jens Berding Dep., 9:9-10:13 (ECF No. 161, Ex. D).

[83] *Id.*, 231:13-232:2 (lost profits); 272:8-18, 273:6-15 (lock-out events); 298:24-299:25 (no records of customer confusion, just "anecdotal evidence in terms of the customers telling us that this is what happened to them.").

16

4.    <u>Motion to Extend Discovery Deadlines</u>.

On April 28, 2021 – over three weeks after the deadline to exchange expert witness summaries and reports had passed – Seven Stars filed a third motion to extend certain scheduling order deadlines.[84] In its motion, Seven Stars acknowledged that **"[e]xpert discovery in this case was anticipated from the beginning on the issue of damages"**[85] and candidly admitted that "[w]ithout the ability to conduct expert discovery, Plaintiff will have difficulty proving the economic damages that it believes has occurred as a result of Defendants' wrongful conduct."[86] But Seven Stars filed this motion three weeks after the deadline to make Rule 26(a)(2) expert disclosures had already passed, and sought only extensions of the fact discovery deadline (to May 14, 2021) and the expert discovery deadline (to July 14, 2021). Notably, Seven Stars did not seek in its motion – even belatedly under the "excusable neglect" standard of Federal Rule of Bankruptcy Procedure 9006(b)(1) – to extend the already-lapsed expert disclosure deadline. MDG objected to Seven Stars' request to extend the expert discovery deadline, noting that "[f]or the third time in less than four months, Plaintiff has moved to extend the deadlines for both fact and expert discovery contained in the Court's [Second Agreed] Scheduling Order," and arguing that "none of the recent exigent circumstances discussed in Plaintiff's Motion has any bearing on the expert discovery deadlines, which Plaintiff has already blithely ignored by failing to serve an expert report by the April 6, 2021, deadline."[87]

---

[84] ECF No. 148.
[85] *Id.*, ¶ 7 (emphasis added).
[86] *Id.*, ¶ 11.
[87] ECF No. 150.

After a hearing on May 12, 2021,[88] the Court granted the requested extension of the fact discovery deadline (to which the defendants did not object), but denied the requested extension of the expert discovery deadline.[89] The Court noted that expert reports were due April 6, 2021 – a deadline that had already passed and for which Seven Stars had not sought an extension. While Seven Stars argued that it was "waiting for the approval of a litigation funding agreement that would give it the monetary resources to hire experts,"[90] the Court agreed with the defendants that this was not a valid excuse for the delay in making expert disclosures, and without any expert disclosures there was no expert discovery to be had and therefore no need to extend that deadline.[91]

## II.    MOTIONS FOR SUMMARY JUDGMENT.

MDG and Xtreme each then timely filed motions for summary judgment,[92] arguing that after more than two years of litigation "the record is devoid of any evidence upon which Plaintiff can satisfy its burden to prove the essential element of damages."[93]  Not in Seven Stars' Rule 26(a)(1) initial disclosures. Not in Seven Stars' answers to the defendants' interrogatories. Not in Seven Stars' Rule 30(b)(6) deposition testimony. And, perhaps most significantly, not in any timely submitted expert report. Because damages are an essential element of each of Seven Stars'

---

[88] ECF No. 152. Although it did not file a written objection, Xtreme objected to the requested extension at the hearing.
[89] ECF No. 157.
[90] ECF No. 148, ¶ 7.
[91] ECF No. 231, 15:20-17:20.
[92] ECF Nos. 161, 162.
[93] ECF No. 161 at 20.

claims – and Seven Stars has failed to produce any competent evidence of damages – the defendants argue they are entitled to summary judgment.[94]

The defendants also argue that Seven Stars seeks an improper measure of damages – lost revenues – when only lost profits are recoverable under applicable law. And they argue that the record contains insufficient evidence to establish damages with any reasonable degree of certainty, as required by Florida law. MDG further contends that the record contains no evidence that it was the direct cause of any damage to Seven Stars, and that the record contains no competent evidence of any other claims for damages. With respect to the FDUTPA claims, both defendants argue that past lost profits are "consequential damages" that are not recoverable under FDUTPA, which limits recovery to "actual damages." And finally, both defendants argue that the claim for tortious interference with the Rockin' Jump franchise fails on the record as well.

In its responses to the summary judgment motions,[95] Seven Stars for the first time raised certain damages theories that it did not plead in its second amended complaint or identify during discovery, including reliance, diminution of value, and

---

[94] The Court then issued a briefing order, setting deadlines for responses, replies, and joint stipulations of fact. (ECF No. 164). Seven Stars filed not one – but four – motions (ECF Nos. 178, 181, 184, 192) to extend its response deadlines. It then filed responses (ECF Nos. 187, 188), followed up by amended responses (ECF Nos. 189, 190). Then it filed a motion to correct citation errors in its amended responses (ECF No. 196), which the Court granted after a hearing on August 11, 2021. (ECF No. 201). Finally, on August 17, 2021, Seven Stars filed its corrected responses to the motions for summary judgment (ECF Nos. 203, 204). Both defendants timely filed reply briefs (ECF Nos. 207, 208), and the parties filed their respective joint stipulations of fact (ECF Nos. 210, 211). A few weeks later, Seven Stars filed a notice of supplemental authority (ECF Nos. 218, 219), alerting the Court to a newly-issued decision bearing on the FDUTPA claims – *Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*, --- F.Supp.3d ---, 2021 WL 4077966 (S.D. Fla. Sep. 8, 2021).

[95] ECF Nos. 203, 204.

punitive damages theories.[96] Seven Stars also attached to its responses a Declaration of Eddy Manzo-Berding (the "Manzo-Berding Declaration"),[97] in which Ms. Manzo-Berding asserted for the first time that Seven Stars was seeking damages for "diminution of value" of its business and "reliance" damages with respect to its contract-based claims. The Manzo-Berding Declaration also purported to calculate – for the first time – the damages Seven Stars seeks as being between $1,567,387 and $1,888,110.

Ms. Manzo-Berding appears to base these figures on the following analysis: Seven Stars was initially capitalized with $1,963,110, consisting of a $553,532 equity investment by the Berdings, plus $1,409,578 in financing from Wells Fargo. She then asserts that the "current economic value" of Seven Stars as of some point in 2019 was $395,723, and concludes that the defendants are therefore liable for $1,567,387 in damages for loss of economic value.[98] She derives the "current economic value" using "adjusted EBIDA [sic]"[99] from Seven Stars' 2019 "financials,"[100] to which she applied a "multiplier of 2.75."[101] Alternatively, she asserts that "the argument can be made"

---

[96] Seven Stars did purport to reserve the right to assert punitive damages against Xtreme in Count V of its second amended complaint (tortious interference with the Lease). But in response to both defendants' motions for summary judgment, Seven Stars raised for the first time a punitive damages argument only as to MDG, which it did not plead in its complaint.

[97] ECF Nos. 203, 204.

[98] The difference between $1,963,110 and $395,723.

[99] It is unclear whether this was a typographical error or whether Ms. Manzo-Berding did in fact intend to refer to Seven Stars' earnings before interest, depreciation, and amortization (EBIDA), rather than its earnings before interest, taxes, depreciation, and amortization (EBITDA).

[100] Seven Stars' profit and loss statements for 2017 through 2019 do not actually compute or list a line item for EBITDA or EBIDA anywhere on them. Nor is there any explanation in the Manzo-Berding Declaration as what adjustments were made to EBIDA (or EBITDA) to arrive at "adjusted EBIDA."

[101] There is likewise no explanation as to why this "multiplier" was used or how it was derived. Further, nothing in the Manzo-Berding Declaration suggests that Ms. Manzo-Berding is even qualified to provide this type of financial analysis.

that the only real value of the business is the equipment, "which has been estimated by various appraisers during and just before the bankruptcy filing of less than $75,000." Using this alleged valuation, she deduces that damages are $1,888,110.[102]

## III. MOTION TO STRIKE SHAM DECLARATION.

MDG filed a motion to strike the Manzo-Berding Declaration as a "sham declaration" and sought sanctions,[103] to which Xtreme filed a joinder.[104] MDG argued that for the entire course of the litigation, through the completion of discovery, Seven Stars consistently maintained that it was seeking "lost profits" damages arising from "lost ticket sales," and that Seven Stars never disclosed in its Rule 26(a)(1) initial disclosures, in its responses to written discovery requests, or at its Rule 30(b)(6) deposition, that it was seeking any damages other than "lost profits damages." Thus, under the "sham declaration" doctrine, MDG and Xtreme asked the Court to strike the Manzo-Berding Declaration for being inconsistent with Seven Stars' earlier testimony, initial disclosures, and written discovery responses, and to sanction Seven Stars accordingly.[105]

---

[102] The difference between $1,963,110 and $75,000.

[103] ECF Nos. 205, 206.

[104] ECF No. 209. The Court then issued a briefing order on that motion, to which Seven Stars timely filed a response. (ECF Nos. 216, 217). MDG then timely filed a reply (ECF No. 220), to which Xtreme again filed a joinder (ECF No. 221).

[105] Then, on September 28, 2021 – after over two years of litigation and with discovery having closed and motions for summary judgment being fully briefed and taken under advisement – Seven Stars filed a motion for leave to file a third amended complaint. (ECF Nos. 222, 225). In its proposed third amended complaint, Seven Stars sought to add new allegations about a dispute with the defendants that arose in the summer of 2021– two years after *Seven Stars I* and this adversary proceeding were filed, a year after *Seven Stars II* was filed, after the Court confirmed the chapter 11 plan in *Seven Stars II*, and after discovery closed in this adversary proceeding. MDG objected (ECF No. 226) and, although Xtreme did not file a written objection, it also objected at the hearing on that motion. The defendants argued that the proposed third amended complaint was really a disguised attempt to avoid summary judgment by belatedly alleging new damages theories under the guise of asserting new

21

## IV.   LEGAL STANDARDS.

### A.    Jurisdiction.

A bankruptcy court's subject matter jurisdiction is set forth in 28 U.S.C. § 1334 and is limited to cases under the Bankruptcy Code[106] and all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code.[107] The claims asserted here are all state law claims under Florida law sounding in contract, tort, and under Florida statutes. As such, this civil proceeding does not arise under the Bankruptcy Code or arise in a case under the Bankruptcy Code. But it is "related to" a case under the Bankruptcy Code – in this case both *Seven Stars I* and *Seven Stars II*.

A civil proceeding is "related to" a bankruptcy case if "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy."[108] If the outcome of the action "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and . . . in any way impacts upon the handling and administration of the bankrupt estate,"[109] then it is "related to" the debtor's bankruptcy case. All of the claims here arose before *Seven Stars I* was filed, and therefore were property of Seven Stars' bankruptcy estates.[110] And the outcome of this action could alter Seven Stars' rights, liabilities, options, or

---

claims. After a hearing, the Court denied Seven Stars' request for leave to file a third amended complaint. (ECF No. 228; ECF No. 232 at 39:23-49:23).

[106] 28 U.S.C. § 1334(a).

[107] 28 U.S.C. § 1334(b).

[108] *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

[109] *Lemco Gypsum*, 910 F.2d at 788 (citations omitted).

[110] *See* 11 U.S.C. § 541.

freedom of action, and may impact creditors' recoveries in *Seven Stars II*. Accordingly, there is "related to" jurisdiction over these claims under 28 U.S.C. § 1334(b).

But section 1334(b) actually vests jurisdiction in the District Courts over such claims. Under 28 U.S.C. § 157(a) and the District Court's standing Order of Reference,[111] however, this adversary proceeding has been referred to this Court. Although bankruptcy courts can enter final orders and judgments in cases under the Bankruptcy Code,[112] as well as in (most) core proceedings[113] arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code,[114] it may not do so with respect to non-core claims, absent consent of the parties.[115] Core proceedings are defined in 28 U.S.C. § 157(b)(2) to include sixteen types of proceedings as to which the Judicial Code authorizes bankruptcy courts to enter final orders and judgments. "Core proceedings are narrow in scope, and include only those cases that implicate the property of the bankruptcy estate and either invoke substantive rights created by federal bankruptcy law or that exist exclusively in the bankruptcy context."[116]

Seven Stars has alleged here that all of its claims are core.[117] But that allegation is not dispositive, and the Court has an independent obligation to

---

[111] Administrative Order 2012-25 (S.D. Fla. Mar. 27, 2012).
[112] 28 U.S.C. § 157(b)(1).
[113] *See Stern v. Marshall*, 564 U.S. 462 (2011).
[114] 28 U.S.C. § 157(b)(1).
[115] 28 U.S.C. § 157(c); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 671 (2015).
[116] *Wortley v. Bakst*, 844 F.3d 1313, 1318 (11th Cir. 2017) (citing *Cont'l Natl. Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1347–48 (11th Cir. 1999)).
[117] ECF No. 138, ¶ 2 (alleging this adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate); (B) (allowance or disallowance of claims against the estate); and (M) (orders approving the use or lease of property, including the use of cash collateral)).

determine whether a proceeding is core or non-core.[118] That being said, Seven Stars'
allegation that the claims are core does serve one important purpose: "an admission
that a proceeding is core accords irrevocable consent to a bankruptcy court to
determine the proceeding, even if it is non-core."[119] Although the claims here are all
clearly non-core, Seven Stars' allegation that the claims are core nevertheless serves
as its express consent to the entry of final orders or judgments by this Court.[120] While
MDG has (correctly) denied that these claims are core, it has affirmatively consented
to entry of final orders or judgments both by expressly stating so[121] and by moving
for summary judgment.[122] Xtreme likewise has consented to entry of final orders or
judgments by admitting (incorrectly) that these claims are core,[123] and by moving for
summary judgment as well. Accordingly, based upon the consent of all parties, this
Court may enter final orders and judgments on all claims in this adversary
proceeding.[124]

### B.    Summary Judgment.

Federal Rule of Civil Procedure 56(a), made applicable to this adversary
proceeding by Federal Rule of Bankruptcy Procedure 7056, requires the Court to

---

[118] 28 U.S.C. § 157(b)(3).

[119] *Lindsey v. Duckworth Dev. II, LLC (In re Lindsey)*, 854 Fed. App'x 301, 308 (11th Cir. 2021) (citing
*Hiser v. Neumann Med. Ctr., Inc. (In re St. Mary's Hospital)*, 117 B.R. 125, 131 (Bankr. E.D. Pa. 1990)).
*See also In re Custom Contractors, LLC*, 462 B.R. 901, 908-09 (Bankr. S.D. Fla. 2011) (allegation in
complaint that action was a core proceeding serves as "explicit consent" for bankruptcy court to "treat
this matter as a core proceeding in which it may enter a final order").

[120] *Lindsey*, 854 Fed. App'x at 308.

[121] ECF No. 171 at 2 n.1.

[122] *JWL Entm't Grp., Inc. v. Solby+Westbrae Partners, (In re Fisher Island Invs., Inc.)*, 778 F.3d 1172,
1192 (11th Cir. 2015); *Kapila v. SunTrust Mortg., Inc. (In re Pearlman)*, 515 B.R. 887, 892 n.21 (Bankr.
M.D. Fla. 2014).

[123] ECF No. 139 at ¶ 2.

[124] 28 U.S.C. § 157(c); *Wellness*, 575 U.S. at 671.

grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[125] "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."[126] In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party.[127] The Court will not, however, weigh the evidence or find facts at the summary judgment stage. Rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party.[128] If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[129]

The moving party has the burden to establish the absence of any genuine issue of material fact.[130] To support its position, the party must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."[131] Once the moving party meets its burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute

---

[125] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).
[126] *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).
[127] *Id.*
[128] *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).
[129] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).
[130] *Celotex*, 477 U.S. at 323; *see* Fed. R. Civ. P. 56(c)(1).
[131] Fed. R. Civ. P. 56(c)(1)(A).

of material fact.[132] Although an affidavit from a party opposing summary judgment can serve as a vehicle to show the existence of a genuine dispute of material fact, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."[133]

## V.    ANALYSIS.

The second amended complaint contains two counts for breach of contract, two counts for tortious interference, and two FDUTPA counts. To prevail on a breach of contract claim under Florida law, the plaintiff must prove by a preponderance of the evidence (1) the existence of a contract, (2) a breach thereof, and (3) damages flowing from the breach.[134] FDUTPA – which prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce,"[135] – requires a plaintiff to prove the following three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages.[136] And the elements of tortious interference with a contract or business

---

[132] *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citing *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950–52 (9th Cir. 1978)).

[133] *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

[134] *Knowles v. C. I. T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977); *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006); *Alhassid v. Bank of Am., N.A.*, 2015 WL 11216721, at *4 (S.D. Fla. 2015). This analysis also applies to a claim for breach of the implied duty of good faith and fair dealing. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325–26 (11th Cir. 2012) (citing *Baron v. Osman*, 39 So.3d 449, 451 (Fla. 5th DCA 2010) (per curiam) (contract implied in fact); *Hospital Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So.2d 573, 575 (Fla. 4th DCA 1998) (per curiam) (implied covenant of good faith and fair dealing)).

[135] Fla. Stat. § 501.204(1).

[136] *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc.*, 951 So. 2d at 869). The parties disagree as to whether past lost profits are "actual damages" that are

relationship claim are: (1) the existence of a business relationship (not necessarily evidenced by an enforceable contract), under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference.[137]

### A.    No Competent Evidence of Damages.

Each of these counts requires, as an essential element, proof of damages. In its contractual and FDUTPA claims (Counts I-IV) Seven Stars seeks damages primarily based on "lost revenue" or "lost ticket sales" (which is the same thing as lost revenue). But Florida law requires proof of lost profits (income minus expenses), not just lost revenue.[138] And, although Seven Stars purports in the Manzo-Berding Declaration to now assert a claim for diminution in value of its business, that is not an appropriate measure of damages under Florida law unless a business has been completely

---

recoverable under FDUTPA, *see, e.g., Tymar Distrib.*, --- F.Supp.3d ---, 2021 WL 4077966, or whether they are instead "consequential damages" that are not recoverable, *see, e.g., Midway Labs USA, LLC v. South Serv. Trading, S.A.*, 2020 WL 2494608 (S.D. Fla. 2020*)*. But because – as discussed below – there is no competent evidence of any damages that the Court can consider, the Court need not determine this legal issue.

[137] *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th DCA 1999) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *Procacci v. Zacco*, 402 So. 2d 425, 426 (Fla. 4th DCA 1981); *Linafelt v. Bev, Inc.*, 662 So. 2d 986, 989 (Fla. 1st DCA 1995)); *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 814 (Fla. 1994)).

[138] *Del Monte Fresh Produce Co. v. Net Results, Inc.*, 77 So. 3d 667, 673 n.11 (Fla. 3d DCA 2011).

destroyed.[139] Because Seven Stars remains in business, the only appropriate measure of damages is lost profits, not diminished business value.[140]

But only in its tortious interference claim against Xtreme does Seven Stars actually plead a claim for lost profits. The rest of the damages asserted by Seven Stars include claims for loss of goodwill of its customers;[141] attorneys' fees and costs;[142] increased advertising costs, other out-of-pocket costs, and damage to competitive advantages;[143] loss of business opportunities;[144] and loss of the time value of money and other consequential damages.[145]

Under Florida law, a plaintiff has the burden to present "evidence justifying a specific and definite amount of economic damages."[146] While this evidence need not establish the amount of damages "with absolute exactness,"[147] the evidence nevertheless must have a reasonable factual basis and may not be founded on

---

[139] *Montage Grp., Ltd. v. Athle-Tech Comput. Sys., Inc.*, 889 So.2d 180, 193 (Fla. 2d DCA 2004) (citing *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So.2d 958, 960 (Fla. 4th DCA 1983)). In such a case – where there is a "total breach of contract" – the injured party may then choose between the mutually exclusive remedies of (a) "reliance damages," whereby the contract is treated as void and the injured party recovers damages putting it in the same position as it was immediately before entering into the contract, or (b) "expectation damages," whereby the injured party affirms the contract and seeks damages that would put it in the position it would have been in had the counterparty properly performed. *Tampa Pipeline Transp. Co. v. Chase Manhattan Serv. Corp.*, 928 F. Supp. 1568, 1584 (M.D. Fla. 1995), *aff'd sub nom. Tampa Pipeline v. Chase Manhattan*, 87 F.3d 1329 (11th Cir. 1996) (citing *Rector v. Larson's Marine, Inc.*, 479 So.2d 783, 785 (Fla. 2d DCA 1985)). But here, because the business was not completely destroyed (Seven Stars confirmed a chapter 11 plan and reorganized in *Seven Stars II*), and there was not a total breach of contract (Seven Stars assumed the Lease in *Seven Stars II*), the only appropriate measure of damages is lost profits.

[140] *Id.* (citing *Aetna Life & Cas. Co. v. Little*, 384 So.2d 213, 216 (Fla. 4th DCA 1980)).

[141] Counts I and VI.

[142] Count II.

[143] Count III.

[144] Count V.

[145] Count VI.

[146] *United Auto. Ins. Co. v. Colon*, 990 So. 2d 1246, 1248 (Fla. 4th DCA 2008) (citing *United Steel & Strip Corp. v. Monex Corp.*, 310 So.2d 339, 342 (Fla. 3d DCA 1975)).

[147] *Del Monte Fresh Produce*, 77 So. 3d at 675 (*citing Nat'l Papaya Co. v. Domain Indus., Inc.*, 592 F.2d 813, 818 (5th Cir. 1979)).

"speculation or guesswork."[148] There must be some "reasonable certainty" in the proof and the assumptions underlying them.[149] If the finder of fact is not presented with evidence that will enable it to determine damages "with a reasonable degree of certainty, rather than by means of speculation and conjecture," then the plaintiff cannot recover those damages.[150] Thus, for any claim as to which a plaintiff fails to present evidence justifying any amount on a claim for economic damages, the defendant will be entitled to judgment in its favor on that claim.[151]

In support of their respective motions, the defendants relied upon Seven Stars' responses to written discovery, Seven Stars' Rule 26(a)(1) initial disclosures, the transcripts of the depositions of both Mr. Berding and of Seven Stars' Rule 30(b)(6) designated representative (Ms. Manzo-Berding), a profit and loss statement for Seven Stars spanning from January 2017 through December 2019, and a May 6, 2019, letter from Seven Stars' former franchisor (Rockin' Jump) providing written notice to Seven Stars of its default under the franchise agreement.

Under the summary judgment standard, the burden then shifted to Seven Stars to present specific facts showing that there exists a genuine dispute of material fact.[152] But the only evidence of damages Seven Stars presented in response to the

---

[148] *United Auto. Ins.*, 990 So. 2d at 1248 (citing *Smith v. Austin Devel. Co.,* 538 So.2d 128, 129 (Fla. 2d DCA 1989)); *Del Monte Fresh Produce*, 77 So. 3d at 675.

[149] *Del Monte Fresh Produce*, 77 So. 3d at 675 (citing *Nat'l Papaya Co.*, 592 F.2d at 822; *R.A. Jones & Sons, Inc. v. Holman*, 470 So.2d 60 (Fla. 3d DCA 1985)); *Air Caledonie Int'l v. AAR Parts Trading, Inc.*, 315 F.Supp.2d 1319, 1343 (S.D. Fla. 2004); *Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1342 (11th Cir. 2019).

[150] *Cibran Enterprises, Inc. v. BP Prod. N. Am., Inc.*, 365 F. Supp. 2d 1241, 1254 n.2 (S.D. Fla. 2005) (citing *Himes v. Brown & Co. Sec. Corp.,* 518 So.2d 937, 938 (Fla. 3d DCA 1987)).

[151] *United Auto. Ins.*, 990 So. 2d at 1248 (citing *United Steel*, 310 So. 2d at 342).

[152] *Walker*, 911 F.2d at 1576.

motions for summary judgment was the Manzo-Berding Declaration, which contradicted Seven Stars' earlier deposition testimony, interrogatory answers, and initial disclosures.[153] As discussed below, however, the Court cannot consider this new declaration, and there is no other competent evidence of damages in the record to sustain Seven Stars' burden to show a genuine dispute of material fact.

1.    <u>No Damages Calculations in Initial Disclosures</u>.

Federal Rule of Civil Procedure 37(c)(1), made applicable here by Federal Rule of Bankruptcy Procedure 7037, is clear that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[154] Rule 26(a)(1)(A)(iii) mandates initial disclosures – without awaiting a discovery request – of "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."[155] Rule 26(e)(1)(A) requires a party who made a disclosure under

---

[153] The other evidence Seven Stars submitted in opposition to the motions for summary judgment did not appear to pertain to damages, and instead consisted of photographs, email communications, transcripts of Ms. Bertoni's and Mr. Goldfarb's depositions, another copy of the second amended complaint (filed in violation of Local Rule 9004-1(D), which prohibits including as an attachment any document already filed in a case or proceeding), another copy of the Lease (also filed in violation of Local Rule 9004-1(D)), and a $104.00 invoice from November 7, 2016, from Xtreme to Seven Stars for reimbursement for digital postcards.

[154] Fed. R. Civ. P. 37(c)(1); *see also Clayman v. Starwood Hotels & Resorts Worldwide*, 343 F. Supp. 2d 1037, 1047 (D. Kan. 2004) (plaintiff was not permitted to present damages calculations regarding future medical expenses because plaintiff failed to provide defendant with computations before trial).

[155] Fed. R. Civ. P. 26(a)(1)(A)(iii).

Rule 26(a) to supplement or correct its disclosure in a timely manner if the disclosure was incomplete or incorrect in some material respect.

Seven Stars' failure alone to disclose any damages calculations in its initial disclosures is a sufficient basis – based on the text of Rule 37(c)(1) – to grant summary judgment in favor of the defendants[156] notwithstanding the Manzo-Berding Declaration. Because Seven Stars failed to disclose its damages computations (as well as any references to reliance damages or diminution in business value damages) – even after supplementing its initial disclosures three times – it may not use these new damages calculations in the Manzo-Berding Declaration to oppose the motions for summary judgment.[157]

### 2.    No Damages Timely Disclosed in Interrogatory Answers.

Seven Stars also failed to provide sufficient answers when asked in interrogatories about (1) the elements of damages and the amount that Seven Stars is seeking for each element of damages, and the manner of calculating its damages;

---

[156] *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221-22 (11th Cir. 2010) (affirming exclusion of evidence of damages that plaintiff failed to identify and calculate in its Rule 26 initial disclosures); *City of Rome v. Hotels.com, L.P.*, 549 Fed. App'x 896, 904-05 (11th Cir. 2013) (same); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 237–39 (S.D.N.Y. 2018) (court excluded plaintiff's damages evidence on motion for summary judgment because plaintiff failed to provide "any background or methodology for how they came up with [damage] estimates, nor did they cite to any documents as a basis for their computation"); *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 951 (7th Cir. 2018) ("'[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless'" (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004))).

[157] *See, e.g., Mee Indus.*, 608 F.3d at 1221-22; *City of Rome*, 549 Fed. App'x at 904-05; *Dorvil v. Nationstar Mortg., LLC*, 2020 WL 9065875, at *1 (S.D. Fla. 2020) (plaintiff "must be limited to damages disclosed in his disclosures and subsequent discovery responses"); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at *11 (S.D. Fla. 2011) (excluding evidence or argument on "new theory of damages" not previously disclosed); *In re Mirabilis Ventures, Inc.*, 2011 WL 3236027, at *9 (M.D. Fla. 2011) (same); *MY. P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 2021 WL 2414135, at *12 (S.D. Fla. 2021) (precluding plaintiff from asserting new damages theories in response to defendants' motions for summary judgment).

(2) the mathematical formula and/or method used in computing its claimed damages; (3) the nature and factual basis of the damages; (4) the existence of documents that support its damages claims; and (5) the retention, use, and qualifications of expert witnesses Seven Stars would use to prove damages. It also failed to identify reliance damages or lost business value damages in any of its interrogatory answers, even though the defendants' interrogatories specifically requested that Seven Stars identify all types of damages being sought, the method of calculation of all damages, and the evidence to support these damages claims.

Indeed, when asked to identify any documents that support its damages claims, Seven Stars identified only one relevant document: Seven Stars' profit and loss statement for the years 2017 to 2019.[158] But without more – like testimony from an expert witness that will not be forthcoming – this profit and loss statement does not show any evidence of damages. Nowhere in its interrogatory answers did Seven Stars identify any expert witnesses that it would use to support its damages claims.[159] And only in its amended interrogatory answers – served weeks after the close of discovery – did Seven Stars ever quantify its damages. These untimely amended answers asserted for the first time that Seven Stars suffered $1.2 million in lost profit damages, $800,000 in unidentified damages related to contract claims, and $2.5 million in unidentified damages for its tortious interference claims. But even if the Court were to consider these untimely amended answers, the amounts set forth

---

[158] ECF No. 161, Ex. B at 7; ECF No. 162, Ex. F, at 7-8.
[159] ECF No. 161, Exs. B, E, and F.

therein are all conclusory and without any supporting explanation or analysis.[160] Accordingly, these tardy interrogatory answers also fail to meet Seven Stars' burden to present specific facts showing that there exists a genuine dispute of material fact.

3.    No Evidence of Damages in Deposition Testimony.

Likewise, neither of the Berdings provided any information as to damages in their depositions. When asked specifically about lost revenue and lost ticket sales, Ms. Manzo-Berding (testifying as both Seven Stars' designated representative under Rule 30(b)(6) and in her individual capacity) stated that she could not testify as to any specific amounts. When asked to specifically identify the damages arising from the alleged misconduct, Ms. Manzo-Berding could not testify as to any damages that were caused by the conduct,[161] instead stating that they would bring in an expert to testify as to the amount of damages.[162] She also failed to identify any reliance damages or damages for diminution in business value. Mr. Berding likewise declined to offer any substantive testimony on damages.[163]

Ms. Manzo-Berding's inability to testify as to damages on behalf of Seven Stars, as its Rule 30(b)(6) designated representative, has serious consequences. A Rule 30(b)(6) designated representative is the spokesperson for the corporation, whose testimony binds the corporation,[164] quite similar in effect to written answers

---

[160] There is also no explanation as to how this $800,000 in undefined contract damages relates to the $1,888,110 in damages later claimed in the Manzo-Berding Declaration.

[161] *See* notes 77-80, *supra.*

[162] *See* note 81, *supra.*

[163] *See* note 83, *supra.*

[164] *QBE Ins. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012) ("A corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation.").

to requests for admissions under Federal Rule of Civil Procedure 36. When a Rule 30(b)(6) representative "legitimately lacks the ability to answer relevant questions on listed topics . . . , then the 'we-don't-know' response can be binding on the corporation and prohibit it from offering evidence at trial on those points."[165] In other words "the lack of knowledge answer is itself an answer" that will be binding on the company.[166] With the corporation having answered "I don't know" through its designated representative, it will not later be allowed to change its answer by introducing contrary evidence at trial.[167] Thus, the defendants were entitled to rely on Ms. Manzo-Berding's Rule 30(b)(6) deposition testimony that Seven Stars had no evidence of damages and would be relying solely on expert testimony to prove damages.

### 4.    No Expert Witnesses Designated.

Having boxed itself into a corner of relying solely on expert testimony to prove damages, Seven Stars then failed to timely identify any expert witnesses. Federal Rule of Civil Procedure 26(a)(2) requires each party to "disclose to the other parties the identity of any [expert] witness it may use at trial."[168] These disclosures must include a written report for witnesses "retained or specially employed to provide

---

[165] *Id.* at 690.

[166] *Id.* (citing *Fraser Yachts Fla., Inc. v. Milne*, 2007 WL 1113251, at *3 (S.D. Fla. 2007); *Chick–fil–A v. ExxonMobil Corp.*, 2009 WL 3763032, at *13 (S.D. Fla. 2009); *Ierardi v, Lorillard, Inc.*, 1991 WL 66799 at *2 (E.D. Pa. 1991)).

[167] *QBE Ins.*, 277 F.R.D. at 690 (citing *Ierardi*, 1991 WL 158911, at *3; *See also Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr. For Nonviolent Soc. Change, Inc.*, 2015 WL 2091714, at *7 (N.D. Ga. 2015) ("When the 30(b)(6) representative claims ignorance of a subject during the deposition, courts have precluded the corporation from later introducing evidence on that subject.") (quoting *Function Media, LLC. v. Google, Inc.*, 2010 WL 276093, at *1 (E.D. Tex. 2010)); *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F.Supp.2d 82, 94 (D.D.C. 1998) ("Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition.").

[168] *Cruz v. U.S.*, 2013 WL 246763, at *2 (S.D. Fla. 2013) (quoting Fed. R. Civ. P. 26(a)(2)).

expert testimony,"[169] and must be made "at the times and in the sequence that the court orders."[170] But, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[171] Courts have construed "substantial justification" to mean "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply."[172] Likewise, courts have determined that a failure to disclose is harmless where "there is no prejudice to the opposing party."[173] It is the burden of the party who failed to comply with Rule 26(a) to establish that its nondisclosure was substantially justified or harmless.[174] If the party fails to meet that burden, then "the sanction of exclusion is automatic and mandatory."[175]

Seven Stars has not made any attempt to satisfy this burden of showing its failure was substantially justified or harmless. Rather, Seven Stars simply failed to identify any expert witnesses or provide any expert reports by the April 6, 2021 deadline set forth in the Court's scheduling order. After it let this deadline come and

---

[169] *Id.* (quoting Fed. R. Civ. P. 26(a)(2)(B)).

[170] *Id.* (quoting Fed. R. Civ. P. 26(a)(2)(D)).

[171] *Id.* (quoting Fed. R. Civ. P. 37(c)(1)).

[172] *Id.* (quoting *McGarity v. FM Carriers, Inc.*, 2012 WL 1028593, at *9 (S.D. Ga. 2012) (quoting *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 682 (M.D. Fla. 2010))).

[173] *Id.* (quoting *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 U.S. Dist. LEXIS 45881, at *29 (S.D. Fla. 2005)).

[174] *Id.*

[175] *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *see also Valdes v. Miami-Dade Cty.*, 2015 WL 6829055, at *4 (S.D. Fla. 2015); *Dyett v. N. Broward Hosp. Dist.*, 2004 WL 5320630, at *2 (S.D. Fla. 2004); *Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

pass without taking any action, the Court then denied Seven Stars' later motion to extend the expert discovery deadline because it had made no timely expert disclosures.

It bears noting that Seven Stars never took any action to pre-emptively extend the April 6, 2021, expert disclosure deadline,[176] even though it knew "from the beginning"[177] that it would need expert testimony and knew that it needed litigation funding to pay for an expert.[178] Indeed, Seven Stars first filed a motion related to litigation funding in *Seven Stars II* on January 28, 2021.[179] The Court granted that motion on February 26, 2021, which at the time only concerned entering into a term sheet for litigation funding.[180] Seven Stars then filed a motion to approve the full litigation funding agreement on April 6, 2021[181] – the same day expert disclosures were due in this adversary proceeding. That motion was then amended on April 9, 2021,[182] and after a hearing on April 14, 2021, the Court entered an order approving the litigation funding on April 19, 2021.[183]

While Seven Stars now argues that its failure to timely designate an expert and exchange expert reports should be justified because it had not yet secured

---

[176] Had Seven Stars sought an extension of this deadline before it expired, it would have only had to satisfy a "good cause" standard to obtain an extension. *See* Fed. R. Bankr. P. 7016(a); 9006(b)(1); Fed. R. Civ. P. 16(b)(4). Had it sought an extension after expiration of the deadline, it would have been subject to the higher "excusable neglect" standard. *See* Fed. R. Bankr. P. 9006(b)(1). But Seven Stars has asserted neither good cause nor excusable neglect; it simply ignored this scheduling order deadline altogether.

[177] ECF No. 148, ¶ 7.

[178] *Id.*

[179] *Seven Stars II*, ECF No. 122.

[180] *Seven Stars II*, ECF No. 136.

[181] *Seven Stars II*, ECF No. 186.

[182] *Seven Stars II*, ECF No. 190.

[183] *Seven Stars II*, ECF No. 193.

litigation funding (which it was in the process of doing at the time the disclosures were due), this argument actually establishes that its failure to timely make these disclosures was *not* substantially justified. Seven Stars knew about the deadline and knew what it had to do to secure the funding and the timing of those efforts. All Seven Stars had to do was file a timely motion seeking to extend the expert disclosure deadline.[184] It never did so. Instead, about three weeks later, it just filed a motion to extend the fact discovery and expert discovery deadlines. But because the expert disclosure deadline had already come and passed without any disclosures, the defendants opposed extension of the expert discovery deadline as pointless. What was there to extend if the plaintiff never timely designated any experts? The Court agreed and denied the motion to extend the expert discovery deadline.

Seven Stars' failure to timely disclose any experts – or to timely provide any computation of damages – was neither substantially justified nor harmless.[185] Litigation has rules by which all parties must abide. Even if MDG breached its contract with Seven Stars, and even if Xtreme and MDG violated Seven Stars' rights under FDUTPA or tortiously interfered with Seven Stars' contractual rights, the defendants still have rights to require the plaintiff to play by the same rules in litigation. This means that parties must timely disclose the experts they intend to use, they must timely identify their damages computations, they must timely and

---

[184] *See* Fed. R. Bankr. P. 9006(b) and 7016(a); Fed. R. Civ. P. 16(b)(4).

[185] *See, e.g., Rigby v. Philip Morris USA, Inc.*, 717 Fed. App'x 834, 835-36 (11th Cir. 2017) (failure to disclose witnesses until after summary judgment motion was filed was not harmless); *Bowe v. Pub. Storage*, 106 F.Supp.3d 1252, 1260 (S.D. Fla. 2015) ("Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question.").

completely respond to written discovery requests, and their Rule 30(b)(6) witnesses must be prepared to testify (which testimony will bind the party). If one party fails to play by these rules, that is fundamentally unfair to the other parties. This is particularly so where Seven Stars could have timely moved to extend the expert disclosure deadline while it was seeking approval for its litigation funding. But with the deadline to make expert disclosures having passed without Seven Stars having disclosed any experts or submitted any expert reports, there is no expert testimony as to damages in the record to support any quantum of damages here.

### B.    The Manzo-Berding Declaration Cannot Be Considered.

The record is clear that Seven Stars failed to disclose its new damages theories in its Rule 26(a)(1) initial disclosures, its written discovery responses, and its Rule 30(b)(6) deposition testimony. Notwithstanding this failure to comply with the discovery rules, Seven Stars now asks the Court to consider the Manzo-Berding Declaration as sufficient evidence to establish a genuine dispute of material fact warranting denial of the defendants' summary judgment motions. The defendants, however, ask the Court to invoke the "sham declaration" doctrine to strike the Manzo-Berding Declaration and to sanction Seven Stars under Federal Rule of Civil Procedure 37(c)(1) for filing it. They argue that Seven Stars cannot now be permitted to offer evidence regarding its newly-disclosed reliance and diminution of value damages theories in an attempt to avoid summary judgment.[186]

---

[186] *Mee Indus.*, 608 F.3d at 1221-22; *City of Rome*, 549 Fed. App'x at 904-05.

Under the "sham declaration" or "sham affidavit" doctrine, courts "may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when the affidavit is directly contradicted by deposition testimony."[187] The "sham affidavit" rule is to be applied "sparingly,"[188] and the party seeking to invoke it bears a heavy burden.[189] When considering a declaration submitted in opposition to a motion for summary judgment, the declaration must contain statements that clearly contradict responses to earlier unambiguous questions, in order for this rule to apply. The contradictions must be explicit and consist of "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact."[190] Where the differences between deposition testimony and a declaration are simply "discrepancies which create an issue of credibility that go to the weight of the evidence," a declaration should not be regarded as a sham.[191] As the Eleventh Circuit has explained:

> We apply this rule sparingly because of the harsh effect this rule may have on a party's case. In addition, we feel that to allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the affiant was stating the truth.[192]

---

[187] *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003); *see also Moore v. Tractor Supply Co.*, 352 F.Supp.2d 1268, 1275-76 (S.D. Fla. 2004); *Van T. Junkins*, 736 F.2d at 657.

[188] *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir.2010); (quoting *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir.2007)); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987).

[189] *In re Stand TV Seal, Products Liability Litigation*, 636 F.Supp.2d 1333, 1335 (N.D. Ga. 2009).

[190] *Van T. Junkins*, 736 F.2d at 657; *see also Rollins*, 833 F.2d at 1530.

[191] *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).

[192] *Rollins*, 833 F.2d at 1530 (quoting *Tippens*, 805 F.2d at 954-54) (cleaned up).

But Ms. Manzo-Berding's failure to testify as to these new damages theories at her Rule 30(b)(6) deposition was not a mere failure of memory by a witness. Seven Stars was quite clear all along that it would be relying on expert testimony for damages, which position Ms. Manzo-Berding doubled down on during her Rule 30(b)(6) deposition.

Nevertheless, Seven Stars argues that "the Declaration is not 'inconsistent' to such a degree as to warrant the striking of the Declaration."[193] It argues that at the time of the commencement of the deposition (April 19, 2021), it had just secured and obtained approval for litigation funding.[194] But because, as Seven Stars couched it, the "[d]efendants succeeded in barring such testimony because the Expert Report had not been furnished by April 6, 2021," the litigation funder would not release any funds to hire an expert to assist Seven Stars on its damages issues.[195] Thus, Seven Stars argues, the Berdings "had to essentially become their own expert and lay before the Court the financial data supporting Plaintiff's claims as well as the impact of the Defendants' wrongful actions had [sic] on Plaintiff's business."[196]

This excuse is unpersuasive. Essentially Seven Stars argues that it should have been excused from compliance with the Court's scheduling order because it did not have the financial resources to hire an expert, and therefore it could just ignore the expert disclosure deadline until after it had its litigation financing lined up, even

---

[193] ECF No. 216 at 2.
[194] The Court entered an order in *Seven Stars II* approving the litigation funding agreement on April 19, 2021, after a hearing on April 14, 2021 (which was eight days *after* expiration of the April 6, 2021 expert disclosure deadline and five days before Ms. Manzo-Berding testified). *Seven Stars II*, ECF No. 193.
[195] ECF No. 216 at 3.
[196] *Id.*

if that occurred (as it did here) after the expert disclosure deadline had passed. But "[a] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."[197] Nor does lack of funding "permit a party to decide ex parte that it is justified in not prosecuting the suit and is free to ignore the rules of the court."[198] Indeed, under Federal Rule of Civil Procedure 16(b)(4), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7016, the Court's scheduling order could have been modified "only for good cause and with the judge's consent."[199] "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension."[200] But if a party was not diligent, that ends the good cause inquiry.[201]

Seven Stars argues, however, that it should suffer no adverse consequences for its failure to properly and timely respond to discovery, and that instead the defendants should be faulted for not moving to compel (timely or better) answers. But the defendants each asked multiple different ways about damages, in written discovery and during depositions. It was also incumbent upon Seven Stars, as discussed above, to disclose this information voluntarily under Rule 26(a)(1) and to supplement or correct its disclosures, in a timely manner, as required by Rule

---

[197] *Dabney v. Bank of Am. (In re Dabney)*, 604 B.R. 233, 239 (Bankr. D.S.C. 2019).
[198] *Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 1998 WL 417510, at *3 (S.D.N.Y. 1998) (Sotomayor, J.) (quoting *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 823 (2d Cir.1967) (cleaned up)); *see also Bank of New York v. Meridien Biao Bank Tanzania Ltd. (In re Treco)*, 2001 WL 1566701, at *9 (Bankr. S.D.N.Y. 2001) ("The desire to limit litigation expenses and conserve resources does not justify a delay in pleading.").
[199] Fed. R. Civ. P. 16(b)(4).
[200] *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (cleaned up).
[201] *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

41

26(e)(1)(A). After nearly two years of litigation and asking multiple ways for this information, the defendants were entitled to rely upon Seven Stars' lack of timely responses and cannot be faulted for not having moved to compel better answers. If this were the rule, then no party would ever need to respond to a discovery request unless and until the other party moved to compel. That is not what the Federal Rules of Civil Procedure contemplate or require. Accordingly, because the Manzo-Berding Declaration is clearly inconsistent with Seven Stars' initial disclosures, interrogatory answers, and Ms. Manzo-Berding's own deposition testimony, it falls within the "sham declaration" rule and must be disregarded.[202]

While disregarding this declaration might seem like a harsh or draconian result, it is not. In fact, it is only fair to the defendants. They had been defending against these claims (which otherwise very well may have merit) for over two years and had been engaged in discovery for about a year. They were entitled to discovery about the damages Seven Stars sought from them. Seven Stars was supposed to disclose this information to them in its Rule 26(a)(1) initial disclosures. It did not. So the defendants asked Seven Stars in written discovery for computations of damages. Seven Stars ignored three sets of Xtreme's interrogatories and then only belatedly answered another set. Seven Stars likewise failed to adequately and timely answer MDG's interrogatories. What it did say in its answers, though, was that it would be retaining an expert witness to provide this testimony. The defendants then asked

---

[202] *See Knight v. Allstar Bldg. Materials, Inc.*, 2009 WL 3837870, at *15-17 (M.D. Fla. 2009) (striking as a sham affidavit plaintiff's submission in opposition to summary judgment months after testifying at deposition that he "could not recall" the information).

Seven Stars' Rule 30(b)(6) corporate representative about damages. She could not testify to any specific damages, and instead pointed to an un-named and un-designated expert. But then, by April 6, 2021, Seven Stars failed to disclose any experts or provide any expert reports. Certainly, by that point, the defendants were entitled to rely on the lack of any evidence of damages. Accordingly, the Court will disregard the Manzo-Berding Declaration. But because this is a harsh enough result, the Court declines to award any further sanctions.[203]

## VI.    CONCLUSION.

Seven Stars failed at every instance to properly and timely disclose its damages calculations. It also failed to disclose any expert witness who would opine on damages. Then, after blaming the defendants for its own failure to timely make expert disclosures, Seven Stars essentially admitted to throwing a "Hail Mary pass" in the form of the Manzo-Berding Declaration, in an attempt to defeat the defendants' summary judgment motions. Seven Stars claimed that, notwithstanding two years of litigation in which it consistently asserted lost revenue damages and repeatedly said it would rely on an expert to prove damages, it now had to become its "own expert"[204] on new damages theories that it never previously asserted. But if a plaintiff could avoid summary judgment by simply filing a declaration asserting new damages theories and opinions for the first time after the close of discovery, then "discovery would be meaningless, the value of depositions would be negligible, and the summary

---

[203] *See* Fed. R. Civ. P. 37(c)(1) (providing that attorneys' fees and expenses may be awarded "[i]n addition to or instead of" the default sanction of prohibiting the undisclosed information to be used "to supply evidence on a motion, at a hearing, or at a trial").
[204] ECF No. 216 at 3.

judgment procedural device would be largely useless."[205] Without any competent evidence of damages – an essential element of each of Seven Stars claims – the defendants are therefore entitled to summary judgment in their favor on all counts of the second amended complaint.[206]

### # # #

Copies furnished to all counsel of record by CM/ECF.

---

[205] *Nicholson v. Johanns*, 2007 WL 3407045, at *4 (S.D. Ala. 2007), *aff'd sub nom. Nicholson v. U.S. Dep't of Agric.*, 275 F. App'x 878 (11th Cir. 2008).
[206] Because the lack of damages evidence is dispositive, the Court need not address the defendants' other arguments for summary judgment.