# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CIV-60299-RAR

**SEVEN STARS ON THE HUDSON CORPORATION**,

      Appellant,

v.

**MDG POWERLINE HOLDINGS, LLC, *et al.*,**

      Appellees.

_____/

### ORDER DISMISSING BANKRUPTCY APPEAL

"When a plaintiff's case will rely upon an expert witness to prove damages, but the plaintiff fails to timely disclose any expert witness or expert report, the consequences can be devastating." Mem. Op. [ECF No. 12–52] at 1–2.  Below, the consequence was entry of summary judgment against Appellant.  Now, a further consequence is this Court's affirmance of that decision.

Appellant, Seven Stars on the Hudson Corporation ("Seven Stars"), appeals the following orders entered by the United States Bankruptcy Court for the Southern District of Florida: (1) Order Granting in Part and Denying in Part Plaintiff's Motion to Extend Scheduling Order Deadlines [ECF No. 8–26] ("Order Denying Extension"); (2) Order Granting in Part and Denying in Part MDG Powerline Holdings, LLC's Motion to Strike Sham Declaration and for Sanctions [ECF No. 12–54] ("Order Striking Affidavit"); (3) Order Granting Defendants' Motions for Summary Judgment [ECF No. 12–53] ("Summary Judgment Order"); and (4) Final Judgment [ECF No. 12–55].  At bottom, Seven Stars takes issue with three holdings: (1) the Bankruptcy Court did not extend the deadline for expert discovery contained in the Bankruptcy Court's operative scheduling order; (2) the Bankruptcy Court held that the Declaration of Eddy

Manzo-Berding ("Manzo-Berding Declaration") was a sham that could not be considered; and (3) the Bankruptcy Court granted summary judgment in favor of Appellees MDG Powerline Holdings, LLC ("MDG") and XBK Management, LLC ("XBK").

Having considered the record in its entirety, Appellant's Initial Brief [ECF No. 45] ("Initial Brief"), Appellee MDG's Answer Brief [ECF No. 32] ("MDG Response"), Appellee XBK's Answer Brief [ECF No. 36] ("XBK Response"), and Appellant's Reply Briefs [ECF Nos. 40, 42] ("Reply to XBK" and "Reply to MDG"), it is hereby

**ORDERED AND ADJUDGED** that the Bankruptcy Court's Orders and Final Judgment are **AFFIRMED,** and this appeal is **DISMISSED**.[1]

## BACKGROUND

This appeal arises from the final disposition of an adversary proceeding Seven Stars commenced against MDG and XBK. *See* Mem. Op. at 7, 43–44. Seven Stars has operated a trampoline park within an entertainment center known as Xtreme Action Park ("Xtreme") since November 2016. *Id.* at 2–3. Xtreme is operated by XBK, and the facility Seven Stars and Xtreme are in is owned by MDG. *Id.* at 2. Seven Stars alleged in its adversary proceeding that XBK and MDG (along with other tenants of the space) are owned and controlled by the same principals, and that XBK serves as MDG's property manager. *Id.* Jens Berding and Eddy Manzo-Berding are the principals and owners of Seven Stars, which they claim was initially capitalized with $1,963,110. *Id.* at 3. This amount was alleged to consist of $553,532 contributed by the Berdings as equity and $1,409,578 in financing they secured from Wells Fargo Bank, N.A. ("Wells Fargo"). *Id.* When it opened, Seven Stars first operated its park as a franchise of Rockin' Jump, LLC. *Id.*

---

[1] In its Initial Brief, Appellant requested oral argument. Initial Br. at 2. However, the Court finds that the "legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." FED. R. BANKR. P. 8019(b)(3). Thus, oral argument is not necessary for the Court to decide this appeal.

About a year into Seven Stars's tenancy, problems began to arise between it and XBK. Initial Br. at 8–10.  Seven Stars alleged that XBK took a variety of actions to interfere with its business, including removing Seven Stars's signs, dismantling Seven Stars's satellite front desk, blocking Seven Stars's logos, improperly denying Seven Stars space on a marquee outside of Xtreme, limiting customers' access to Seven Stars's space, and more.  *Id.* at 9–10.  According to Seven Stars, XBK acted in concert with MDG in carrying out these alleged actions.  *See id.*

### I.  The Bankruptcies

In June 2019, Seven Stars filed for chapter 11 bankruptcy ("*Seven Stars I*").  Mem. Op. at 4.  About a month later, Seven Stars commenced the instant adversary proceeding against Appellees.  *Id.*  The Bankruptcy Court dismissed *Seven Stars I* in mid-2020 after Seven Stars attempted to belatedly proceed under the newly enacted subchapter V of chapter 11, because that subchapter contains a ninety-day deadline to file a plan.  *Id.* at 6.  Seven Stars then filed a second bankruptcy petition, this time proceeding under subchapter V in a timely fashion ("*Seven Stars II*").  *Id.*  Simultaneously, the Bankruptcy Court held a status conference to determine if it should retain jurisdiction over the adversary proceeding, after which it gave Appellees the opportunity to move to dismiss the proceeding due to the termination of *Seven Stars I*.  *Id.*  Neither Appellee availed themselves of this opportunity.  *Id.* at 6–7.

### II.  The Adversary Proceeding

Seven Stars's operative complaint asserted claims for breach of the covenant of quiet enjoyment, breach of the implied duty of good faith and fair dealing, violations of Florida's Deceptive and Unfair Trade Practices Act, tortious interference with advantageous business relationships, and tortious interference with contract.  *Id.* at 8.  Because the decision of the Bankruptcy Court required it to recount several positions Seven Stars took during discovery, the Court summarizes the same.

### A. Initial Discovery

#### i. Scheduling Orders and Second Motion to Extend

After neither Appellee moved to dismiss the adversary proceeding, the Bankruptcy Court entered a scheduling order that, relevant to this appeal, set the deadline for the parties to complete fact discovery for January 15, 2021; the deadline for the parties to exchange expert witness summaries and reports for February 5, 2021; and the deadline for the parties to complete expert discovery for March 15, 2021. *Id.* at 7; Agreed Scheduling Order Setting Trial Date and Pretrial Schedule [ECF No. 7–30]. In March 2021, the parties agreed to expand these deadlines, and the Bankruptcy Court entered a second scheduling order that set the deadline for the parties to complete fact discovery for March 16, 2021; the deadline for the parties to exchange expert witness summaries and reports for April 6, 2021; and the deadline for the parties to complete expert discovery for May 14, 2021. Mem. Op. at 9; Second Agreed Scheduling Order Setting Trial Date and Pretrial Schedule [ECF No. 8–18]. Seven Stars then moved for a second extension of the fact discovery deadline. *See* Order Extending Fact Discovery Deadline [ECF No. 8–21] at 2. The Bankruptcy Court granted this motion, extending the fact discovery deadline to April 29, 2021. *Id.*

#### ii. Initial Disclosures

Throughout discovery, Seven Stars served multiple sets of initial disclosures on Appellees as required by Federal Rule of Civil Procedure 26(a)(1). As it relates to damages, the first set of disclosures, dated July 4, 2020, simply directed Appellees to "[see] First Amended Complaint" and referred to attorneys' fees and costs Seven Stars allegedly incurred. Mem. Op. at 9–10. This was followed by several sets of amended initial disclosures, served on March 5, 2021, March 15, 2021, and April 9, 2021. *Id.* at 10. Other than referencing the "Second Amended Complaint" in

lieu of the "First Amended Complaint," the damages portions of these disclosures remained unchanged compared to the first set of initial disclosures. *Id.*

### iii. Initial Interrogatory Responses

Similarly, Seven Stars initially provided no damage computations in response to Appellees' interrogatories. The Bankruptcy Court concluded that XBK served Seven Stars with two sets of interrogatories—one regarding damages and the other expert witnesses—on November 25, 2020, both of which Seven Stars never responded to. *Id.* at 11. XBK then served a similar set of interrogatories on March 17, 2021, which the Court will address below.

MDG also served Seven Stars with interrogatories, and Seven Stars objected to MDG's questions relating to damages as premature "as it has not yet obtained an expert who will opine on the full spectrum of damages suffered by [it] including the manner of calculating the damages." Pl.-Debtor's Resps. and Objs. to MDG Powerline Holdings LLC's First Set of Interrogs. [ECF No. 12–11] at 5, 6. Seven Stars's response to one question also largely repeated some of the factual allegations against Appellees and stated that Seven Stars "lost substantial revenue and lost a valuable franchise relationship." *Id.* at 5–6. In response to a question that asked Seven Stars to "identify with specificity each and every document that demonstrates or verifies the damage amount and calculations provided in response" to a previous interrogatory, Seven Stars identified, without much elaboration, documents such as the "[e]xhibits annexed to the Complaint," the "Second Amendment to the Lease," cryptically "[v]arious emails from Defendants' representatives relating to the front desk, other interior signage and wrongful removal of same," and finally "Plaintiff's profit and loss statements beginning in 2017." *Id.* at 6. Seven Stars served amended answers to MDG's interrogatories on both May 27, 2021 and June 9, 2021, *see* Mem. Op. at 14, but as with the second set of XBK interrogatories, the Court will return to these below.

### iv. Appellant's Deposition

On April 19, 2021, and May 10, 2021, Ms. Manzo-Berding was deposed as Seven Stars's corporate representative. *See generally* Tr. Dep. Eddy Manzo-Berding [ECF No. 8–30] ("Appellant Dep. Tr. I"); Tr. Dep. Eddy Manzo-Berding [ECF No. 8–31]. During the deposition, Ms. Manzo-Berding continually indicated that she could not provide estimates, nor even full categories, of the damages Seven Stars was seeking. A few, non-exhaustive examples of her lack of knowledge regarding damages are warranted.

When asked to testify about the "business projections" the Berdings submitted to Wells Fargo to secure initial financing, she stated, "Well, I don't recall exactly those amounts of the projection." Appellant Dep. Tr. I 42:24–43:15. In response to being asked "what types of damages" Seven Stars was seeking on the basis of certain allegations, Ms. Manzo-Berding replied "[s]o I think that is the reason we're calling for an expert . . . that's the purpose, to have that expert to estimate all that [sic] elements." *Id.* at 143:16–19. After counsel asked if Seven Stars was seeking lost profits, Ms. Manzo-Berding replied that she was "not a technical expert," that she could not "affirm or say this is a loss of profit, this is a loss of income," that she could not "define this technical aspect," and only indicated that Appellees actions "translate[d] into not selling tickets." *Id.* at 144:15–145:6. When pressed about whether Seven Stars was "seeking any other damages other than lost profits," Ms. Manzo-Berding represented that she didn't "know if [she could] answer that question[.]" *Id.* at 146:16–19. Then, when asked if she would testify at trial regarding the amount of lost profits, Ms. Manzo-Berding stated that Seven Stars would be calling an expert, indicating that her testimony alone would be insufficient. *See id.* at 148:6–9. Finally, when Ms. Manzo-Berding indicated she would offer an opinion at trial on the amount of lost profits, she was asked to quantify this amount and responded that she was "not sure about that amount of money." *Id.* at 149:8–15.

### B.  *Litigation Funding Agreement*

Throughout the proceeding, Seven Stars faced difficulties securing funding for its litigation.  In May 2020, Seven Stars was approached by Legalist, a litigation funder, about a potential funding arrangement, but the two did not reach an agreement.  *See* Hr'g Tr. [ECF No. 14] 5:21–6:2 ("Hearing Transcript February 24, 2021"); Initial Br. at 16.  Legalist approached Seven Stars again in November of the same year, this time with more success.  Initial Br. at 16.  After Seven Stars and Legalist reached an agreement on litigation funding, Seven Stars sought approval to enter into the agreement, which the Bankruptcy Court granted on April 14, 2021.  Hr'g Tr. [ECF No. 15] ("Hearing Transcript April 14, 2021") 24:16–25:2.  This funding agreement earmarked funds for expert witnesses.  *See* Pl. Litigation Funding Agreement [ECF No. 13–31] Ex. A.

However, by the time of the hearing on Seven Stars's motion to enter into the agreement, the deadline for the parties to exchange expert witness reports had already lapsed without Seven Stars disclosing an expert witness.  Hr'g Tr. April 14, 2021 13:3–11.  While the Bankruptcy Court found that entering into the litigation funding agreement was an "appropriate exercise of [Seven Stars's] business judgment," *see id.* at 24:23, the Bankruptcy Court clarified it was not considering a possible extension of the expert disclosure deadline at that time, stating it was "not . . . before [the Bankruptcy Court]" and that Seven Stars's counsel could "request a further extension" by motion, at which time the Bankruptcy Court would "consider [the extension]." *Id.* at 20:20–21:5.

### C.  *Third Motion to Extend Time*

With funding secured, on April 28, 2021, Seven Stars moved for a third extension of time, requesting that the fact discovery deadline be extended to May 14, 2021 and the expert discovery deadline be extended to July 14, 2021.  Pl.'s Mot. Extend Scheduling Order Deadlines [ECF No. 8–20] ("Third Motion to Extend") at 1.  In its Third Motion to Extend, Seven Stars cited its

previous lack of funding as justifying an extension of the expert discovery deadline. *Id.* at 3. When asked why Seven Stars filed its motion almost three weeks after it missed the expert disclosure deadline, counsel simply stated that Seven Stars "had absolutely no expert to designate at that point." Hr'g Tr. [ECF No. 12–49] ("Hearing Transcript May 12, 2021") 10:15–25. The Bankruptcy Court granted the request to extend the fact discovery deadline but denied the extension of the expert discovery deadline, largely because Seven Stars never made any expert disclosures. Order Denying Extension at 2; Hr'g Tr. May 12, 2021 15:20–17:10; *see also* Mem. Op. at 18 ("[W]ithout any expert disclosures there was no expert discovery to be had and therefore no need to extend that deadline."). Consequently, the deadlines for both fact and expert discovery were set for May 14, 2021.

### D. Late Discovery

Seven Stars's approach to discovery then shifted dramatically. On May 23, 2021, it finally served answers to XBK's March 17, 2021 interrogatories. Mem. Op. at 11–12. These new, late, and unauthorized responses now stated that Seven Stars was seeking $1.2 million in lost profits and $2.5 million for tortious interference. Pl.-Debtor's Resps. and Objs. To XBK LLC's Damages Interrogs. [ECF No. 8–43] ("May 23, 2021 Responses") at 5. Ms. Manzo-Berding verified these responses. *Id.* at 8. Then, on both May 27, 2021, and June 9, 2021, Seven Stars served untimely and unauthorized amended interrogatory responses on MDG. Mem. Op. 14. The latter set of amended responses contained the damage figures from the late responses to XBK, as well as an additional $800,000 for breach of contract. Pl.-Debtor's Further Am. Resps. and Objs. To MDG Powerline Holdings LLC's First Set of Interrogs. [ECF No. 12–14] ("June 9, 2021 Responses") at 6–7. The June 9, 2021 Responses were also verified by Ms. Manzo-Berding. *Id.* at 12.

### E.  Summary Judgment

With Seven Stars having disclosed no expert evidence on damages, Appellees moved for summary judgment, arguing that Seven Stars was improperly seeking lost revenues, as opposed to lost profits, and that the record did not contain sufficient evidence of damages.  Mem. Op. at 18–19.  Seven Stars filed opposition to these motions, attaching the Manzo-Berding Declaration, which, while executed only a few months after her deposition and less than two months after the latest set of verified interrogatory responses, now asserted that Seven Stars suffered $1,567,387, or, alternatively, $1,888,110 in damages for loss of investment value.  Decl. Eddy Manzo-Berding in Opp'n to MDG Powerline Holdings, LLC's Mot. and XBK Management, LLC D/B/A Xtreme Action Park for Summ. J. [ECF No. 12–2] ("Manzo-Berding Declaration") ¶¶ 13–14.

This first estimate was calculated by taking the original cost of investment, $1,963,110, calculating Seven Stars's economic value in 2019 to be $395,723, and subtracting the two to arrive at $1,567,387.  *Id.* ¶ 13.  To support this economic value amount, Ms. Manzo-Berding purported to use the "adjusted EBIDA from the 2019 financials" and apply an unexplained "multiplier of 2.75."  *Id.*  The 2019 profit and loss statement for 2019 that Ms. Manzo-Berding appeared to reference had neither the EBIDA, nor the EBITDA, of Seven Stars.  *See generally* [ECF No. 8–34].  To arrive at the higher figure of $1,888,110, Ms. Manzo-Berding asserted that "the argument can be made" that the "real value" of Seven Stars was the value of its equipment, "which ha[d] been estimated by various appraisers during and just before the bankruptcy filing of [sic] less than $75,000."  *Id.* ¶ 14.  Despite just claiming the value of the equipment was "less than $75,000," Ms. Manzo-Berding then set the economic value of Seven Stars at $75,000, subtracted it from $1,963,110, and arrived at $1,888,110.  *Id.*  These estimates, rather than supporting the lost profit damages Seven Stars represented it would seek, attempted to support reliance and diminution of value damages.  *See* Pl.'s Opp'n to MDG Powerline Holdings, LLC's Mot. Summ. J. [ECF No.

11–1] at 10–12.  MDG moved to strike the Manzo-Berding Declaration as a sham, and XBK joined in the motion.  Mem. Op. at 21.

On January 28, 2022, the Bankruptcy Court granted Appellees' motions to strike the Manzo-Berding Declaration and for summary judgment.  In striking the Manzo-Berding Declaration, the Bankruptcy Court found that it was "clearly inconsistent with Seven Stars' initial disclosures, interrogatory answers, and Ms. Manzo-Berding's own deposition testimony."  Mem. Op. at 42.  With the declaration struck, the Bankruptcy Court held that Seven Stars had offered insufficient evidence of its damages to create an issue of material fact.  While Seven Stars had claimed to be seeking "lost revenue" and "lost ticket sales," the Bankruptcy Court held that Florida law only allows for recovery of lost profits.  *Id.* at 27.  And although Seven Stars had recently purported to advance a claim for diminution in value, the Bankruptcy Court held that Florida law only allows recovery of this measure of damages when the business is completely destroyed.  *Id.* at 27–28.  Finally, while Seven Stars had initially pled a variety of other damages, such as loss of goodwill and increased advertising costs, it had offered insufficient evidence to support these claims.  *Id.* at 28–30.  Seven Stars then filed this appeal.

## LEGAL STANDARD

When reviewing the order of a bankruptcy court, district courts review findings of fact for clear error and review legal conclusions *de novo*.  *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996).  But an appellate court must review an evidentiary ruling only for a "clear abuse of discretion."  *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017).  A trial court's enforcement of its pre-trial scheduling order will not be disturbed unless there has been an abuse of discretion.  *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).  Under the abuse of discretion standard, a court has a "range of choice" and "its decision will not be disturbed as

long as it stays within that range and is not influenced by any mistake of law." *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005) (internal quotation marks omitted).

## ANALYSIS

Seven Stars argues the Bankruptcy Court committed error when it (1) did not extend the deadline for expert discovery; (2) struck the Manzo-Berding Declaration as a sham; and (3) awarded summary judgment to Appellees. The Court will address each argument in turn.

### I. The Bankruptcy Court Did Not Abuse Its Discretion in Refusing to Extend the Deadline for Expert Discovery

Though Seven Stars presents five points for review, three ask the same question: Did the Bankruptcy Court abuse its discretion when it refused to extend the deadline for expert discovery? *See* Initial Br. at 3. Seven Stars has dedicated three different points of argument to this issue: the Bankruptcy Court erred (1) by finding there was no good cause to extend the expert discovery deadline under Federal Rule of Civil Procedure 16(b); (2) by not analyzing whether Seven Stars demonstrated excusable neglect pursuant to Federal Rule of Bankruptcy Procedure 9006(b); and (3) by not properly analyzing whether Seven Stars's failure to disclose damages was substantially justified or harmless pursuant to Federal Rule of Civil Procedure 37(c)(1). *Id.* The Court will analyze these in reverse order because neither Federal Rule of Civil Procedure 37(c)(1) nor Federal Rule of Bankruptcy Procedure 9006(b) is relevant to the issue.

### A. Because the Bankruptcy Court Did Not Strike Evidence, Rule 37(c)(1) is Inapplicable

Federal Rule of Civil Procedure 37(c)(1) provides that where a party fails to timely "provide information or identify a witness," the party cannot use that information or witness as evidence "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). When determining whether to strike a witness, courts must consider "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party."

*Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1321 (11th Cir 2008). Rule 37(c)(1) is applicable in a bankruptcy adversary proceeding. FED. R. BANKR. P. 7037.

Seven Stars argues the Bankruptcy Court erred when it ruled Seven Stars "could not offer any evidence on the issue of damages" and that a lesser sanction should have been imposed. Initial Br. at 38–39. Seven Stars's argument essentially construes the Bankruptcy Court's refusal to extend the expert discovery deadline as a sanction under Rule 37(c)(1) that struck any hypothetical evidence Seven Stars might have offered on the issue of damages. *See e.g.*, *id.* at 38–39 (stating that the Bankruptcy Court erred in imposing "the harshest sanction over a lesser sanction"); *id.* at 40 ("The court did not reference any of [the Rule 37(c)(1)] factors in its ruling."); Reply to XBK at 11 (stating the Bankruptcy Court "excluded Seven Stars from conducting expert discovery"). In so arguing, it cites the Bankruptcy Court's Memorandum Order,[2] in which it stated that Seven Stars made no "attempt to satisfy this burden of showing its failure was substantially justified or harmless" and that Seven Stars's failure to make timely disclosures was "not substantially justified." Mem. Op. at 35, 37.

This argument fails, however, because the Bankruptcy Court simply had no need to conduct any Rule 37 analysis whatsoever, as there was no expert witness disclosed or otherwise put forward by Seven Stars. Consequently, there was no expert evidence, at the summary judgment stage, that could support Seven Stars's claim for damages. *Id.* In other words, there was no expert to strike, and therefore no need to address Rule 37. *See id.* And by alternatively addressing why Seven Stars would have failed to meet its burden under Rule 37(c)(1) had it proffered untimely expert evidence of damages, the Bankruptcy Court did not commit error.

---

[2] This Memorandum Opinion provides no analysis regarding the requested extension. However, the Court has reviewed the entirety of the record in evaluating Seven Stars's argument.

This brings the Court to an even greater problem with Seven Stars's argument: Rule 37(c)(1)'s exclusion provision only applies when a party actually attempts to offer evidence. *See, e.g.*, FED. R. CIV. P. 37(c)(1) (discussing a party's ability to use undisclosed evidence). In an attempt to circumvent its own failure to offer evidence sufficient to create a material issue of fact, Seven Stars argues that the Bankruptcy Court's refusal to extend the expert discovery deadline was, in fact, "tantamount to an exclusion of evidence." Reply to XBK at 9.

The consequences of accepting this argument would be far-reaching to say the least. On the record before this Court, Seven Stars has never named an expert nor proffered a report that would support its claims for damages. *See, e.g.*, Initial Br. at 38–47 (discussing no identified evidence or expert that should have been allowed into evidence). Taken to its logical conclusion, this argument would require that any time a court refuses to grant a party's motion to extend a discovery deadline, that court is in fact striking any hypothetical evidence that *could* exist. Presumably, courts would have to conduct a Rule 37(c)(1) analysis every time they denied such a request, somehow analyzing how harmless a party's delay has been without knowing what the evidence is or if it even exists. None of the cases Seven Stars cites come close to supporting this reading of the Federal Rules. *See, e.g.*, *Henry v. Bradshaw*, No. 07-80916, 2008 WL 11409966, at *3 (S.D. Fla. May 19, 2008) (evidence attached to summary judgment motion); *Prieto v. Total Renal Care, Inc.*, No. 18-21085, 2019 WL 2515003, at *7 (S.D. Fla. June 18, 2019) (experts and evidence actually proffered). In the absence of such authority, this Court declines Seven Stars's invitation to adopt this drastic interpretation of Rule 37(c)(1). Rule 37(c)(1) is simply irrelevant because no evidence was excluded by the Bankruptcy Court.

**B. Excusable Neglect Does Not Apply Because the Deadline That Appellant Moved to Extend Was Not Expired**

Seven Stars next argues that the Bankruptcy Court erred when it failed to consider whether Seven Stars demonstrated excusable neglect for its delay in filing its motion to extend the expert discovery deadline. Initial Br. at 34. Appellees maintain that the excusable neglect standard does not apply in the context of scheduling orders. *See* XBK Resp. at 25–26; MDG Resp. at 30–32.

Federal Rule of Civil Procedure 16(b) requires district courts to issue a scheduling order that "limit[s] the time to join other parties, amend the pleadings, complete discovery, and file motions." FED. R. CIV. P. 16(b)(3)(A). This scheduling order can only be modified "for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Rule 16 also applies in bankruptcy adversary proceedings. FED. R. BANKR. P. 7016(a). Federal Rule of Bankruptcy Procedure 9006, analogous to Federal Rule of Civil Procedure 6, provides that when an act must be done within a specified period and a party moves for an extension after that period has expired, the party must demonstrate that its "failure to act was the result of excusable neglect." FED. R. BANKR. P. 9006(b)(1). The parties disagree on whether, in the context of an expired deadline contained in a scheduling order, Rule 16 completely supersedes Federal Rule of Bankruptcy Procedure 9006, and thus only requires good cause, or whether a movant must show *both* good cause and excusable neglect. *See* Initial Br. at 34–35; XBK Resp. at 25–26; MDG Resp. at 30–31.

The cause of this disagreement is an apparent inconsistency within the law of this Circuit. On at least two occasions, the Eleventh Circuit has held that only the good cause standard is relevant to an expired scheduling order deadline. *Sosa*, 133 F.3d at 1418 n.2; *Destra v. Demings*, 725 F. App'x 855, 859 (11th Cir. 2018) ("In *Sosa*, we rejected the argument that the excusable-neglect standard in Rule 6(b) governs such extensions."). However, on at least one occasion the Eleventh Circuit has applied both standards on review. *See Payne v. C.R. Bard, Inc.*, 606 F. App'x

940, 944 (11th Cir. 2015) ("A party seeking the extension of an already-expired scheduling order deadline must show both good cause and excusable neglect.").

Notwithstanding this inconsistency, the parties have engaged in an academic exercise that has no bearing on this appeal. Even assuming both standards apply after a party allows a scheduling order deadline to expire, that is not what happened in the adversary proceeding below. Seven Stars moved to extend the expert discovery deadline—not the already-expired deadline for the parties to make their expert disclosures.[3] *See* Third Mot. Extend at 1–2; *see also* Mem. Op. at 17 ("Notably, Seven Stars did not seek in its motion – even belatedly under the 'excusable neglect' standard of Federal Rule of Bankruptcy Procedure 9006(b)(1) – to extend the already-lapsed expert disclosure deadline."). Seven Stars moved to extend this deadline, set for May 14, 2021, on April 28, 2021. Third Mot. Extend at 4. While the lapsed expert disclosure deadline was a factor in the Bankruptcy Court's refusal to grant an extension, *see* Hr'g Tr. May 12, 2021 8:7–22, that does not change the deadline Seven Stars asked to extend. The Bankruptcy Court denied an extension of an unexpired deadline, and thus excusable neglect does not apply. The Court need not consider the parties' other arguments on this point.

Having disposed of civil procedure standards that have no bearing on the issues on appeal, the Court now turns to the applicable requirement—the need for good cause to modify a scheduling order.

---

[3] A review of the record shows that at argument on the motion, the Bankruptcy Court interchangeably discussed the two deadlines, referring to the relevant deadline as "already lapsed." *See, e.g.*, Hr'g Tr. May 12, 2021 14:14. The parties have now done the same on appeal. However, there is no indication that Seven Stars in fact moved to extend the lapsed deadline. *See* Mem. Op. at 17 ("Notably, Seven Stars did not seek in its motion – even belatedly under the 'excusable neglect' standard of Federal Rule of Bankruptcy Procedure 9006(b)(1) – to extend the already-lapsed expert disclosure deadline.").

### C. The Bankruptcy Court Did Not Abuse Its Discretion in Finding No Good Cause to Extend the Expert Discovery Deadline

As stated above, Rule 16(b), applicable in bankruptcy adversary proceedings, *see* FED. R. BANKR. P. 7016(a), requires a court to enter a scheduling order that "limit[s] the time to join other parties, amend the pleadings, complete discovery, and file motions." FED. R. CIV. P. 16(b)(3)(A). The scheduling order can only be modified for good cause. FED. R. CIV. P. 16(b)(4). This standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (internal quotation marks omitted). It follows that the party seeking the extension must show it was diligent in attempting to meet the deadline. *Romero*, 552 F.3d at 1319. A court's insistence to "hold litigants to the clear terms of its scheduling orders" will often be upheld on appeal. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).

Here, the Court cannot find that it was an abuse of discretion to hold Seven Stars to the clear terms of the second scheduling order. At the time Seven Stars made its motion, nearly two years of litigation had come and gone, two deadline extensions had been given, and Seven Stars had made no expert disclosures. *See* Hr'g Tr. May 12, 2021 8:16–9:3. Seven Stars argues that it demonstrated good cause and was diligent in attempting to meet the deadline, primarily pointing to the fact that it was seeking an agreement on litigation funding.

But Seven Stars has not cited any authority requiring a court to extend a deadline due to lack of funding to hire an expert witness on the part of the litigant. In *Knight ex rel. Kerr v. Miami-Dade County*, the Eleventh Circuit "assum[ed]," that "financial difficulties" could justify an extension under the facts of that case, but it did not hold that a lack of funding on the part of a party requires a court to limitlessly extend its scheduling order deadlines. 856 F.3d 795, 812 (11th Cir. 2017). And assuming *Knight* does provide litigants with a good cause argument, Seven Stars

still needs to pass the diligence threshold, which it simply cannot do. The *Knight* court excluded evidence in part because the "plaintiffs . . . had at least five months' notice to gather their experts." *Id.* Here, the Bankruptcy Court entered its first scheduling order nearly seven months before the missed deadline. Agreed Scheduling Order Setting Trial Date and Pretrial Schedule [ECF No. 7–30]. And in their brief, Seven Stars does not note any efforts to obtain litigation funding until May 2020, when Legalist contacted Seven Stars nearly an entire year into the litigation. Initial Br. at 16. It also appears that Seven Stars made no efforts to obtain funding from May 2020 to November 2020, when Legalist once again contacted it. *Id.* The fact that in both instances it was seemingly Legalist who reached out to Seven Stars, rather than Seven Stars seeking the funding proactively, only confirms a lack of diligence. *See* Hr'g Tr. February 24, 2021 5:21–6:2 ("*Legalist actually had approached us* to ask us about the case . . . my understanding is they had reviewed the docket sheet and they had come across the case and understood that we had survived a motion to dismiss, and we got into a discussion." (emphasis added)). The other cases Seven Stars cites, relating to a lack of funds to hire counsel, are inapplicable to the issue.

Ultimately, Courts enjoy broad discretion in enforcing their scheduling orders. On the record before this Court, there is no indication that the Bankruptcy Court abused its discretion in finding a lack of good cause where, as here, Seven Stars appears to have made little to no attempt to hold itself to a scheduling order years after it commenced its action. Thus, the Bankruptcy Court committed no error.

### II. The Bankruptcy Court Did Not Abuse Its Discretion in Holding That the Manzo-Berding Declaration Was a Sham

Seven Stars argues that the Bankruptcy Court erred when it held that the Manzo-Berding Declaration was a sham that could not be considered. Initial Br. at 47. However, given the level

of inconsistencies between the Manzo-Berding Declaration and Ms. Manzo-Berding's deposition testimony, this was not an abuse of discretion.

Under the sham affidavit rule, a court may disregard an affidavit submitted to defeat summary judgment when the affidavit, without explanation, contradicts prior deposition testimony given by the affiant. *Kernal Recs. Oy v. Mosley*, 694 F.3d 1294, 1300 n.6 (11th Cir. 2012). This rule is to be invoked "sparingly" due to the "harsh effect this rule may have on a party's case." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). Courts cannot simply disregard "every failure of memory or variation in a witness's testimony" as a sham, as that would deprive the trier of fact of its duty. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986). The Eleventh Circuit thus requires that a court "find some inherent inconsistency" between the affidavit and the deposition testimony. *Rollins*, 833 F.2d at 1530. And the responses must have been "clear answers to unambiguous questions." *Tippens*, 805 F.2d at 954 (quoting *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984)). A court's determination to strike a declaration as a sham is reviewed for an abuse of discretion. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016).

Here, the Court finds no abuse of discretion. Ms. Manzo-Berding repeatedly refused to give information on damages during her deposition, claiming that Seven Stars needed an expert to quantify its damages and that Ms. Manzo-Berding did not have sufficient knowledge of this issue. She was asked whether she could "identify . . . what types of damages" Seven Stars sought on the basis of certain allegations, and Ms. Manzo-Berding responded, "Sorry. So I think that is the reason we're calling for an expert . . . that's the purpose, to have that expert to estimate all that [sic] elements." Appellant Dep. Tr. I 143:4–8, 143:16–19. Shortly after, she was asked whether Seven Stars was "seeking any other damages other than lost profits," and responded, "I don't know if I can answer that question to be honest with you." *Id.* at 146:16–19. When asked what damages

Seven Stars would seek arising from another dispute between the parties, Ms. Manzo-Berding responded, "So probably – probably will [sic] need a witness expert [sic]." *Id.* 158:23–24.

This insistence that Seven Stars needed to rely on an expert only ended after the Bankruptcy Court denied the extension of the expert discovery deadline. It was then that Seven Stars suddenly produced several late interrogatory responses, verified by Ms. Manzo-Berding, that asserted quantified damage amounts for the first time in essentially two years. And shortly after this, in response to Appellees' motions for summary judgment, Seven Stars produced the Manzo-Berding Declaration, which asserted damage amounts that were inconsistent with Seven Stars's verified late-served discovery. In less than a few months, Ms. Manzo-Berding went from testifying that she was not able to identify categories of damages to giving dollar-specific estimates. *Compare, e.g., id.* at 146:16–19, *with* June 9, 2021 Resps. at 6–7. Seven Stars's only explanation for this discrepancy is that after the Bankruptcy Court denied its Third Motion to Extend, it "had to essentially become [its] own expert[.]" Mem. Op. at 40.

A company's failure to adequately prepare its corporate representative will not always result in the application of the sham affidavit rule in the face of an inconsistent affidavit. *See Houlihan Lokey Howard & Zukin Cap., Inc. v. Protective Grp.*, 506 F. Supp. 2d 1230, 1245 (S.D. Fla. 2007) ("While Defendant may have failed to fulfill its obligations under Fed. R. Civ. P. 30(b)(6), there is no inherent inconsistency between Careaga's deposition testimony and Miller's affidavit, inasmuch as Miller does not directly contradict Careaga's testimony, but attempts to fill the evidentiary void respecting Defendant's counterclaims."). But here, the positions taken by Ms. Manzo-Berding are more directly contradictory than the statements in *Protective Group*, and the corporate deposition and the declaration were given by the same person. This was not the case in *Protective Group*. *See id.* The inherent inconsistencies between Ms. Manzo-Berding's testimony and her declaration clearly represent more than a simple failure of memory or variation in

testimony, and the Bankruptcy Court acted well within its discretion when it held that the declaration was a sham.

Seven Stars's argument against this result is the same old chestnut it has already told this Court: that striking the Manzo-Berding Declaration was tantamount to a sanction imposed by the Bankruptcy Court—and the Bankruptcy Court erred by not imposing a lesser one. Initial Br. at 48–51. Given the importance of the evidence to avoid summary judgment, Seven Stars argues it was "a sanction that dismissed the entire case." *Id.* at 51. The most concrete language Seven Stars points to is a passing reference to "further sanctions" made by the Bankruptcy Court in its Memorandum Opinion, in which it said "because [striking the Manzo-Berding Declaration] is a harsh enough result, the Court declines to award any further sanctions." Mem. Op. at 43.

Seven Stars's reading divorces the Bankruptcy Court's references to "further sanctions" and Rule 37(c)(1) from the fact that Appellees had moved for other sanctions in addition to moving to strike the Manzo-Berding Declaration. *See* Def. MDG Powerline Holdings, LLC's Mot. to Strike Sham Decl. and Mot. for Sanctions [ECF No. 12–1] at 12–17. The sham affidavit rule prevents a party from manufacturing an issue of material fact where one does not exist and is only utilized by courts in this Circuit in limited circumstances—it is not a sanction under Rule 37. *See Tippens*, 805 F.2d at 953.

When a court strikes critical evidence as a sanction, such exclusion can "effect a dismissal," and a lesser penalty may be appropriate. *Collins v. U.S.*, No. 3:08–cv–923–J–32JRK, 2010 WL 4643279, at *3, *5 (M.D. Fla. Nov. 9, 2010). But the only purpose of a sham affidavit is to defeat summary judgment—it follows that its exclusion would result in an unfavorable result for its proponent. *See Furcon*, 843 F.3d at 1306 (explaining that a sham affidavit contradicts prior testimony "for the transparent purpose of creating a genuine issue of fact where none existed previously"). In *Collins*, the court considered whether to exclude critical evidence, an expert

affidavit, as a sanction for not properly disclosing it. *Collins*, 2010 WL 4643279, at *2–3. A sham affidavit is not critical evidence—it is a ploy to defeat summary judgment. The Bankruptcy Court's decision to strike it was not a sanction under Rule 37(c)(1), and thus Seven Stars's argument as to whether the affidavit was harmless need not be addressed.

Seven Stars also argues that the Bankruptcy Court should not have struck Seven Stars's financials from consideration. Initial Br. at 53. However, it is simply incorrect that the Bankruptcy Court did not consider these documents. Mem. Op. at 29. Indeed, the *Appellees* relied on these financials to demonstrate that damages had not been established. *Id.* This point does not need to be addressed any further.

### III. The Bankruptcy Court Properly Granted Summary Judgment for Appellees

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable factfinder to find for the non-moving party. *See id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At summary judgment, the Court views the evidence "in the light most favorable to the non-moving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), the moving party bears the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

If there are any factual issues, summary judgment must be denied, and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 12-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013). Furthermore, when the parties "agree on the basic facts, but disagree

about the inferences that should be drawn from these facts[,]" summary judgment "may be inappropriate." *Id.* (citation omitted). An appellate court reviews a bankruptcy court's order on summary judgment *de novo*. *In re Optical Technologies, Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001).

Seven Stars appears to largely concede that if the other rulings on appeal are affirmed, the Court must also affirm the Bankruptcy Court's order granting summary judgment. *See* Initial Br. at 55–56 (arguing that "damages could only be proven by expert testimony" and, once again, arguing that the bankruptcy court should have considered "less drastic measures"); *id.* at 56 ("It was the absence of an expert that has led directly to a final judgment in this case dismissing Appellant's claim."). However, Seven Stars also argues that its profit and loss statements should have been considered "as some evidence of damages." *Id.* at 57. And in its Reply to MDG, Seven Stars also purports to appeal the Bankruptcy Court's determination that it was not entitled to seek reliance or diminution in value damages. *See* Reply to MDG at 23–24.

### A. Seven Stars Waived Appeal of the Bankruptcy Court's Holding That It Could Not Recover Diminution in Value or Reliance Damages

Seven Stars has abandoned any argument that the Bankruptcy Court was incorrect when it held that Seven Stars could not seek diminution of value or reliance damages. Seven Stars appears to agree it did not preserve its argument as to reliance damages, noting only that it "certainly did" preserve its claim for loss of business value. Reply to MDG at 24. But even Seven Stars's reference to the record regarding loss of business value falls short; it offers no legal authority or argument to rebut the Bankruptcy Court's holding that Florida law does not allow for diminution of value to be recovered unless a business has been completely destroyed. Mem. Op. at 26–27. Indeed, this portion of Seven Stars's brief is dedicated solely to Seven Stars's argument that the

sham Manzo-Berding Declaration was harmless, and over half of one page is a protracted excerpt from the deposition of Jens Berding. Initial Br. at 51–52.

In this Circuit, "issues that clearly are not designated in the initial brief ordinarily are considered abandoned." *Hartsfield v. Lamacks*, 50 F.3d 950, 953 (11th Cir. 1995) (quoting *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994)). A mere "passing reference to the issue" is insufficient, and the party must "make arguments and cite authorities" to avoid waiver. *Elnenaey v. Fidelity Mgmt. Tr. Co.*, 829 F. App'x 482, 484 (11th Cir. 2020). Having failed to designate this issue in its brief, make any arguments in support of it, and cite any authority, Seven Stars has waived this argument.[4] Thus, remaining for the Court's consideration is whether Seven Stars's profit and loss statements, without any other evidence, were sufficient to defeat summary judgment.

### B.  The Profit and Loss Statements Are Insufficient Evidence of Damages to Survive Summary Judgment

To recover lost profits under Florida law, a business must prove the defendant's actions caused damages and establish "some standard by which the amount of damages may be adequately determined." *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So.2d 1348, 1351 (Fla. 1989). The Eleventh Circuit describes these two requirements as "the fact of damages and the extent of damages." *Kaplan v. Nautilus Ins. Co.*, 861 F. App'x 798, 804 (11th Cir. 2021) (quoting *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1214 (11th Cir. 2006)). A party's claim for lost profits "cannot be speculative and must be proved with reasonable certainty."

---

[4] Notwithstanding Seven Stars's waiver of this issue, its argument still fails. Seven Stars maintains the Manzo-Berding Declaration contained evidence of damages. Initial Br. at 51–52. But as explained above, the declaration was properly excluded. Thus, Seven Stars could not rely on it to support their purported damages.

*Nebula Glass*, 454 F.3d at 1213. However, a plaintiff does not need to prove its damages with exactness: any reasonable yardstick for establishing damages will suffice. *Id.* at 1217.

The profit and loss statements offer no evidence that would allow a fact finder to determine a reasonably certain amount of damages. Seven Stars's profit and loss statements, standing alone, are a far cry from the quantities of evidence courts have recognized as sufficient under Florida law. In *W.W. Gay Mechanical Contractor*, the plaintiff offered "studies prepared by reputable economic analysts" as well as the testimony of experts as to the amount of lost profits. 545 So.2d at 1351. In *Nebula Glass International*, the plaintiff offered, in addition to other evidence, the testimony of an "accounting and business valuation expert" who estimated the plaintiff's lost profits. 454 F.3d at 1210.

In contrast, Seven Stars's profit and loss statements contain only the amounts that Seven Stars has historically earned. There is no information regarding Seven Stars's projected growth (if any) or market predictions. And unaccompanied by testimony, this raw data cannot be used to determine a reasonably certain amount of lost profits. *See Nebula Glass*, 454 F.3d at 1217–19 (noting that plaintiff offered evidence of projected growth rate as well as a projection regarding market expansion). Even the excluded Manzo-Berding Declaration barely attempted to use this information to discuss lost profits, saying only that Seven Stars's "past lost profits would be lower" when compared to its business value and the "Fort Lauderdale resident market has consistency [sic] grown at a rate of 1% per year." Manzo-Berding Decl. ¶ 12. Such profit and loss statements require some accompanying evidence—testimony or otherwise—to allow a reasonable person to discern any evidence of damages from such data with reasonable certainty. Here, Seven Stars offered none. As such, the Bankruptcy Court did not err in determining these statements were insufficient evidence of lost profits under Florida law and granting summary judgment for the Appellees.

## CONCLUSION

In sum, despite Appellant's attempts to recast the Bankruptcy Court's Orders and mischaracterize the record, this review comes down to whether the Bankruptcy Court abused its discretion in enforcing its scheduling order and striking a sham declaration.  It did not.  With no evidence to support Appellant's claims for damages, the Bankruptcy Court then properly granted summary judgment for Appellees.  Accordingly, for the reasons stated herein, it is hereby

**ORDERED AND ADJUDGED** that the Orders and Final Judgment of the Bankruptcy Court are **AFFIRMED,** and this appeal is **DISMISSED with prejudice.**  The Clerk is directed to **CLOSE** this case and any remaining motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 16th day of October, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**